The Honorable Ronald B. Leighton

1

2

3

4

5

6

7

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

JOSEPH A. NELSON, individually and as
Personal Representative of the Estate of Joel
A. Nelson, and its statutory beneficiaries,

NO.  3:18-cv-05184-RBL

                                    Plaintiff,

            vs.

MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS RODNEY DITRICH
AND THURSTON COUNTY

THURSTON COUNTY, a Washington
municipality; RODNEY DITRICH,
individually, JOHN D. SNAZA, individually;
and Does 1 through 15, individually,

NOTE ON MOTION CALENDAR:
January 18, 2019

                                    Defendants

### I.      MOTION

   Defendants, Rodney Ditrich and Thurston County, move the Court pursuant to FRCP 56(c) for

summary judgment dismissing this action.  This motion is made for the reason that there is no genuine

issue as to any material fact and defendants are entitled to judgment as a matter of law.   This motion is

directed to plaintiff's claims of unconstitutional seizure, deprivation of due process, negligence causing

personal injury and death, and false arrest.

### II.      GENERAL FACTUAL BACKGROUND

   On January 5, 2016, while performing an emergency response to a reported theft, Thurston County

Deputy Sheriff Rodney Ditrich observed the plaintiff's decedent, Joel A. Nelson, walking toward him on

the shoulder of the road.  Nelson, who was unknown to Deputy Ditrich, immediately concealed his face

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA  98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511*

1   and quickly walked onto the adjacent private residential property.  Deputy Ditrich, whose emergency

2   call had been canceled, stopped his patrol car in the driveway of the residence and saw Nelson hiding

3   behind tall shrubs next to the wall of a two-car garage.  He got out of the patrol car, called to Nelson and

4   told him to come out and tell him what he was doing.  Nelson was slow to comply, and he verbalized

5   resistance to the deputy.  Nelson admitted he didn't live at the residence, and he gave no reason for

6   going on to the property except that he was "looking for a place to piss."  The property was prominently

7   posted against trespassers.

8

9        Deputy Ditrich had Nelson walk to the front of his patrol car and place his hands on its hood.  He

10  asked Nelson for his name and date of birth.  Nelson gave him false information, which the deputy ran

11  through his dispatch agency, returning a "no record found" result.  The deputy recognized Nelson had

12  lied about his identity and concluded that he probably had a warrant out for his arrest, which in fact was

13  true.  Ditrich gave Nelson several opportunities to provide correct identity information, including telling

14  him that if he gave correct information, he would only arrest him on any warrant that happened to exist,

15  but that if he persisted in lying about his identity, he would be arrested for Obstructing a Law

16  Enforcement Officer as well.  Nelson insisted he had given his correct identity.

17

18       Deputy Ditrich told Nelson he was under arrest.  Nelson then attacked the deputy and ran to his

19  patrol vehicle, jumped into its driver's seat and attempted to commandeer the vehicle.  The deputy

20  followed and tried to control the gearshift of the car and fought back in response to Nelson's kicks and

21  blows.  The deputy gave Nelson warnings about using his Taser, and then used that less-than-lethal

22  device to attempt to subdue him.  The Taser was only momentarily effective.  Nelson resumed fighting

23  and Deputy Ditrich pulled out his pistol and told Nelson to stop or he would shoot.  Nelson was able to

24  get the patrol vehicle into reverse gear and accelerated it back across the adjacent street, striking a

25

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   vehicle being driven by a civilian, spinning it around in the road.  The deputy then fired three shots at

2   Nelson and he collapsed.  The patrol vehicle continued into a thicket of brush and small trees, peeling

3   the driver's door back as the deputy hung on in the door opening.  Nelson died as a result.

II.       EVIDENCE RELIED UPON

Defendants rely on the Declaration of Rodney T. Ditrich and the exhibits to it,[1] which provide

the detailed facts of the relevant incident, and which are filed herewith.  Defendants also rely on the lack

of competent evidence to support the plaintiff's claims.

III.       ARGUMENT

Summary judgment is appropriate if there is no genuine issue as to any material fact and the

moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.2d 202 (1986).  The moving party has the

initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, U.S. 144,

159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  This may be done by showing "that the nonmoving

party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at

trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Rule 56(e) provides that a party opposing summary judgment may not rest upon mere allegation

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

It is important to recognize that while all facts and inferences are taken in the light most favorable to the

non-moving party, such facts/inferences must be established with actual evidence. *Nissan Fire &*

---

[1] Exhibits A, B, C (one page), and E are in color and are best viewed in that format.

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
RODNEY DITRICH AND THURSTON COUNTY – 3**
Cause No.:  3:18-cv-05184-RBL

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA  98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511

*Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 201 F.3d 1099, 1102 (9th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *see e.g.* Rule 56.

In carrying its burden, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). A "material" fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson*, 477 U.S. at 248, 252, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2648; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Conclusory statements without factual support are insufficient to defeat a motion for summary judgment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

     A.      Deputy Ditrich had Reasonable Suspicion to Stop and Investigate Nelson.

The Fourth Amendment permits investigatory detentions, referred to as *Terry* stops,[2] when law enforcement officers have a "reasonable suspicion" that criminal activity "may be afoot." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1968). "[P]articularized suspicion encompasses two elements." *Id.* "First, the assessment must be based upon the totality of the

---

[2] So named after *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
RODNEY DITRICH AND THURSTON COUNTY – 4
Cause No.: 3:18-cv-05184-RBL

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1   circumstances.  Second, that assessment must arouse a reasonable suspicion that the particular person

2   being stopped has committed or is about to commit a crime." *Id.*  As articulated by the Supreme Court,

3   "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo

4   momentarily while obtaining more information, may be most reasonable in light of the facts know to the

5   officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

6   Furtive gestures, evasive behavior, and flight from the police are circumstantial evidence of guilt. *State*

7   *v. Graham*, 130 Wn.2d 711, 726, 927 P.2d 227, 234 (1996) (citing *State v. Baxter,* 68 Wn.2d 416, 421–

8   22, 413 P.2d 638 (1966) (flight is an element of probable cause); and *State v. Huff,* 64 Wn. App. 641,

9   647, 826 P.2d 698, *review denied,* 119 Wn.2d 1007, 833 P.2d 387 (1992) (furtive movements are facts

10  supportive of probable cause)); *United States v. Evans,* 445 F. App'x 29, 31–32 (9th Cir. 2011)

11  (unpublished), *cert. denied,* 566 U.S. 940, 132 S.Ct. 1906, 182 L.Ed.2d 776 (2012) (furtive movements

12  plus suspect's statements provide probable cause to search).

13      A stop may be founded on reasonable suspicion despite "innocent possibilities" for the police

14  officer's observations. *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).  Moreover, given

15  that the standard for reasonable suspicion is "a particularized and objective basis for suspecting the

16  person stopped of criminal activity[,]" the "quantum of proof needed for reasonable suspicion is less

17  than a preponderance of evidence, and less than probable cause." *Id.*  It is merely "a particularized and

18  objective basis for suspecting the person stopped of criminal activity." *Id.*

19      In *U.S. v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568 (1985), the Supreme Court explained:

20  "[O]ur cases impose no rigid time limitation on Terry stops … we have emphasized the need to consider

21  the law enforcement purposes to be served by the stop as well as the time reasonably needed to

22  effectuate those purposes.  Much as a 'bright line' rule would be desirable, in evaluating whether an

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 5**
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1 investigative detention is unreasonable, common sense and ordinary human experience must govern

2 over rigid criteria." (Internal citations omitted.) *See also, U.S. v. Mayo*, 394 F.3d 1271, 1275–76 (9th Cir.

3 2005) (40 minute detention reasonable); *United States v. Sharpe*, 470 U.S. 675, 687, 105 S.Ct. 1568, 84

4 L.Ed.2d 605 (1985) (holding that, under the circumstances, a twenty-minute detention was not too long);

5 *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1076 (9th Cir. 2003) (noting that a Terry stop does not

6 have rigid time constraints so long as the officer conducts the investigation in a diligent and reasonable

7 fashion).  Whether reasonable suspicion exists for a Terry Stop depends on the totality of the

8 circumstances. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

9

10 "For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by

11 means of physical force or show of authority, in some way restrains the liberty of a citizen." *United*

12 *States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997).  The Fourth Amendment provides

13 protection against two types of seizures: investigatory stops and arrests.  An investigatory stop, or Terry

14 stop, is a brief detention and interrogation and must be founded on reasonable suspicion. *United States v.*

15 *Miles*, 247 F.3d 1009, 1012-13 (9th Cir. 2001).  '[T]he purpose of a Terry stop is to allow the officer to

16 pursue his investigation without fear of violence." *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir.

17 2001) (internal quotations omitted).

18

19 Deputy Ditrich's initial contact with Joel Nelson followed from unusual and evasive conduct by

20 Nelson. (Ditrich declaration, ¶¶3-4.)  It escalated into him hiding on posted private property to which he

21 had no lawful connection, followed by further hiding behavior by keeping his back to the deputy, and

22 culminating in lying about his identity, at which point Deputy Ditrich had probable cause to arrest

23 Nelson. (Ditrich declaration, ¶5.)  Nelson's false information was not protected speech because it was

24 part of his evasive conduct that extended and delayed the deputy's otherwise straight-forward inquiry to

25

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

an individual whom the deputy rightfully contacted. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949) (freedom of speech does not immunize speech used as an integral part of conduct in violation of a valid criminal statute); and see *U.S. v. Osinger,* 753 F.3d 939, 950 (9th Cir. 2014) (citing *Gibony*) (Watford, J. concurring).

Prior to the arrest being made, Deputy Ditrich possessed the "reasonable suspicion" that justified the stop and contact with Nelson, and the minimally intrusive delay and questioning which the deputy used. At a minimum, Deputy Ditrich is entitled to qualified immunity (see further discussion of qualified immunity below) for contacting and investigating Joel Nelson, initially to dispel his concern about whether a crime was in fact occurring and plaintiff was involved. Deputy Ditrich's *Terry* stop of Nelson was lawful.

B.     Force Used During Terry Stop.

Courts analyze excessive force claims based on an arrest or investigatory stop under the Fourth Amendment's objective reasonableness test. See *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). The court asks whether the force used was "'objectively reasonable' in light of the facts and circumstances confronting [the officer.]" *Graham, supra*, 490 U.S. at 397. Courts must first "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Espinosa v. City & Cnty of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). Second, the court considers the government's interest in using force. At a minimum, three factors inform the government's interest in the need to use force: "(1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014). The third step is to

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1    "balance the gravity of the intrusion on the individual against the government's need for that intrusion."

2    *Green v. City and County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014).

3    Here, Deputy Ditrich did not use <u>any</u> physical force on Nelson during the investigatory stop.  He

4    did not place handcuffs on Nelson, he did not place his hands on Nelson to direct him anywhere, and he

5    did not make him sit in the patrol car or otherwise physically confine him.  The only force used was the

6    deputy's presence, his verbal directions, and his warnings to Nelson about what could happen if he

7    attempted to run from the officer.  (Ditrich declaration, ¶¶ 7-10.)  This is minimal, non-intrusive force

8    which is well within the recognized limits for a *Terry* stop.  No excessive force was used by the deputy

9

10   during the *Terry* stop.

11       C.      Constitutional Standards Governing Arrest.

12       After Deputy Ditrich informed Nelson that he was under arrest, and Nelson attacked the deputy

13   and attempted to commandeer his patrol car, all of the factors by which "objective reasonableness" is to

14   be judged weighed heavily in favor of the deputy's actions.  (Ditrich declaration, ¶12.)

15

16       "[W]here probable cause does exist civil rights are not violated by an arrest even though

17   innocence may subsequently be established." *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966).

18   Probable cause exists where the arresting officer is aware of "facts and circumstances sufficient to

19   warrant a prudent man in believing that the suspect had committed or was committing an offense."

20   *Gerstein v. Pugh*, 420 U.S. 103, 111-12, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975) (citing *Beck v. Ohio*,

21   379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).  This standard is a "practical, nontechnical

22   conception" addressing the "factual and practical considerations of everyday life on which reasonable

23   and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76

24

25   L.Ed.2d 527 (1983).  While in some cases probable cause may be a question for the jury, summary

26

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 8**
**Cause No.:  3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    judgment is appropriate "if no reasonable jury could find that the officers did or did not have probable

2    cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).

3         Under Washington law, "[a] person is guilty of Obstructing a Law Enforcement Officer if he or

4    she willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her

5    official powers or duties." RCW 9A.76.020 (Appendix A). Criminal Trespass in the Second Degree is

6    committed if a person "knowingly enters or remains unlawfully in or upon premises of another under

7    circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080 (Appendix B).

8

9    RCW 9A.52.070, Criminal Trespass in the First Degree, and RCW 9A.52.090 Criminal Trespass –

10   Defenses are set forth in Appendices C and D.). Here, there can be no serious argument that Deputy

11   Ditrich did not have probable cause to arrest Joel Nelson for Obstructing and Criminal Trespass after he

12   could not explain a lawful basis for his presence on the posted private residential property and he lied

13   about his identity to Deputy Ditrich after repeated opportunities to provide correct information. By this

14   conduct, Nelson hindered, delayed and obstructed the deputy's investigation. Moreover, by giving

15   Deputy Ditrich a false name and date of birth, Nelson violated RCW 9A.76.175, Making a False or

16   Misleading Statement to a Public Servant.[3] Arrest was proper, and the defendants are entitled to

17   summary judgment on the plaintiff's Fourth Amendment arrest claims.

18

19        At the instant Joel Nelson attacked Deputy Ditrich with his fists, he committed the crime of

20   Resisting Arrest (RCW 9A.76.040, Appendix E), and Assault in the Third Degree (RCW 9A.36.031(g),

21   Appendix F). Resisting Arrest occurs if a person "…intentionally prevents or attempts to prevent a

22

23

24        [3] RCW 9A.76.175 provides: "A person who knowingly makes a false or misleading material statement to a public
25   servant is guilty of a gross misdemeanor. 'Material statement' means a written or oral statement reasonably likely to be relied
     upon by a public servant in the discharge of his or her official powers or duties."
26

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
RODNEY DITRICH AND THURSTON COUNTY – 9
Cause No.:  3:18-cv-05184-RBL**

1  peace officer from lawfully arresting him or her." From the moment of Nelson's assaultive resistance,

2  Deputy Ditrich had additional probable cause to arrest him. Assault in the Third Degree occurs when a

3  person: "Assaults a law enforcement officer or other employee of a law enforcement agency who was

4  performing his or her official duties at the time of the assault". Both of these crimes committed by Joel

5  Nelson warranted the use of force by Deputy Ditrich to effect his arrest. The escalation of Nelson's

6  criminal conduct occurred solely at his volition, leading to his death.[4]

8          D.       Constitutional Standards Governing Use of Force.

9          Even an arrest supported by probable cause can run afoul of the 4th Amendment if the force used

10  to effectuate it is excessive. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443

11  (1989) ("[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on

12  *how* it is carried out.") (italics in original); *see also, Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir.

13  2005) ("All claims that law enforcement officers have used excessive force – deadly or otherwise – in

14  the course of an arrest must be analyzed under the Fourth Amendment and its 'reasonableness'

15  standard.") (*citing Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).[5]

17          "The 'reasonableness' of a particular use of force must be judged from the perspective of a

18  reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Terry v. Ohio*, 392 U.S. at

19  19. Here, Deputy Ditrich was confronted by an unprovoked attack by Joel Nelson and his increasingly

20  dangerous conduct. The deputy was required to make a split-second decision to use deadly force after

---

[4] This conduct included the crimes of Theft of a Motor Vehicle, RCW 9A.56.065; Assault in the First Degree (deadly weapon), RCW 9A.36.011; and Reckless Driving, RCW 46.61.500.

[5] It is useful to note that State law at the time of the events of this case, RCW 9A.16.040, provided that the use of deadly force by a law enforcement officer was justifiable "[t]o arrest or apprehend a person who the officer reasonably believes has committed, has attempted to commit, is committing, or is attempting to commit a felony". RCW 9A.16.040(1)(c)(i); and see RCW 9A.16.040(2) (law enforcement officers' considerations) (Appendix G).

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    Nelson gained control of his patrol car containing two loaded firearms and a police dog, and sent it

2    careening in reverse onto 93rd Avenue into a collision with a car being driven on that road.  (Ditrich

3    declaration, ¶12.)  The deputy's actions were objectively reasonable under the Fourth Amendment.

4           Under *Graham*, three factors must be considered in assessing the reasonableness of the force

5

6    used: (1) the severity of the crime at the scene, (2) whether the suspect poses an immediate threat to the

7    safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade

8    arrest by flight. *Smith v. City of Hemet*, 394 F.3d at 701 (*citing Graham*, 490 U.S. at 396).   *Graham* and

9    its progeny have made clear that subjective intent – of the officer or the suspect – is irrelevant, and that

10    the reasonableness of the officer's action is to be judged from the perspective of a "reasonable officer,"

11    based on the facts and circumstances known to the officer at the time.

12           Whether a suspect poses a threat to the safety of officers or others is "the most important single

13    element of the three specified factors." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).  Specifically,

14

15    the Supreme Court has stated that the Fourth Amendment permits use of deadly force to apprehend a

16    fleeing suspect where there is "probable cause to believe the suspect poses a threat of serious physical

17    harm." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).  Such force is

18    justified if the officer can provide "an articulable basis for believing that [the suspect] was armed or that

19    he posed an immediate threat to anyone's safety." *Chew* at 27 F.3d 1441.  The *Graham* Court also noted

20

21    that "calculus of reasonableness must embody allowance for the fact that police officers are often forced

22    to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving –

23    about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386,

24    396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

25

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 11**
**Cause No.:  3:18-cv-05184-RBL**

1    Based on the test outlined by *Graham* and its progeny, Deputy Ditrich's decision to use deadly

2    force was objectively reasonable because Nelson deliberately attacked the deputy, attempted to

3    commandeer his patrol vehicle containing two firearms and a police dog, then fought the deputy for

4    control of the car despite explicit warnings and an attempt to use less than lethal force to stop him before

5    he gained control of the patrol car, sending it careening across the road into a citizen's vehicle.  These

6    events happened in rapidly evolving and increasingly dangerous circumstances.  The use of deadly force

7    to stop Nelson's conduct was objectively reasonable.

8    

9        The most important *Graham* factor – whether Joel Nelson posed a threat of imminent harm to

10   Deputy Ditrich or others, clearly weighs in Ditrich's favor.  *See State v. Baker,* 136 Wn. App. 878, 884,

11   151 P.3d 237 (2007) (a motor vehicle meets the statutory definition of "deadly weapon" where it is used

12   in a manner capable of causing death or substantial bodily harm, citing RCW 9A.04.110).  "With respect

13   to the possibility of less intrusive force, officers need not employ the least intrusive means available so

14   long as they act within the range of reasonable conduct." *Hughes v. Kisela*, 862 F.3d 775, 780 (9th Cir.

15   2016).  Based on Nelson's actions, Deputy Ditrich's decision to use deadly force was objectively

16   reasonable and necessary in order to stop Nelson's violent criminal behavior.  Plaintiff's excessive force

17   claim should be dismissed.

18   

19       Viewing the facts in the light most favorable to Plaintiffs, the Court should conclude that the first

20   factor noted in *Graham*, the severity of the crimes at issue, weighs strongly in favor of the

21   reasonableness of Deputy Ditrich's actions.  Deputy Ditrich contacted a person who appeared to be

22   trespassing on private property and hiding himself in an effort to avoid police contact.  Ditrich asked

23   Nelson obvious and reasonable questions: 'What are you doing here,' and 'what is your name and date

24   of birth.'  Nelson's actions and statements increased the deputy's suspicions, and did nothing to indicate

25   

26   

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
RODNEY DITRICH AND THURSTON COUNTY – 12
Cause No.:  3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

that Nelson had a lawful reason for his behavior and location, or that he provided an accurate statement about his identity.  (Ditrich declaration, ¶5.)  At the point Deputy Ditrich had to use deadly force to overcome Nelson's violence and theft of his patrol car, Nelson posed an immediate threat to the lives of the deputy and innocent civilians in the vicinity.  (Ditrich declaration, ¶12.)

The third factor cited in *Graham* is whether the suspect resisted or sought to evade arrest.  From the outset of Deputy Ditrich's observation of Nelson, he was overtly trying to avoid police observation of him.  After the initial contact, Nelson continued to avoid showing his face to the deputy and appeared to be trying to find a route of escape. (Ditrich declaration, ¶¶4 & 5.)  In response to Deputy Ditrich's attempt to make a routine, minimally intrusive arrest, Nelson's resistance escalated into an attack, attempted theft of the patrol car, and violent physical resistance to the deputy's attempts to control and overcome those criminal acts.  Deputy Ditrich's use of force was preceded by repeated warnings and opportunities for Nelson to comply.  Nothing dissuaded Nelson from his violence, theft and assaults.

Deputy Ditrich did not have effective alternative means to control Nelson and stop his violent action.  He tried persuasion, leniency, and threats to use his Taser and deploy his police dog.  Nothing worked with Nelson.  In *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), the Circuit Court explained:

> Requiring officer to find and choose the least intrusive alternative would require them to exercise superhuman judgement.  In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only.  Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves.  It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.

Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct that is reasonable. *Id.*

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1    In *Petersen on behalf of L.P. v. Lewis Cty.*, 697 Fed.Appx. 490, 491 (9th Cir. 2017), sheriffs

2  deputies responded to a 911 call stating that a man identified as "Steven Peterson" was trying to break

3  into their mobile home and that the man had tried to kick the door down and stabbed the front door with

4  a knife.  The responding deputy spotted an individual closely matching the suspect's description that he

5  believed was the suspect.  Believing that the suspect was armed with a knife, the officer exited his patrol

6  car and made contact with Peterson.  Peterson's right hand was visible, but his left hand was concealed

7  in his sweatshirt pocket.  The officer identified himself as police officer and told Peterson that he needed

8  to see his hands.  Peterson started to pace back and forth and kept his left hand hidden inside of his

9  pocket.  The officer drew his gun, Peterson continued to ignore his commands, leaned forward and took

10  two steps toward him.  The officer shot Peterson four times when he was fifteen to twenty feet away.

11  Peterson was unarmed.  The entire interaction lasted one minute and eleven seconds.  The district court

12  concluded that a reasonable jury could find that the officer's use of force was not reasonable, but that he

13  was entitled to qualified immunity. *Peterson v. Lewis Cty.*, 2014 WL 58005 (W.D. Wash. 2014).  The

14  Court of Appeals initially ruled that the district court erred in granting qualified immunity. *Peterson v.*

15  *Lewis Cty.*, 663 Fed.Appx. 531 (9th Cir. 2016).  The Supreme Court vacated the judgment and remanded

16  to the Court of Appeals for further consideration in light of *White v. Pauly*, 580 U.S. __, 137 S.Ct. 548,

17  196 L.Ed.2d 463 (2017) (per curiam). *McKnight v. Peterson*, _ U.S. _, 137 S.Ct. 2241, 198 L.Ed.2d 677

18  (2017).  On remand, the Court of Appeals concluded that the district court erred by finding that there

19  were material factual disputes regarding whether the officer use of deadly force was reasonable.  The

20  Court of Appeals stated:

21
22
23

24           The record reflects that Peterson refused to heed McKnight's (the officer) commands and
         started to charge McKnight.  At the time he used force, McKnight knew that a person
25           matching Peterson's description was in the area and might be armed with a knife.  Given

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 14**
**Cause No.: 3:18-cv-05184-RBL**

1  these facts, McKnight's actions were reasonable; he did not act with excessive force in
2  violation of Peterson's constitutional rights.

3  *Peterson*, 697 Fed.Appx. at 491.  While this unpublished case is not precedent, the factual similarities

4  with the case before this Court are significant and define a range of conduct found to be reasonable by

5  the Court of Appeals.  Deputy Ditrich's conduct was also reasonable in the circumstances he confronted

6  and did not violate Nelson's constitutional rights.

7      E.      Constitutional Standards Under the Fourteenth Amendment.

8      Even under the standards of the Fourteenth Amendment's due process clause, in cases where it,

9
10  rather than the Fourth Amendment, applies, Deputy Ditrich's conduct cannot lead to liability.  In *A.D. v.*

11  *California Highway Patrol*, 712. F.3d 446, 453 (9th Cir. 2013), the Court of Appeals explained:

12      Police conduct violates due process if it "shocks the conscience."  *Porter v. Osborn*, 546
        F.3d 1131, 1137 (9th Cir. 2008).  Conscience-shocking actions are those taken with (1)
13      "deliberate indifference" or (2) a "purpose to harm…unrelated to legitimate law
        enforcement objectives."
14

15      The lower "deliberate indifference" standard only applies to circumstances where "actual

16  deliberation is practical." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  In circumstances

17  where an officer cannot practically deliberate, such as where "a law enforcement officer makes a snap

18  judgment because of an escalating situation, his conduct may only be found to shock the conscience if

19
20  he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

21      In this case, Deputy Ditrich had no time to deliberate in the violent and rapidly evolving situation

22  he faced.  Therefore, the heightened "purpose to harm" standard applies here. *Id.*  Even in the violent

23  situation he encountered, Deputy Ditrich employed warnings and less than lethal force right up to the

24  point where he had no other alternative but to use deadly force. (Ditrich declaration, ¶12.)  There are no

25  facts in this record to support liability on the grounds that Deputy Ditrich acted with a purpose to harm

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1    unrelated to legitimate law enforcement objectives.  Deputy Ditrich is entitled to summary judgment on

2    the claim under 42 U.S.C. §1983 that he violated Nelson's interests secured by the 14th Amendment.

3        F.    Qualified Immunity Protects Deputy Ditrich from Suit.

4        Even in a case where it is necessary to assume that a constitutional violation occurred,

5    "[q]ualified immunity attaches when an official's conduct 'does not violate clearly established statutory

6    or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S.Ct. at

7    551, (quoting *Mullenix v. Luna*, 577 U.S. __, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam)).

8    "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public

9    officials accountable when they exercise power irresponsibly and the need to shield officials from

10   harassment, distraction, and liability when they perform their duties reasonably.'" *Hughes*, 862 F.3d at

11   782 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)).

12       The Supreme Court recently stated that "qualified immunity is important to society as a whole

13   and … (is) effectively lost if a case is erroneously permitted to go to trial." *White*, 137 S.Ct. at 552

14   (internal quotations and citations omitted).  An officer may be denied qualified immunity in a Section

15   1983 action <u>only</u> if (1) the facts alleged, taken in the light most favorable to the plaintiff, show that the

16   officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the

17   time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in

18   that situation. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

19       Under the second prong of the qualified immunity test, the Court must decide if the alleged

20   violation of Nelson's constitutional right against excessive force under the Fourth Amendment "was

21   clearly established at the time of the officer's alleged misconduct." *S.B. v. Cty. of San Diego*, 864. F.3d

22   1010, 1015 (9th Cir. 2017) (quoting *C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252,

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
RODNEY DITRICH AND THURSTON COUNTY – 16
Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1255 (9th Cir. 2016) (citations omitted)). Deputy Ditrich is entitled to qualified immunity unless it was

"'sufficiently clear' that 'every reasonable official would have understood that what he was doing

violates [Nelson's] right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149

(2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

After identifying the context-specific conduct, "[t]he relevant inquiry is whether existing

precedent placed the conclusion that [the officer] acted unreasonably in these circumstances 'beyond

debate.'" *Mullenix*, 136 S.Ct. 305 at 309 (quoting *al-Kidd*, 563 U.S. at 741).

The Supreme Court has repeatedly stated that "clearly established law" should not be defined "at

a high level of generality." *al-Kidd*, 563 U.S. at 742. "[T]he clearly established law must be

'particularized' to the facts of the case." *White, supra*, 580 U.S. __ 137 S.Ct at 552 (*quoting Anderson*,

483 U.S. at 640, 107 S.Ct. 3034). In *White*, 137 S.Ct. at 552, the Supreme Court concluded that where

the Court of Appeals failed to identify a case in which an officer acting under similar circumstances was

held to have violated the Fourth Amendment, qualified immunity existed, explaining:

> Instead, the majority relied on *Graham, Garner*, and their Court of Appeals progeny, which
> – as noted above – lay out excessive-force principles at only a general level. Of course,
> "general statements of the law are not inherently incapable of giving fair and clear warning"
> to officers, *United States v. Lanier*, 520 U.S. 259, 271, 117S.Ct. 1219, 137 L.Ed.2d 432
> (1997), but "in the light of pre-existing law the unlawfulness must be apparent," *Anderson
> v. Creighton, supra*, at 640, 107 S.Ct. 3034. For that reason, we have held that *Garner* and
> *Graham* do not by themselves create clearly established law outside "an obvious case."
> *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per
> curiam*); *see also Plumhoff v. Rickard*, 572 U.S. [765, 779], 134 S.Ct. 2012, 2023, 188
> L.Ed.2d 1056 (2014) (emphasizing that *Garner* and *Graham* "are 'cast at a high level of
> generality'").

The plaintiff is unable to identify any preexisting precedent establishing that Deputy Ditrich's

use of deadly force in the relevant circumstances violated a clearly established right to be free of deadly

force in closely analogous circumstances because no such precedent exists. *See Anderson v. Creighton*,

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
RODNEY DITRICH AND THURSTON COUNTY – 17**
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("The contours of the right must be

2   sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

3       Deputy Ditrich was forced to make "split-second judgments – in circumstances that [were] tense,

4   uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."

5   *Graham*, 490 U.S. at 396-97.  Moreover, the circumstances encountered by Deputy Ditrich consisted of

6   extreme violence, theft of a vehicle containing deadly weapons, exposure to harm of members of the

7   public, and a real threat of death or serious injury to the deputy himself.  The deputy was confronted

8

9   with objectively threatening behavior from a suspect who attempted to commandeer his patrol vehicle

10  and recklessly drive it into traffic.  Deputy Ditrich is entitled to qualified immunity from this lawsuit.

11      G.    Civil Rights Claims Against Thurston County.

12      A person can bring a §1983 action against a local government entity if the plaintiff can show that

13  the entity had an established policy or custom that caused employees who implemented the policy or

14

15  custom to violate the constitutional rights of others.  *Monell v. Dept. of Social Services of City of New*

16  *York*, 436 U.S. 658, 690-92 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also, Van Ort v. Estate of*

17  *Stanewich*, 92 F. 3d 831 (9th Cir. 1996); and *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

18  However, absent such a policy or custom, a local government entity cannot be held liable solely because

19  one of its employees commits an unlawful wrong against another.  *Id.* at 691.  In other words, under

20

21  *Monell*, when a municipal policy of some nature is the "driving force" behind an unconstitutional action

22  taken by a municipal employee, the municipality can liable.  *Id.*  Absent proof of such a policy or

23  custom, a civil rights claim against a municipality necessarily fails.  *Id.*  "Liability for improper custom

24  may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

25  duration, frequency and consistency that the conduct has become a traditional method of carrying out

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1  policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Bennett v. City of Slidell*, 728 F.2d

2  762, 767 (5th Cir. 1984)).  Here, the plaintiff has no evidence that Thurston County had a policy or

3  custom of any kind that relates to the constitutional claims in this action.  Accordingly, plaintiff's claims

4  against the County must be dismissed.

5      H.      Plaintiff's State Law Claims Should be Dismissed.

6      Because Deputy Ditrich's use of force was reasonable under the objective facts, he and the other

7  defendants are entitled to summary judgment on the plaintiff's state law claims.  *Yount v. City of*

8  *Sacramento*, 43 Cal.4th 885, 76 Cal.Rptr.3d 787, 183 P.3d 471, 484 (Cal. 2008).  Those claims are

9  denominated as negligence, wrongful death, and false arrest, but they are based on the same facts as

10  alleged in support of the plaintiff's federal claims.  "[A] common law battery cause of action, like [the]

11  Section 1983 claim, requires proof that [the officer] used unreasonable force." *State v. Valentine*, 75 Wn.

12  App. 611, 618, 879 P.2d 313 (1994), *aff'd,* 132 Wn.2d 1, 935 P.2d 1294 (1997) (use of unreasonable

13  force constitutes assault); *Nehad v. Zimmerman*, 2017 WL 6453475 *10 (S.D. Cal. Dec. 18, 2017)

14  (reasonable use of force entitles defendants to dismissal of state law claims, *citing Yount, supra.*)  The

15  same reasonableness that defeats the plaintiff's civil rights claim based upon alleged excessive force also

16  defeats plaintiff's equivalent state law claims.

17      Moreover, in Washington, there is no "negligent investigation" claim available for police

18  investigations.  *Laymon v. Dep't of Natural Resources,* 99 Wn.App. 518, 530, 994 P.2d 232 (2000);

19  *Fondren v. Klickitat County,* 79 Wn.App. 850, 862, 905 P.2d 928 (1995).  Allowing such claims would

20  have too much of a chilling effect on police investigations.  *Corbally v. Kennewick Sch. Dist.,* 94

21  Wn.App. 736, 740, 973 P.2d 1074 (1999).  Thus, if the plaintiff's negligence claims are premised on

22

23

24

25

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    either Deputy Ditrich's investigation of Joel Nelson, or the multi-agency investigation of his conduct

2    that took place following the use of force event, the plaintiff may not advance such a claim.

3           Additionally, in any negligence claim against a governmental entity or officer in Washington, the

4    plaintiff must establish that a duty was owed to him as an individual, rather than to the public in general.

5    *Pepper v. JJ Welcome Construction*, 73 Wn.App. 523, 531, 871 P.2d 601 (1994).  This is known as the

6    public duty doctrine.  *Id.*  The existence of a duty under the public duty doctrine, "is a question of law,"

7
8    not a question of fact.  *Osborn v. Mason County*, 157 Wn.2d 18, 23, 134 P.2d 197 (2006).

9           The performance of police services is a public duty. *See Alexander v. County of Walla Walla,* 84

10   Wn. App. 687, at 693, 929 P.2d 1182 (1997); *Rodriguez v. Perez*, 99 Wn. App. 439, 445, 994 P.2d 874,

11   878 (2000) (duty to investigate runs to the public generally, not to a specific individual); and *Dever v.*

12   *Fowler,* 63 Wn. App. 35 at 45-46, 816 P.2d 237 (1991) (same).

13          The public duty doctrine precludes government liability for allegedly negligent conduct unless

14
15   one of four exceptions is proven: (1) legislative intent; (2) special relationship; (3) failure to enforce; and

16   (4) rescue doctrine. *Pepper v. JJ Welcome*, 73 Wn.App at 531.

17          1.      Legislative Intent.

18          To establish the legislative intent exception, the plaintiff must show that a relevant statute

19   "evidences a clear intent to identify and protect a particular and circumscribed class of person." *Taylor*

20   *v. Stevens County*, 111 Wn.2d 159, 164, 759 P.2d 447 (1988).  "[T]his intent must be clearly expressed

21   within the provision – it will not be implied." *Ravenscroft v. Water Power Co.*, 136 Wn.2d 911, 930,

22
23   969 P.2d 75 (1998).  The plaintiff has not cited any statute demonstrating a legislative intent to create an

24   enforceable duty of care under the circumstances that is owed to a particular and circumscribed class of

25   persons, which includes the plaintiff.

26

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 20**
**Cause No.:  3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1         2.       Special Relationship.

2       There are three prerequisites to the application of the special relationship exception to the public

3 duty doctrine: (a) There must be privity or direct contact between the public official and the plaintiff; (b)

4 The public official must give express assurances; and (c) The plaintiff must justifiably rely on those

5 assurances. *Smith v. State*, 59 Wn.App. 808, 8134, 92 P.2d 133 (1990).

6       The special relationship exception "is a narrow one which requires the plaintiff to have relied on

7 assurances he specifically sought and which the government must make an express assurance to the

8 plaintiff. *See, e.g., Lester v. Town of Winthrop*, 87 Wn.App. 17, 26, 939 P.2d 1237 (1997) (where

9 government agent informed plaintiff that application was complete, no express assurance was made that

10 the plaintiff would receive the permit); *Honcoop v. State*, 111 Wn.2d 182, 192, 759 P.2d 1188 (1988).

11       In this case, the plaintiff has not alleged any express assurances sought and given to the plaintiff

12 by the defendants.  The special relationship exception does not apply.

13         3.       Failure to Enforce.

14       The failure to enforce exception has four elements: (a) Governmental agents responsible for

15 enforcing statutory requirements possess actual knowledge of a statutory violation; (b) They fail to take

16 corrective action; (c) There is a statutory duty to do so; and (d) The plaintiff is within the class the

17 statute is intended to protect.  *Smith v. State*, 59 Wn.App 881, at 814, 802 P.2d 133 (1990).

18       This exception is construed narrowly, and the plaintiff has the burden of establishing each

19 element of the exception.  *Atherton*, 115 Wn.2d at 531.  The statute that is alleged to create the duty

20 must create a mandatory duty to take specific action to correct a statutory violation.  *Forest v. State*, 62

21 Wn.App. 363, 369, 814 P.2d 1181 (1991).  No such evidence exists here.

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    The plaintiff has not asserted that defendants violated any statute or that they failed to correct a

2    statutory violation.  This exception does not apply.

3         4.    Rescue Doctrine.

4    The final exception to the public duty doctrine is the rescue doctrine.  The rescue doctrine is

5    based on the tort theory that if one undertakes to render aid to another or to warn a person in danger, one

6    must exercise reasonable care.  If a rescuer fails to exercise care and increases the risk of harm to those

7    he is trying to rescue, he is liable for any damages he causes.  *Smith v. State, supra*, 59 Wn.App. at 814.

8    The rescue doctrine does not apply to the facts of this case.

9    

10   Under the public duty doctrine, the plaintiff cannot establish a duty owed by Deputy Ditrich to

11   Joel Nelson as a matter of law regarding his state law claims and, therefore, they should be dismissed.

12   In the context of a Section 1983 excessive force claim, the Ninth Circuit has recognized the

13   validity of the public duty doctrine defense to negligence claims.  *See DeBoer v. City of Olympia*, 183

14   Fed.Appx. 671 (9th Cir. 2006) ("The public duty doctrine precludes DeBoer's claims that the individual

15   

16   officers were negligent.").  District courts in Washington have similarly found that "while it is true that

17   the officers owe a general duty to all citizens to avoid the use of excessive force when effectuating an

18   arrest, it cannot be said that they owe the plaintiff a specific duty." *James v. City of Seattle*, 2011 WL

19   6150567 (W.D. Wash. 2011), *citing Pearson v. Davis*, 2007 WL 305125 (W.D. Wash. 2007); *Jimenez v.*

20   *City of Olympia*, 2010 WL 3061799 (W.D. Wash. 2010); *Donaldson v. City of Seattle*, 65 Wash.App.

21   661, 831 P.2d 1098 (1992).

22   

23   Also, Washington recognizes state law qualified immunity.  An officer is immune from state-law

24   liability when the officer "(1) carries out a statutory duty, (2) according to procedures dictated to him by

25   statute and superiors and (3) acts reasonably." *Staats v. Brown*, 139 Wn.2d 757, 772-74, & 777-79, 991

26   

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

P.2d 615 (2000).  Police officers are authorized by statute to arrest a person when they have probable

cause to believe the person has or is committing a felony, or they observe the person committing a

misdemeanor or gross misdemeanor.  RCW 10.31.100(1) (authorizing arrest for misdemeanors or gross

misdemeanors not committed in the officer's presence when the offence involves harm or threats of

harm to persons or property or involves the unlawful taking of property, or criminal trespass).  County

Sheriffs and their deputies, such as Deputy Ditrich, are empowered to arrest persons who "break the

peace," or who are "guilty of public offenses".  RCW 36.28.010 & .020.  These duties and authority

provide Deputy Ditrich with state law qualified immunity.

I.    Other Claims.

The plaintiff's Complaint also makes claims of conspiracy and ratification of unlawful conduct

against Thurston County and Sheriff Snaza. (Complaint, Paragraph XXIX.)  Because Deputy Ditrich's

conduct was not unlawful, these claims must also fail.  Even so, the plaintiff has no facts to support

these claims.  "To state a claim for a conspiracy to violate one's constitutional rights under section 1983,

the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty.

of King*, 883 F.2d 819, 821 (9th Cir. 1989).  The plaintiff must show "an agreement or meeting of the

minds to violate constitutional rights," and "[t]o be liable, each participant in the conspiracy need not

know the exact details of the plan, but each participant must at least share the common objective of the

conspiracy." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

A ratification theory of liability requires that a plaintiff "prove that the 'authorized policymakers

approve[d] a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.

1999). "Ratification, however, generally requires more than acquiescence." *Sheehan v. City & Cty. of

San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 1765 (2015).

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1    The plaintiff not only fails to allege facts supporting conspiracy and ratification claims, no such

2    facts exist.

3        J.   Conclusion.

4        The actions of Deputy Ditrich were based upon reasonable suspicion that grew into probable

5    cause.  Ditrich attempted unsuccessfully to use information and reason to gain Nelson's compliance with

6

7    his reasonable investigatory requests.  He exerted no physical force on Joel Nelson until after Nelson

8    assaulted him and attempted to commandeer his patrol vehicle.  Then, being forced to make a split-

9    second decision and having no reasonable alternative, Deputy Ditrich used the force necessary to stop

10   the extreme threat of harm to himself and the public caused solely by Nelson's violent, criminal

11   behavior.  No violation of Nelson's constitutional rights occurred in the tragic circumstances that

12   produced his death.  Similarly, no tortious conduct occurred under State law.

13       There is no genuine issue as to any material fact, and the defendants are entitled to judgment as a

14   matter of law dismissing this action as to Deputy Ditrich and Thurston County in its entirety.

15

16       RESPECTFULLY SUBMITTED this 20th day of December 2018.

17                          LAW, LYMAN, DANIEL, KAMERRER &
                            BOGDANOVICH, P.S.
18

19                          /s/ W. Dale Kamerrer

20                          _____
                            W. Dale Kamerrer, WSBA #8218
21                          Attorney for Defendants Ditrich and Thurston County
                            P.O. Box 11880, Olympia, WA 98508
22                          (360) 754-3480
                            dkamerrer@lldkb.com
23

24

25

26

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 24**
**Cause No.:  3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1

## CERTIFICATE OF SERVICE

2

I certify under penalty of perjury under the laws of the United States of America and the State of

3

Washington that on the date specified below, I electronically filed the foregoing document with the

4

Clerk of the Court using the CM/ECF system, who will send notification of such filing to counsel as

5

follows:

6

7

**Plaintiff:**

8

Douglas Cloud, drc@dcloudlaw.com

9

**Defendant Snaza:**

10

Gregory Jackson, gregj@fjtlaw.com

11

John R. Nicholson, johnn@fjtlaw.com
Donald Peters, Jr., petersr@co.thurston.wa.us

12

13

14

Dated this 20th day of December 2018 at Tumwater, Washington.

15

/s/ Marry Marze

16

_____

17

18

19

20

21

22

23

24

25

26

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS**
**RODNEY DITRICH AND THURSTON COUNTY – 25**
**Cause No.:  3:18-cv-05184-RBL**

# Appendix

# RCW 9A.76.020

## Obstructing a law enforcement officer.

(1) A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties.

(2) "Law enforcement officer" means any general authority, limited authority, or specially commissioned Washington peace officer or federal peace officer as those terms are defined in RCW **10.93.020**, and other public officers who are responsible for enforcement of fire, building, zoning, and life and safety codes.

(3) Obstructing a law enforcement officer is a gross misdemeanor.

[ 2001 c 308 § 3. Prior: 1995 c 285 § 33; 1994 c 196 § 1; 1975 1st ex.s. c 260 § 9A.76.020.]

## NOTES:

**Purpose—Effective date—2001 c 308:** See notes following RCW 9A.76.175.

**Effective date—1995 c 285:** See RCW 48.30A.900.

**Appendix A**

12/20/2018      RCW 9A.52.080: Criminal trespass in the second degree.

Case 3:18-cv-05184-RBL    Document 31    Filed 12/20/18    Page 28 of 36

**RCW** 9A.52.080

## Criminal trespass in the second degree.

(1) A person is guilty of criminal trespass in the second degree if he or she knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree.

(2) Criminal trespass in the second degree is a misdemeanor.

[ 2011 c 336 § 373; 1979 ex.s. c 244 § 13; 1975 1st ex.s. c 260 § 9A.52.080.]

## NOTES:

**Effective date—1979 ex.s. c 244:** See RCW 9A.44.902.

Appendix B

**RCW 9A.52.070**

## Criminal trespass in the first degree.

(1) A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains unlawfully in a building.

(2) Criminal trespass in the first degree is a gross misdemeanor.

[ 2011 c 336 § 372; 1979 ex.s. c 244 § 12; 1975 1st ex.s. c 260 § 9A.52.070.]

## NOTES:

**Effective date—1979 ex.s. c 244:** See RCW 9A.44.902.

**Appendix C**

**RCW** 9A.52.090

## Criminal trespass—Defenses.

In any prosecution under RCW **9A.52.070** and **9A.52.080**, it is a defense that:

(1) A building involved in an offense under RCW **9A.52.070** was abandoned; or

(2) The premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or

(3) The actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him or her to enter or remain; or

(4) The actor was attempting to serve legal process which includes any document required or allowed to be served upon persons or property, by any statute, rule, ordinance, regulation, or court order, excluding delivery by the mails of the United States. This defense applies only if the actor did not enter into a private residence or other building not open to the public and the entry onto the premises was reasonable and necessary for service of the legal process.

[ 2011 c 336 § 374; 1986 c 219 § 2; 1975 1st ex.s. c 260 § 9A.52.090.]

**Appendix D**

# RCW 9A.76.040

## Resisting arrest.

    (1) A person is guilty of resisting arrest if he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her.

    (2) Resisting arrest is a misdemeanor.

[ 2011 c 336 § 399; 1975 1st ex.s. c 260 § 9A.76.040.]

**Appendix E**

## RCW 9A.36.031

## Assault in the third degree.

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

(a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself, herself, or another person, assaults another; or

(b) Assaults a person employed as a transit operator or driver, the immediate supervisor of a transit operator or driver, a mechanic, or a security officer, by a public or private transit company or a contracted transit service provider, while that person is performing his or her official duties at the time of the assault; or

(c) Assaults a school bus driver, the immediate supervisor of a driver, a mechanic, or a security officer, employed by a school district transportation service or a private company under contract for transportation services with a school district, while the person is performing his or her official duties at the time of the assault; or

(d) With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm; or

(e) Assaults a firefighter or other employee of a fire department, county fire marshal's office, county fire prevention bureau, or fire protection district who was performing his or her official duties at the time of the assault; or

(f) With criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering; or

(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault; or

(h) Assaults a peace officer with a projectile stun gun; or

(i) Assaults a nurse, physician, or health care provider who was performing his or her nursing or health care duties at the time of the assault. For purposes of this subsection: "Nurse" means a person licensed under chapter **18.79** RCW; "physician" means a person licensed under chapter **18.57** or **18.71** RCW; and "health care provider" means a person certified under chapter **18.71** or **18.73** RCW who performs emergency medical services or a person regulated under Title **18** RCW and employed by, or contracting with, a hospital licensed under chapter **70.41** RCW; or

(j) Assaults a judicial officer, court-related employee, county clerk, or county clerk's employee, while that person is performing his or her official duties at the time of the assault or as a result of that person's employment within the judicial system. For purposes of this subsection, "court-related employee" includes bailiffs, court reporters, judicial assistants, court managers, court managers' employees, and any other employee, regardless of title, who is engaged in equivalent functions; or

(k) Assaults a person located in a courtroom, jury room, judge's chamber, or any waiting area or corridor immediately adjacent to a courtroom, jury room, or judge's chamber. This section shall apply only: (i) During the times when a courtroom, jury room, or judge's chamber is being used for judicial purposes during court proceedings; and (ii) if signage was posted in compliance with RCW **2.28.200** at the time of the assault.

(2) Assault in the third degree is a class C felony.

[ **2013 c 256 § 1. Prior: 2011 c 336 § 359; 2011 c 238 § 1; 2005 c 458 § 1; 1999 c 328 § 1; 1998 c 94 § 1; 1997 c 172 § 1; 1996 c 266 § 1; 1990 c 236 § 1; 1989 c 169 § 1; 1988 c 158 § 3; 1986 c 257 § 6.]**

## NOTES:

**Effective date—1988 c 158:** See note following RCW **9A.04.110.**

Appendix F

## RCW 9A.16.040

## Justifiable homicide or use of deadly force by public officer, peace officer, person aiding—Good faith standard *(as amended by 2018 c 11 (Initiative Measure No. 940) and 2019 c 1 (Initiative Measure No. 940)).*

(1) Homicide or the use of deadly force is justifiable in the following cases:

(a) When a public officer applies deadly force in obedience to the judgment of a competent court; or

(b) When necessarily used by a peace officer meeting the good faith standard of this section to overcome actual resistance to the execution of the legal process, mandate, or order of a court or officer, or in the discharge of a legal duty; or

(c) When necessarily used by a peace officer meeting the good faith standard of this section or person acting under the officer's command and in the officer's aid:

(i) To arrest or apprehend a person who the officer reasonably believes has committed, has attempted to commit, is committing, or is attempting to commit a felony;

(ii) To prevent the escape of a person from a federal or state correctional facility or in retaking a person who escapes from such a facility;

(iii) To prevent the escape of a person from a county or city jail or holding facility if the person has been arrested for, charged with, or convicted of a felony; or

(iv) To lawfully suppress a riot if the actor or another participant is armed with a deadly weapon.

(2) In considering whether to use deadly force under subsection (1)(c) of this section, to arrest or apprehend any person for the commission of any crime, the peace officer must have probable cause to believe that the suspect, if not apprehended, poses a threat of serious physical harm to the officer or a threat of serious physical harm to others. Among the circumstances which may be considered by peace officers as a "threat of serious physical harm" are the following:

(a) The suspect threatens a peace officer with a weapon or displays a weapon in a manner that could reasonably be construed as threatening; or

(b) There is probable cause to believe that the suspect has committed any crime involving the infliction or threatened infliction of serious physical harm.

Under these circumstances deadly force may also be used if necessary to prevent escape from the officer, where, if feasible, some warning is given, provided the officer meets the good faith standard of this section.

(3) A public officer covered by subsection (1)(a) of this section shall not be held criminally liable for using deadly force without malice and with a good faith belief that such act is justifiable pursuant to this section.

(4) A law enforcement officer shall not be held criminally liable for using deadly force if such officer meets the good faith standard adopted in this section.

(5) The following good faith standard is adopted for law enforcement officer use of deadly force:

(a) The good faith standard is met only if both the objective good faith test in (b) of this subsection and the subjective good faith test in (c) of this subsection are met.

(b) The objective good faith test is met if a reasonable officer, in light of all the facts and circumstances known to the officer at the time, would have believed that the use of deadly force was necessary to prevent death or serious physical harm to the officer or another individual.

(c) The subjective good faith test is met if the officer intended to use deadly force for a lawful purpose and sincerely and in good faith believed that the use of deadly force was warranted in the circumstance.

(d) Where the use of deadly force results in death, substantial bodily harm, or great bodily harm, an independent investigation must be completed to inform the determination of whether the use of deadly force met the objective good faith test established by this section and satisfied other applicable laws and policies.

Case 3:18-cv-05184-RBL  Document 31  Filed 12/20/18  Page 34 of 36

(6) For the purpose of this section, "law enforcement officer" means any law enforcement officer in the state of Washington, including but not limited to law enforcement personnel and peace officers as defined by RCW 43.101.010.

(7) This section shall not be construed as:

(a) Affecting the permissible use of force by a person acting under the authority of RCW 9A.16.020 or 9A.16.050; or

(b) Preventing a law enforcement agency from adopting standards pertaining to its use of deadly force that are more restrictive than this section.

[2019 c 1 § 7 (Initiative Measure No. 940); 2018 c 11 § 7 (Initiative Measure No. 940); 1986 c 209 § 2; 1975 1st ex.s. c 260 § 9A.16.040.]

## NOTES:

**Reviser's note:** The Washington supreme court ruled in *Eyman v. Wyman*, 191 Wn.2d 581, 424 P.3d 1183 (2018) that 2018 c 10 is void and that 2018 c 11 (Initiative Measure No. 940) is subject to a vote of the people. The people passed 2019 c 1 (Initiative Measure No. 940) at the general election held November 6, 2018. This section is published with the amendments made by 2018 c 10 excluded, but the amendments made by 2018 c 11 and 2019 c 1 included.

**Short title—Intent—Liberal construction—Subject—2018 c 11 (Initiative Measure No. 940); 2019 c 1 (Initiative Measure No. 940):** See notes following RCW 43.101.450.

**Rule making—2018 c 11 (Initiative Measure No. 940); 2019 c 1 (Initiative Measure No. 940):** See note following RCW 43.101.455.

**Legislative recognition:** "The legislature recognizes that RCW 9A.16.040 establishes a dual standard with respect to the use of deadly force by peace officers and private citizens, and further recognizes that private citizens' permissible use of deadly force under the authority of RCW 9.01.200, 9A.16.020, or 9A.16.050 is not restricted and remains broader than the limitations imposed on peace officers." [ 1986 c 209 § 3.]

## RCW 9A.16.040

## Justifiable homicide or use of deadly force by public officer, peace officer, person aiding—Good faith standard *(as amended by 2018 c 10)*.

(1) Homicide or the use of deadly force is justifiable in the following cases:

(a) When a public officer applies deadly force in obedience to the judgment of a competent court; or

(b) When necessarily used by a peace officer meeting the good faith standard of this section to overcome actual resistance to the execution of the legal process, mandate, or order of a court or officer, or in the discharge of a legal duty; or

(c) When necessarily used by a peace officer meeting the good faith standard of this section or person acting under the officer's command and in the officer's aid:

(i) To arrest or apprehend a person who the officer reasonably believes has committed, has attempted to commit, is committing, or is attempting to commit a felony;

(ii) To prevent the escape of a person from a federal or state correctional facility or in retaking a person who escapes from such a facility;

(iii) To prevent the escape of a person from a county or city jail or holding facility if the person has been arrested for, charged with, or convicted of a felony; or

Case 3:18-cv-05184-RBL   Document 31   Filed 12/20/18   Page 35 of 36

(iv) To lawfully suppress a riot if the actor or another participant is armed with a deadly weapon.

(2) In considering whether to use deadly force under subsection (1)(c) of this section, to arrest or apprehend any person for the commission of any crime, the peace officer must have probable cause to believe that the suspect, if not apprehended, poses a threat of serious physical harm to the officer or a threat of serious physical harm to others. Among the circumstances which may be considered by peace officers as a "threat of serious physical harm" are the following:

(a) The suspect threatens a peace officer with a weapon or displays a weapon in a manner that could reasonably be construed as threatening; or

(b) There is probable cause to believe that the suspect has committed any crime involving the infliction or threatened infliction of serious physical harm.

Under these circumstances deadly force may also be used if necessary to prevent escape from the officer, where, if feasible, some warning is given, provided the officer meets the good faith standard of this section.

(3) A public officer covered by subsection (1)(a) of this section shall not be held criminally liable for using deadly force without malice and with a good faith belief that such act is justifiable pursuant to this section.

(4) A peace officer shall not be held criminally liable for using deadly force in good faith, where "good faith" is an objective standard which shall consider all the facts, circumstances, and information known to the officer at the time to determine whether a similarly situated reasonable officer would have believed that the use of deadly force was necessary to prevent death or serious physical harm to the officer or another individual.

(5) This section shall not be construed as:

(a) Affecting the permissible use of force by a person acting under the authority of RCW 9A.16.020 or 9A.16.050; or

(b) Preventing a law enforcement agency from adopting standards pertaining to its use of deadly force that are more restrictive than this section.

[ **2018 c 10 § 3;** 2018 c 11 § 7 (Initiative Measure No. 940); **1986 c 209 § 2; 1975 1st ex.s. c 260 § 9A.16.040.**]


## NOTES:

**Reviser's note:** The Washington supreme court ruled in *Eyman v. Wyman*, 191 Wn.2d 581, 424 P.3d 1183 (2018) that 2018 c 10 is void and that 2018 c 11 (Initiative Measure No. 940) is subject to a vote of the people. The people passed 2019 c 1 (Initiative Measure No. 940) at the general election held November 6, 2018. This section is published with the amendments made by both 2018 c 10 and 2018 c 11 included.

**Contingent effective date—2018 c 10:** "This act takes effect June 8, 2018, only if chapter 11 (Initiative Measure No. 940), Laws of 2018, is passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative under Article II, section 1 of the state Constitution is not certified by the secretary of state. If the initiative is not approved during the 2018 regular legislative session, or if a referendum on the initiative is certified by the secretary of state, this act is void in its entirety." [ **2018 c 10 § 10.**] Chapter 11 (Initiative Measure No. 940), Laws of 2018 was passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative was not certified by the secretary of state.

**Reviser's note:** The Washington supreme court ruled in *Eyman v. Wyman*, 191 Wn.2d 581, 424 P.3d 1183 (2018) that 2018 c 10 is void.

Case 3:18-cv-05184-RBL   Document 31   Filed 12/20/18   Page 36 of 36

**Rule making—2018 c 10; 2018 c 11 (Initiative Measure No. 940); 2019 c 1 (Initiative Measure No. 940):** See note following RCW 43.101.455.

**Legislative recognition:** "The legislature recognizes that RCW **9A.16.040** establishes a dual standard with respect to the use of deadly force by peace officers and private citizens, and further recognizes that private citizens' permissible use of deadly force under the authority of RCW **9.01.200**, **9A.16.020**, or **9A.16.050** is not restricted and remains broader than the limitations imposed on peace officers." [ **1986 c 209 § 3.**]