The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| JOSEPH A. NELSON, individually and as Personal Representative of the ESTATE OF JOEL A. NELSON, and its statutory beneficiaries,<br><br>       Plaintiff,<br><br>   v.<br><br>THURSTON COUNTY, a Washington municipality; RODNEY T. DITRICH, individually; JOHN D. SNAZA, individually, and DOES 1 through 15, individually,<br><br>       Defendants. | NO.  3:18-cv-05184-RBL<br><br>DEFENDANT JOHN D. SNAZA'S MOTION FOR SUMMARY JUDGMENT<br><br>**NOTE ON MOTION CALENDAR: JANUARY 18, 2019** |

## I.  RELIEF REQUESTED

Defendant, Thurston County Sheriff John D. Snaza, respectfully requests that the Court grant his motion for summary judgment pursuant to Fed. Rule Civ. P. 56 and dismiss with prejudice all Plaintiff's claims against him. Sheriff Snaza also joins in the motion for summary judgment previously filed by Co-Defendants Rodney T.  Ditrich and Thurston County. Dkt. 31.

/ / /

/ / /

/ / /

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

1

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

## II.   STATEMENT OF FACTS

### A.   Introduction

This case arises out of the fatal shooting of Joel Nelson ("Nelson") by Co-Defendant Deputy Rodney Ditrich.  Nelson was contacted during a routine investigatory stop that quickly turned into a life and death struggle.  Deputy Ditrich used lethal force only after Nelson, ignoring multiple warnings, attempted to flee and assaulted Ditrich multiple times, finally attempting to wrest control of Ditrich's patrol vehicle and crashing it into another motorist while Deputy Ditrich was trapped in the open driver's side door.  Deputy Ditrich shot Nelson three times, because it was the only way to save his own life and protect others from serious harm or death.  Sheriff Snaza was not present during the shooting of Nelson and was not personally involved in the subsequent investigations of it.  His only connection to this case is his role as the elected Sheriff of Thurston County and head of the Thurston County Sheriff's Office, which is Deputy Ditrich's employer.

### B.   Deputy Ditrich's Encounter with Nelson

On January 5, 2016, Deputy Ditrich made an investigative or *Terry* stop of Nelson after observing him on someone else's property where there was a posted "no trespassing" sign; Nelson behaved furtively when he first caught sight of Ditrich's patrol vehicle, moving from the road on 93rd Avenue and behind some bushes located on private residential property. Declaration of Rodney T. Ditrich in Support of Defendants' Motion for Summary Judgment (Dkt. 32) ¶¶ 3-5 ("Ditrich Decl.").  Nelson stated he was "looking for a place to piss," making clear he was not the owner of the property.[1]  Nelson initially did not comply with Deputy Ditrich's instructions to come out, although he conceded "I guess you're right" upon being shown the "no trespassing sign." *Id.*, ¶ 5.

---

[1] Public urination is also a misdemeanor in Thurston County. Thurston County Code §10.88.040.

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

2

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

1    Nelson, who had a warrant out for his arrest for failure to appear on a prior theft charge,

2    then lied to Deputy Ditrich about his name and date of birth and continued to behave in a

3    suspicious manner during the *Terry* stop. *Id.*, ¶¶ 6-8, 10-11. In addition to wishing to avoid

4    arrest on the outstanding warrant, Nelson's odd behavior may have been the result of having

5    consumed methamphetamine, opiates, and marijuana, as tests later confirmed. *Id.*, ¶ 6. Prior

6    to using any physical force whatsoever, Deputy Ditrich instructed Nelson to remain at the front

7    of the patrol vehicle, a 2013 Chevrolet Tahoe, leaning forward with his hands on the hood. *Id.*,

8    ¶ 9. Deputy Ditrich informed Nelson that he had a canine partner in the vehicle, whom he

9    would release to apprehend Nelson if Nelson attempted to run. *Id.*, ¶ 9. Deputy Ditrich also

10   told Nelson he had a Taser that he would use if Nelson attempted to flee, and he displayed it.

11   *Id.*, ¶ 9.

12   Deputy Ditrich ran the false information given by Nelson and was informed there was

13   "no record." *Id.*, ¶ 11. Deputy Ditrich was then aware he had probable cause to arrest Nelson

14   for obstruction based on the false information and Nelson's physical and verbal evasiveness (as

15   well as suspecting that Nelson had an outstanding warrant). *Id.*, ¶ 11. Deputy Ditrich

16   confronted Nelson about his deception, but Nelson continued to lie. *Id.*, ¶ 11. Nelson then

17   disobeyed Deputy Ditrich's instructions to remain in place, took his hands off the hood of the

18   patrol vehicle, stood up, and began moving towards the driver's side of the vehicle. *Id.*, ¶ 12.

19   At this point, Deputy Ditrich told Nelson he was under arrest and instructed him to remove his

20   backpack. *Id.*, ¶ 12. Nelson eventually dropped the backpack, but as Deputy Ditrich

21   approached Nelson he suddenly punched Deputy Ditrich in the face. *Id.*, ¶ 12. Nelson then

22   unexpectedly jumped into the driver's side of the vehicle. *Id.*, ¶ 12. In addition to Deputy

23   Ditrich's canine, the vehicle contained a pistol and a loaded AR-15 rifle inside of it. *Id.*, ¶ 12.

24   Deputy Ditrich then engaged Nelson, who was much larger than Ditrich, in a physical

25   struggle as Nelson attempted to wrest control of the vehicle. *Id.*, ¶ 12. Deputy Ditrich was

26

DEFENDANT JOHN D. SNAZA'S MOTION                     3                    **Freimund Jackson & Tardif, PLLC**
FOR SUMMARY JUDGMENT                                                       **900 SW 16th Street, Suite 215**
NO. 3:18-cv-05184-RBL                                                      **Renton, WA  98057**
                                                                           **Tel: 206-464-7352**
                                                                           **Fax: 206-466-6085**

positioned on the driver's side door of the vehicle, partially on the vehicle's running board. *Id.*, ¶ 12.  During this struggle, Nelson assaulted Deputy Ditrich multiple times, striking him with fists and elbows.  *Id.*, ¶ 12.  Deputy Ditrich warned Nelson that he would use his Taser, and when Nelson did not stop fighting, he deployed the Taser. *Id.*, ¶ 12.  The Taser initially affected Nelson, but Nelson then continued fighting and trying to get the vehicle into gear. *Id.*, ¶ 12.  Deputy Ditrich then drew his service pistol and told Nelson to stop or he would shoot. *Id.*, ¶ 12.  While Nelson initially put his hands up and said, "don't shoot me," he then once again began fighting Deputy Ditrich and grabbed for the gearshift.  *Id.*, ¶ 12.

Deputy Ditrich again instructed Nelson to stop or he would shoot.  *Id.*, ¶ 12.  At this point, Nelson began to hit at Deputy Ditrich's gun, grabbing the barrel.  *Id.*, ¶ 12.  Deputy Ditrich was able to maintain control of the gun, but Nelson was then able to get the vehicle into reverse.  *Id.*, ¶ 12.  Deputy Ditrich was still in the driver's doorway with the door open, standing partially on the running board.  *Id.*, ¶ 12. As Deputy Ditrich describes:

> I was trapped in the doorway of the car and believed I was about to die.  The patrol car struck another car being driven east bound on 93rd. I was jostled but remained partially in the vehicle and partially on the running board. I did not have any effective means to control the situation other than to use deadly force to stop Nelson's actions.  In the course of that reverse movement, at about the time of the collision with the other car, and fearing for my life, I fired three shots at the man seated in the driver's seat in rapid succession. The shots were aimed at "center mass" as we are trained, but there was so much movement and violent actions going on, I did not know where the bullets struck Nelson.  One or more of the shots caused Nelson to collapse forward.  The patrol car continued over the north side of the road into a stand of small trees and brush. The driver's door was bent forward as I remained in its doorway.

*Id.*, ¶ 12.  Deputy Ditrich then administered CPR until other officers arrived and was eventually removed from the scene. *Id.*, ¶¶ 13-14.

## C.  Post-Incident Investigations

In accordance with Thurston County Sheriff's Department policy, Deputy Ditrich was placed on administrative leave following the incident.  The Region 3 Critical Incident

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

4

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

Investigation Team ("CIIT"), which is a cooperative team of investigators comprised of staff from five Sheriff's Departments,[2] completed an investigation of the incident. *Id*., ¶ 14. The investigation was led by Lewis County. Declaration of John R. Nicholson in Support of Defendants' Motion for Summary Judgment, Exh. 1 (Snaza dep., pp. 120:10-19, 126:12-127:2) ("Nicholson Decl."). Then Chief Criminal Deputy of the Thurston County Prosecuting Attorney's Office Andrew Toynbee[3] reviewed the information obtained during the investigation and concluded that Deputy Ditrich acted lawfully in using lethal force against Nelson.[4] Nicholson Decl., Exh. 2 (Toynbee dep., pp. 9:23-10:12, 13:13-16, 17:11-17, and Exh. 1).

In addition to the CIIT investigation regarding Deputy Ditrich's use of lethal force, the Thurston County Sheriff's Department Office of Professional Standards ("OPS"), through Sergeant Ken Clark, completed an investigation for purposes of ascertaining whether any Sheriff's Department policies had been violated. Nicholson Decl., Exh. 1 (Snaza dep., p. 150:1-11). On February 23, 2016, Chief Deputy Brad Watkins issued a memorandum stating his conclusion that "Deputy Rodney Ditrich acted within the scope of his assignment and followed the policies and procedures of our agency." *Id*., Exh. 3 (Braniff, dep., pp. 70:5-72:14, and Exh. 4). By design, Defendant Snaza was not personally involved in these investigations. *Id*., Exh. 1 (Snaza dep., p. 97:13-20). Following the completion of the investigations, Defendant Snaza attended a briefing at which the findings were discussed with members of the Sheriff's Department and the other agencies. *Id*., Exh. 1 (Snaza dep., pp. 44:6:-45:17).

---

[2] Region 3 of the State of Washington is comprised of the Sheriff's Offices in Thurston, Lewis, Pacific, Grays Harbor, and Mason Counties. Nicholson Decl., Exh. 1 (Snaza dep., p. 99:8-21). The County that leads the team rotates each year. *Id*., Exh. 1 (Snaza dep., pp. 100:5-11).

[3] Mr. Toynbee is now a Chehalis County Superior Court judge. Nicholson Decl., Exh. 2 (Toynbee dep., p. 5:19-21).

[4] The framework for Mr. Toynbee's investigative findings is that provided for in RCW 9A.16.040 and RCW 9A.16.020.

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

5

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

**D.      Plaintiff's Lawsuit**

On March 9, 2018, Plaintiff Joseph Nelson, father of Joel Nelson, commenced this action. Dkt. 1.  In addition to Deputy Ditrich and the County, Plaintiffs' complaint names Sheriff Snaza as a defendant in his individual capacity.  Id., (Complaint, p.1, caption).  Plaintiff asserts the following causes of action:

1.      Violation of 42 USC §1983 based upon rights under the Fourth and Fourteenth Amendment;

2.      Violation of 42 §1983 based upon deprivation of property rights without due process;

3.      Negligence under Washington state law;

4.      Negligence causing wrongful death under Washington state law; and

5.      False arrest under Washington state law.

Id.  The only specific factual allegations Plaintiff's complaint makes about Defendant Snaza are (1) that he "ratified" alleged misconduct of Deputy Ditrich, the Thurston County Prosecuting Attorney, and other unnamed persons who participated in the investigations of the Nelson shooting incident and (2) that he inadequately trained and supervised Deputy Ditrich. Id.  (Complaint, ¶¶ XV, XVIII, XIX).

## III.      STATEMENT OF ISSUES

**A.      Should summary judgment in Sheriff Snaza's favor on Plaintiff's claims under 42 USC § 1983 be granted, because (1) there was no underlying constitutional violation; (2) Sheriff Snaza did not participate in, direct, or otherwise cause any constitutional violation; and (3) Sheriff Snaza is entitled to qualified immunity?**

**B.      Should summary judgment in Sheriff Snaza's favor on Plaintiff's state law claims be granted, because (1) reasonable use of force and the existence of probable cause preclude Plaintiff's state law claims; (2) Plaintiff can identify no actionable duty and Plaintiff's state law claims are precluded by the public duty doctrine; and (3) there is no basis for imputing liability for any of Plaintiff's state law claims to Sheriff Snaza individually?**

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

6

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### IV.    EVIDENCE RELIED UPON

Sheriff Snaza relies upon the pleadings and the court's file herein, the Declaration of Deputy Ditrich with exhibits A – E thereto,[5] and the Declaration of John R. Nicholson with exhibits 1 – 3 thereto.  Sheriff Snaza further relies on the lack of evidence to support Plaintiff's claims.

### V.    AUTHORITY

Summary judgment is appropriate if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. Rule Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  There is no genuine issue of fact if the party opposing the motion "fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by evidentiary facts.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The evidence must be viewed in the light most favorable to the non-moving party.  *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003).  However, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Summary judgment is required if, on the record taken as a whole, a rational trier of fact could not find in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

---

[5] Deputy Ditrich's declaration was previously filed by the Co-Defendants on December 20, 2018, in support of their motion for summary judgment. Dkt. 32.

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

7

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

1

2

**A.     Plaintiff's 42 USC § 1983 Supervisory Liability Theories Against Sheriff Snaza Fail**

In order to maintain an action under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law and (2) the conduct deprived the person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).  Plaintiff's § 1983 claims, particularly insofar as they are asserted against Sheriff Snaza individually to impose supervisory liability, fail for multiple reasons.

**1.     There Was No Underlying Constitutional Violation**

In order to establish a claim for supervisory liability, the plaintiff must first establish that the supervisor's subordinate committed an act that violated constitutional rights. *See, e.g.,* *Corales v. Bennnett*, 567 F.3d 554, 570 (9th Cir. 2009).   As explained in the motion for summary judgment filed by Co-Defendants Ditrich and Thurston County, there is no evidence to establish that Deputy Ditrich violated Plaintiff's constitutional rights. Sheriff Snaza hereby joins in Co-Defendants' motion and adopts the same arguments on his own behalf.

Here Plaintiff asserts claims under § 1983 on two bases: the Fourth Amendment (unreasonable search and seizure) and the Fourteenth Amendment (deprivation of property rights without due process of law).  However, the Supreme Court has made clear that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443(1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)); *see also* *Armendariz v. Penman*, 75 F.3d 1311, 1319-20 (9th Cir. 1996).  The Fourteenth Amendment due process clause is only implicated in situations where an unreasonable use of force by an

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1   officer "shocks the conscience" because it was done "with the purpose to harm a civilian,

2   unrelated to the legitimate law enforcement objects of arrest, self-defense, or the defense of

3   others." *A.D. v. State of Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013). "For

4   example, a purpose to harm might be found where an officer uses force to bully a suspect or

5   'get even.'" *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). In situations where the

6   suspect was threatening an officer with immediate serious harm, a plaintiff may not assert a

7   substantive due process claim. *Lal v. California*, 746 F.3d 1112, 1117-18 (2014). Plaintiff's

8   Fourteenth Amendment due process claim fails, because a rational jury could only find that all

9   use of force by Deputy Ditrich was related to a law enforcement purpose. The undisputed

10  evidence is that Nelson presented a threat of immediate serious harm when lethal force was

11  used.

12          Plaintiff's Fourth Amendment claim also fails. An investigatory or *Terry* stop, which is

13  how Deputy Ditrich's encounter with Nelson began, is permissible so long as it is supported by

14  "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889

15  (1968). Reasonable suspicion is less than probable cause. *United States v. Crapser*, 472 F.3d

16  1141, 1147 (9th Cir. 2007). "Reasonable suspicion 'is formed by specific, articulable facts

17  which, together with objective and reasonable inferences, form the basis for suspecting that the

18  particular person detained is engaged in criminal activity.'" *United States v. Thompson*, 282

19  F.3d 673, 678 (9th Cir. 2002) (quoting *United States v. Rojas-Millan*, 234 F.3d 464, 468-69

20  (9th Cir. 2000)). Defendant Ditrich had reasonable suspicion to make the initial *Terry* stop

21  with Nelson based upon Nelson's furtive behavior and objective indications that he was

22  trespassing on private property.[6]  As Deputy Ditrich states, residential burglaries in rural

23  Thurston County are common, Nelson was behaving in a suspicious manner, and it was clear

24  he was not the owner of the property upon which a "no trespassing" sign was posted.

25

26          [6] *See* RCW 9A.52.070 – 090, which define criminal trespass in the first and second degrees, attached as
        Appendices A-D of the summary judgment motion filed by Co-Defendants Ditrich and Thurston County.

DEFENDANT JOHN D. SNAZA'S MOTION              9         **Freimund Jackson & Tardif, PLLC**
FOR SUMMARY JUDGMENT                                   **900 SW 16th Street, Suite 215**
NO. 3:18-cv-05184-RBL                                  **Renton, WA  98057**
                                                       **Tel: 206-464-7352**
                                                       **Fax: 206-466-6085**

1    Following Deputy Ditrich's initial contact with Nelson, Nelson's suspicious behavior

2  continued.  Further, he disobeyed Deputy Ditrich's instructions and lied about his name and

3  birthdate, actions that establish probable cause for arrest on their own.[7]  The situation then

4  escalated rapidly, with Nelson assaulting Deputy Ditrich multiple times[8] in an effort to steal

5  Ditrich's patrol vehicle, which contained Ditrich's canine partner and deadly weapons.  As

6  Nelson attempted to steal the vehicle,[9] he placed Nelson, who was standing along the running

7  board and trapped in the open doorway of the vehicle, in imminent danger.  Nelson backed into

8  another vehicle being driven by another motorist.  Thus, his behavior also placed others at risk

9  of serious injury or death.

10    Three factors must be considered by the court to determine whether force used is

11  reasonable: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to

12  the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or

13  attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865,

14  104 L. Ed.2d 443 (1989).  An officer appropriately uses lethal force if "it is necessary to

15  prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses

16  a significant threat of death or serious physical injury to the officer or others."  *Garner*, 471

17  U.S. at 3.  The discussion and application of the *Graham* factors by Co-Defendants Ditrich and

18  Thurston County is correct.[10]  Because Deputy Ditrich did not violate Plaintiff's Fourth

19  Amendment rights, there can be no liability under § 1983 to any of the defendants.

20

21    [7] "A person is guilty of Obstructing a Law Enforcement Officer if he or she willfully hinders, delays, or
obstructs any law enforcement officer in the discharge of his or her official powers or duties."  RCW 9A76.020.

22  Furthermore, "[a] person who knowingly makes a false or misleading material statement to a public servant is
guilty of a gross misdemeanor. 'Material statement' means a written or oral statement reasonably likely to be
relied upon by a public servant in the discharge of his or her powers or duties." RCW 9A.76.175.

23    [8] *See* RCW 9A.76.040 and RCW 9A.36.031(g), attached as Appendices E and F to the motion for
summary judgment filed by Co-Defendants Ditrich and Thurston County, which define the crimes of resisting

24  arrest and assault in the third degree respectively.

25    [9] As Co-Defendants point out, prior to the use of lethal force, Nelson committed multiple serious and
violent crimes.  These included theft of a motor vehicle (RCW 9A.56.065), first degree assault (RCW 9A.36.011),
and reckless driving (RCW 46.61.400).

26    [10] *See* Dkt. 31, Motion for Summary Judgment by Deputy Ditrich and Thurston County, pp. 10-15.

DEFENDANT JOHN D. SNAZA'S MOTION          10          **Freimund Jackson & Tardif, PLLC**
FOR SUMMARY JUDGMENT                                  **900 SW 16th Street, Suite 215**
NO. 3:18-cv-05184-RBL                                 **Renton, WA  98057**
                                                       **Tel: 206-464-7352**
                                                       **Fax: 206-466-6085**

1
2

**2.     There Was Neither Any Personal Involvement by Sheriff Snaza in the Shooting Nor any Causal Connection Between Sheriff Snaza's Conduct and the Alleged Constitutional Violation**

3       Even if the court finds that a jury must resolve issues of fact to determine whether

4   Deputy Ditrich's conduct was constitutionally permissible, there is still no basis for imposing

5   individual liability under § 1983 on Sheriff Snaza.  There is no *respondeat superior* liability for

6   supervisors under § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed 2d

7   868 (2009); *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir.

8   2007). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead

9   that each Government-official defendant, through the official's own individual actions, has

10  violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The term "supervisory liability" is

11  therefore something of a "misnomer," because "[e]ach Government official, his title

12  notwithstanding, is only liable for his or her own misconduct."  *Id*. at 677.  "A supervisor may

13  be liable under § 1983 only if there exists either '(1) his or her personal involvement in the

14  constitutional deprivation, or (2) a sufficient causal connection between the supervisor's

15  wrongful conduct and the constitutional violation.'"  *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th

16  Cir. 2001) (quoting *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991), and

17  *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989)).  In *Corales*, the Ninth Circuit identified four

18  general situations in which supervisory liability may be imposed: (1) "for setting in motion a

19  series of acts by others, which [the supervisor] knew or reasonably should have known would

20  cause others to inflict constitutional injury;" (2) for the supervisor's "own culpable action or

21  inaction in the training, supervision, or control of [ ] subordinates,"; (3) "for [the supervisor's]

22  acquiescence in the constitutional deprivations of which the complaint is made,"; or (4) "for

23  conduct that showed a reckless or callous indifference to the rights of others."  *Corales*, 567

24  F.3d at 570.  There is no evidence to establish the supervisory liability of Sheriff Snaza under

25  any of these theories.

26

1   A supervisor may be liable for the acts of his subordinates under § 1983 "if the

2   supervisor participated in or directed the violations, or knew of the violations and failed to act

3   to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). It is undisputed Sheriff

4   Snaza neither personally participated in nor set in motion any series of acts leading to Deputy

5   Ditrich's encounter with Nelson. He had no knowledge of the events until after they occurred,

6   and he was not present such that he could intervene to stop them.

7   Rather than show personal participation or direction, Plaintiff attempts to impute

8   liability to Sheriff Snaza by alleging he ratified the alleged constitutional violations of Deputy

9   Ditrich. In limited circumstances a supervisor's subsequent "ratification" of another's conduct

10  can form the basis for liability under § 1983. *See Larez v. City of Los Angeles*, 946 F.2d 630,

11  646 (9th Cir. 1991). "The decision to ratify specific conduct, however, must approve both the

12  subordinate's decision and the basis for it, and the ratification decision must be 'the product of

13  a 'conscious, affirmative choice' to ratify the conduct in question." *Peschel v. City of*

14  *Missoula*, 686 F. Supp. 2d 1092, 1102 (D. Mont. 2009) (citing *Haugen v. Brosseau*, 351 F.3d

15  372, 292 (9th Cir. 2003), *rev'd on other grounds*, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d

16  583 (2004)). "Importantly, the circumstances of the ratification must also demonstrate that the

17  supervisor had previously set in motion acts of others which caused the others to inflict a

18  constitutional injury." *Peschel*, 686 F. Supp. 2d at 1102 (citing *Larez*, 946 F.2d at 645-46).

19  The mere fact that a supervisor expresses an opinion that subordinate officers acted

20  appropriately is <u>not</u> sufficient to constitute ratification of the subordinate's alleged

21  unconstitutional conduct such that liability to the supervisor can attach. *Peschel*, 686 F. Supp.

22  2d at 1102, 1104-05.

23  The facts and holding of *Peschel*, a decision by the District Court of Montana, are

24  illustrative. The plaintiff, Peschel, was a medical doctor who was trying to assist a suicidal

25  woman inside her vehicle who had nearly overdosed on medications. *Id*. at 1095. Peschel was

26

1   arrested by police officers from the City of Missoula, because he ignored their directives to

2   move away from the woman's vehicle during a standoff that lasted approximately 46 minutes.

3   *Id*.  Peschel was subsequently charged with obstructing a police officer, a misdemeanor under

4   Montana law, but he was ultimately acquitted of the offense.  *Id*. at 1095.  Later, Peschel sued

5   the officers, their supervisors, and the City.  *Id*. at 1096.

6          One of the supervisors in *Peschel*, Assistant Chief of Police Muir, testified at his

7   deposition he had no question the officers had acted appropriately, and he verified he had not

8   counseled, reprimanded, or otherwise criticized them for how they handled the incident.  *Id*. at

9   1104.  The Assistant Chief also drafted an opinion letter, which he had intended to publish in a

10  local newspaper, approving of the officers' conduct and performance in handling the situation.

11  *Id*.  Analyzing the potential liability of the Assistant Chief, the court reiterated that "under

12  limited circumstances a supervisor's subsequent 'ratification' of a subordinate's conduct can

13  subject the supervisor to liability under § 1983," but it went on to clarify "those circumstances,

14  however, require more than a mere ratification itself."  *Peschel*, 686 F. Supp. 2d at 1104.

15  Reviewing the facts and holding of *Larez*, the court explained that the supervisor must have set

16  in motion the events and actions which led to the subordinate officers' violations of the

17  plaintiff's constitutional rights before supervisory liability will attach.[11]  Granting summary

18  judgment to Assistant Police Chief Muir the court stated, "In contrast to the circumstances in

19  *Larez*, Peschel has not presented evidence of any <u>prior conduct</u> of Muir which set in motion the

20  conduct of the officers at the scene of Peschel's arrest.  There exists no evidence of the

---

21          [11] Distinguishing *Larez* the court in *Peschel* explained, "Chief Gates' ratification of the officers'
22  excessive use of force imposed liability on him due to his prior conduct.  The evidence demonstrated that through
    Chief Gates' history of his prior endorsement and encouragement of police department customs and practices, and
    through his inappropriate investigation practices, Chief Gates 'condoned, ratified, and encouraged the excessive
23  use of force.'  The history and course of conduct in which the police department and Chief Gates engaged
    provided Gates with notice of prior constitutional violations which went unreprimanded.  The circumstances
24  demonstrated that Chief Gates made a conscious choice not to discipline officers for constitutional violations, and
    not to establish new procedures to prevent future violations.  Thus, Gates had 'set[] in motion a series of acts by
25  others, or knowingly refused to terminate a series of acts by others which he kn[e]w or reasonably should [have]
    know[n] would cause others to inflict the constitutional injury' of which the plaintiff complained." *Peschel*, 686 F.
26  Supp. 2d at 1105 (citing *Larez*, 946 F.2d at 646).

1    requisite causal connection between Muir's subsequent approval of his officers' conduct and

2    the prior events.  There is also no evidence that Muir's approval was "the product of a

3    'conscious, affirmative, choice' to ratify' the unconstitutional conduct in question."  *Peschel*,

4    686 F. Supp. 2d at 1105 (citing *Haugen, supra*, and *Logan v. City of Pullman Police Dep't.*,

5    2006 U.S. Dist. LEXIS 26989, 2006 WL 1148727 (E.D. Wash. 2006) (emphasis added)).

6         Just as in *Peschel*, here there is no evidence of the type of ratification required for

7    supervisory liability.  Sheriff Snaza has made no "conscious, affirmative choice" to ratify

8    unconstitutional conduct.  Further, there was no prior conduct by Sheriff Snaza that had any

9    causal connection to the incident in which Deputy Ditrich shot Nelson.

10        Alternatively, Plaintiff alleges supervisory liability can attach to Sheriff Snaza because

11   he "failed to train Defendant Ditrich on the proper use of force when effecting an arrest."

12   Complaint, ¶ XX.  "[C]ulpability for deprivation of rights is at its most tenuous where a claim

13   turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed.

14   2d 417 (2011).[12]  In order to prevail on such a claim, the plaintiff must show a supervisor's

15   failure to train a subordinate amounted to deliberate indifference.  *Canell v. Lightner*, 143 F.3d

16   1210, 1213 (9th Cir. 1998) (citing *Canton v. Harris*, 489 U.S. 378, 388, 103 L. Ed. 2d 412, 109

17   S. Ct. 1197 (1989)). This requires the plaintiff to establish that:

18        [I]n light of the duties assigned to specific officers or employees, the need for more
19        or different training is obvious, and the inadequacy so likely to result in violations
         of constitutional rights that the policymakers . . . can reasonably be said to have
20        been deliberately indifferent to the need.

21   *Canton*, 489 U.S. at 390.  Only when the facts show such deliberate indifference will a

22   supervisor be "on actual or constructive notice" of the need for a subordinate's additional

23   training such that supervisory liability can attach. *Farmer v. Brennan*, 511 U.S. 825, 841, 114

24
---

25        [12] "Although *Connick* analyzed a claim against a governmental official in his official capacity, *Connick* is
     equally applicable to claims against government supervisors in their individual capacity." *Perez v. United States*,
26   103 F.Supp. 3d 1180, 1202 (S.D. Cal 2015) (citing *Flores v. City of Los Angeles*, 758 F.3d 1154, 1158-59 (9th
     Cir. 2014).

1   S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citing *Canton*, 489 U.S. at 396); *see also Clement v.*

2   *Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002).

3   Plaintiff's training theory likewise fails based on a lack of any evidence.  There is no

4   testimony or evidence from which a rational trier of fact could conclude that Sheriff Snaza was

5   on notice that there was any obvious need for Deputy Ditrich to have additional training on the

6   use of force.  The undisputed testimony is that Deputy Ditrich was a seasoned Thurston County

7   Deputy, having served in that position for nineteen years before which time he had been a

8   police officer for the City of Lacey.  Ditrich Decl., ¶ 2.  Deputy Ditrich had extensive prior

9   training, which included the lawful use of force and deadly force.  *Id*.  Thus, there were no

10  facts that would made it obvious to Sheriff Snaza that there was an obvious need for more or

11  additional training.  Further, even assuming unconstitutional conduct occurred (none did), there

12  is no evidence of a causal connection between such conduct and a lack of additional training.

13  In similar vein, Plaintiff alleges liability can attach to Sheriff Snaza based on his

14  alleged ratification of "the decision by other employees of the Sheriff's Office and other

15  Thurston County departments to destroy evidence and fail to investigate the inconsistencies in

16  Defendant Ditrich's version of the events."  Complaint, ¶ XV.  However, there is no support to

17  Plaintiff's claim that evidence was destroyed.  Further, Sheriff Snaza did not personally

18  investigate the incident.  Further, Plaintiff can cite no case in which alleged negligence or

19  mishandling of an investigation of an incident *after* it occurred has occurred established

20  supervisory liability.   "[F]or cases involving supervisory inaction following subordinate

21  misconduct, a supervisor must have knowledge of pervasive and widespread conduct posing an

22  unreasonable risk of constitutional injury before supervisory liability can attach."  *Doe v. City*

23  *of San Diego*, 35 F. Supp. 3d 1214 at 1228-29 (2014).  Even accepting whatever criticisms of

24  the investigation of the shooting Plaintiff makes, Plaintiff can point to no knowledge by Sheriff

25

26

DEFENDANT JOHN D. SNAZA'S MOTION                15                **Freimund Jackson & Tardif, PLLC**
FOR SUMMARY JUDGMENT                                             **900 SW 16th Street, Suite 215**
NO. 3:18-cv-05184-RBL                                           **Renton, WA  98057**
                                                                **Tel: 206-464-7352**
                                                                **Fax: 206-466-6085**

1    Snaza of pervasive or widespread conduct posing a reasonable risk of harm. Without such

2    knowledge, Sheriff Snaza cannot be liable under § 1983.

3        The allegations of Plaintiff's complaint also suggest Plaintiff may argue that liability

4    should attach to Sheriff Snaza by virtue of a conspiracy to violate Nelson's constitutional

5    rights. This theory is also baseless and unsupported by evidence.  To make a claim based on a

6    conspiracy under § 1983, the plaintiff must show "an agreement or meeting of the minds to

7    violate constitutional rights" among the participants.  *Crowe v. County of San Diego*, 608 F.3d

8    406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283,

9    1301 (9th Cir. 1999).  "The defendants must have, by some concerted action, intend[ed] to

10   accomplish some unlawful objective for the purpose of harming another which results in

11   damage." *Mendocino*, 192 F.3d at 1301 (citing *Gilbrook v. City of Westminster*, 177 F.3d 839,

12   856 (9th Cir. 1999)). "[T]he requisite causal chain can occur through the 'setting in motion [of]

13   a series of acts by others which the actor knows or reasonably should know would cause others

14   to inflict the constitutional injury.'"  *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997)

15   (citing *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978)).

16       Here, Plaintiff's allegations of a conspiracy are wholly conclusory and lack any

17   evidentiary support.  There are no facts showing an unlawful agreement between any of the

18   defendants, much less an agreement to which Sheriff Snaza was a participant.  Nor is there any

19   evidence that such an unlawful agreement caused a constitutional violation.  Thus, any effort

20   by Plaintiff to impute liability to Sheriff Snaza based on the unsupported allegation of a

21   conspiracy also fails.

22       **3.      Sheriff Snaza is Entitled to Qualified Immunity**

23       Because supervisory liability under § 1983 is personal liability, an official against

24   whom a claim of supervisory liability is advanced may assert the defense of qualified

25   immunity.  *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L. Ed. 2d

26

1    1149 (2011); *Doe v. City of San Diego*, 35 F.Supp.3d 1214, 1225 (S.D. Cal. 2014).  The

2    qualified immunity doctrine provides a public official performing discretionary functions

3    immunity in a civil action for damages, provided his or her conduct does not violate clearly

4    established federal statutory or constitutional rights of which a reasonable person would have

5    known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

6    Qualified immunity is an "immunity from suit rather than a mere defense to liability[.]"

7    *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 272 (2001).

8         The court addresses two questions in determining whether an official is entitled to

9    qualified immunity: (1) whether a constitutional right has been violated considering the facts in

10   the light most favorable to the party asserting the injury and (2) whether the right was clearly

11   established viewed in the specific context of the case.  *Saucier v. Katz*, 533 U.S. 194, 201-02,

12   121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  The court has discretion to consider these

13   questions in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d

14   565 (2009).  The Supreme Court has reiterated "the longstanding principle that 'clearly

15   established law' should not be defined 'at a high level of generality.'"  *White v. Pauly*, ___ U.S.

16   ___, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quoting *al-Kidd*, 563 U.S. at 742).  A

17   Government official's conduct violates clearly established law when, at the time of the

18   challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that "every reasonable

19   official would [have understood] that what he is doing violates that right."  *Anderson v.

20   Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

21         "[T]aking qualified immunity into account, a supervisor faces liability under the

22   Fourth Amendment only where 'it would be clear to a reasonable [supervisor] that his conduct

23   was unlawful in the situation he confronted.'"  *Chavez v. United States*, 683 F.3d 1102, 1110

24   (9th Cir. 2012) (quoting *Saucier*, 533 U.S. at 194); *see also Perez*, 103 F. Supp. 3d at 1208

25   ("*Chavez* is the current standard for supervisory liability in the Fourth Amendment context.").

26

To meet this standard, a plaintiff must show, at a minimum, a "factual basis for imputing . . . knowledge" of an unconstitutional act undertaken by a subordinate, coupled with culpable action or inaction.  *Chavez*, 683 F.3d at 1111.  In the Fourth Amendment context, it requires a showing of "knowledge of an unconstitutional pattern or practice of excessive force used by subordinates, coupled with culpable action or inaction."  *Perez*, 103 F.Supp.3d at 1209.

At most, the only conduct Plaintiffs can attribute to Sheriff Snaza is:

- Being the elected Sheriff of Thurston County, which employs Deputy Ditrich;
- Establishing Sheriff's Office policies and procedures;
- Reviewing the CIIT and Sheriff's Office internal investigations of the Nelson shooting after they occurred; and
- Stating in his deposition that he believes the investigations were conducted appropriately.

Neither the above facts, nor any other evidence Plaintiff can put forward, demonstrates prior knowledge by Sheriff Snaza of an unconstitutional pattern or practice. Nor does any evidence in this case show culpable action or inaction by the Sheriff.  Therefore, even accepting the unsupported assertion that some wrongful act was committed by Deputy Ditrich in connection with the Nelson incident, Sheriff Snaza is entitled to qualified immunity for any claim asserted against him in his individual capacity.

**B.      Plaintiffs State Law Claims Must Be Dismissed**

To the extent this court chooses to exercise supplemental jurisdiction over Plaintiffs' state law claims,[13] those claims must also be dismissed on summary judgment.  The existence of probable cause and the reasonable use of force preclude Plaintiff's state law claims, just as they preclude his federal claims.  Additionally, Plaintiff fails to state any actionable negligence

---

[13] Where a district court dismisses all claims over which it has original jurisdiction on summary judgment, it has discretion as to whether it will continue to exercise supplemental jurisdiction over any state law claims.  *See, e.g., Bryant v. Adventist Health Sys.*, 289 F.3d 1162, 1169 (9th Cir. 2002).

DEFENDANT JOHN D. SNAZA'S MOTION          18
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

duty, and Plaintiff's negligence claim is precluded by the public duty doctrine.  Further, even if these claims were actionable, they must be dismissed as to Sheriff Snaza, because there is no basis for imputing liability to him individually.

> **1.     The Existence of Probable Cause and the Reasonableness of the Use of Force by Deputy Ditrich Requires Dismissal of All Plaintiff's State Law Claims**

For the same reasons that Plaintiff's civil rights claims under § 1983 must be dismissed – the existence of probable cause and the reasonableness of force used by Deputy Ditrich – Plaintiff's state law claims must also be dismissed.  The existence of probable cause is a complete defense to a claim for false arrest or false imprisonment.[14]  *McBride v. Walla Walla County*, 95 Wn. App. 33, 38, 975 P.2d 1029 (1999) (citing *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563-64, 852 P.2d 295 (1993), and *Fondren v. Klickitat County*, 79 Wn. App. 850, 856, 905 P.2d 928 (1995)).  "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed."  *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974). This is an objective standard.  *Bender v. City of Seattle*, 99 Wn.2d 582, 597, 664 P.2d 492 (1983). Further, where a Fourth Amendment § 1983 claim is dismissed based upon the defendant's use of reasonable force, a corresponding state law claim should also be dismissed.  *See, e.g., Nehad v. Zimmerman*, 2017 U.S. Dist. LEXIS 208537, *30, 2017 WL 6453476 (S.D. Cal. Dec. 18, 2017) (citing *Yount v. City of Sacramento*, 43 Cal. 4th 885, 76 Cal.Rptr.3d 787, 183 P.3d 471, 484 (Cal. 2008)).

Again, the initial investigatory stop was lawful based on Nelson's evasive and suspicious behavior.  He confirmed he was not the owner of the property and acknowledged the owner had posted a "no trespassing" sign.  By the time Deputy Ditrich told Nelson he was

---

[14] A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person. *Jacques v. Sharp*, 83 Wn. App. 532, 536, 922 P.2d 145 (1966).

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

19

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

1  under arrest, he had far more than probable cause to suspect a crime had been or was being

2  committed.  He knew Nelson had given him false information and was obstructing his attempt

3  to ascertain whether Nelson had active warrants.   As described above, Deputy Ditrich

4  attempted to obtain information from Nelson and to verify whether he had warrants without

5  using any force.   The force used was measured and appropriate in response to Nelson's

6  increasingly erratic and assaultive behavior.  Lethal force was only used once the lives of

7  Deputy Ditrich himself and others were imminently threatened by Nelson's escalating

8  violence.

9          **2.      Plaintiff Fails to State an Actionable Negligence Claim**

10          The threshold requirement in a tort lawsuit is the existence of a duty of care which runs

11  to the Plaintiff.  *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975).  Since the Court of

12  Appeals' decision in *Georges v. Tudor*, 16 Wn. App. 407, 556 P.2d 564 (1976), Washington

13  courts have followed the "general rule that negligent performance of a governmental police

14  power duty enacted for the benefit of the general public imposes no municipal liability running

15  to individual members of the public . . .".  *Id.* at 410.  This limitation on tort liability related to

16  the exercise of municipal police power is generally known as the "public duty doctrine."  "This

17  doctrine 'is simply a tool [courts] use to ensure that governments are not saddled with greater

18  liability than private actors as they conduct the people's business.'"  *Caldwell v. City of*

19  *Hoquiam*, 194 Wn. App. 209, 215, 373 P.3d 271 (2016) (quoting *Munich v. Skagit Emergency*

20  *Commc'ns Ctr.*, 175 Wn.2d 871, 886, 288 P.3d 328 (2012) (Chambers, J., concurring)). Law

21  enforcement is a government regulatory function protected by the doctrine.  *See, e.g., Johnson*

22  *v. State*, 164 Wn. App. 740, 265 P.3d 199 (2011).  Thus, "[a]s a general rule, law enforcement

23  activities are not reachable in negligence."  *Keates v. City of Vancouver*, 73 Wn. App. 257,

24  267, 869 P.2d 88 (1994) (citing cases).  The question of whether an actionable duty exists

25

26

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

20

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

1   under the framework of the public duty doctrine is always a question of law for the court.

2   *Taylor*, 111 Wn.2d at 168.

3        To the extent Plaintiff intends to assert a claim for negligent training or supervision of

4   Deputy Ditrich, Plaintiff's claim is precluded by the public duty doctrine.  Courts in the

5   Western District, including this court, have held a police department's duty to supervise, train,

6   and retain its officers is a duty owed to the public at large, not to an individual.  *See, e.g.,*

7   *Escalante v. City of Tacoma,* 2016 U.S. Dist. LEXIS 176148, *21, 2016 WL 7375301 (W.D.

8   Wash. 2016) ("A city's duty to train its police officers is owed to the public at large"); *Shope v.*

9   *City of Lynnwood*, 2011 U.S. Dist. LEXIS 32069, *19-20, 2011 WL 1154447 (W.D. Wash.

10   2011) ("The duty of the City to hire, train, retain, and supervise its officers is owed to the

11   public at large, not to plaintiff individually"); *Dowell v. City of Lynwood*, 2007 U.S. Dist.

12   91186, *18-21, 2007 WL 4365793 (W.D. Wash. 2007) (holding that the public duty doctrine

13   bars claims for negligent hiring, supervision, and retention of police officers).  Additionally, as

14   Co-Defendants point out in their summary judgment briefing, Washington courts have

15   recognized there is no cause of action in Washington for negligent police investigations. *See,*

16   *e.g., Laymon v. State*, 99 Wn. App. 518, 530, 994 P.2d 232 (2000); *Fondren v. Klickitat*

17   *County*, 79 Wn. App. 850, 862, 905 P.2d 928 (1995).

18        There are four narrow exceptions to the public duty doctrine that permit liability if their

19   conditions are satisfied: (1) legislative intent; (2) failure to enforce; (3) the rescue doctrine; and

20   (4) special relationship. *Gorman v. Pierce County*, 176 Wn. App. 63, 75, 307 P.3d 795 (2013).

21   As explained below, Plaintiff satisfies none of these four exceptions.

22        **(1)**      **The Legislative Intent Exception Does Not Apply**

23        The legislative intent exception applies where a legislative enactment "evidences a

24   clear legislative intent to identify and protect a particular and circumscribed class of persons."

25   *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988).  In contrast, when a legislative

26

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

21

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

enactment imposes "a duty on public officials as a whole, no duty in tort is owed to a particular individual." *Baerlein v. State*, 92 Wn.2d 229, 232, 595 P.2d 930 (1979). Plaintiff's complaint alleges no statute giving rise to a duty under this exception, and he can point to none.

### (2)   The Failure to Enforce Exception Does Not Apply

The criteria for the failure to enforce exception are:

(1)   Governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation.
(2)   They fail to take corrective action.
(3)   There is a statutory duty to do so.
(4)   And the plaintiff is within the class the statute intended to protect.

*Smith*, 59 Wn. App. at 814 (emphasis added); *Honcoop*, 111 Wn.2d at 190. All four elements of the exception must be met, and the plaintiff has the burden of establishing each element. *Atherton Condo Ass'n v. Blume,* 115 Wn.2d 506, 531, 797 P.2d 250 (1990). The failure to enforce exception is construed narrowly.   *Id.*   Here, Plaintiff can point to no mandatory statutory duty by any of the defendants, nor any failure to take corrective action prior to the Nelson incident.

### (3)   The Rescue Doctrine Does Not Apply

Under the rescue doctrine, a public entity has a duty "to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff." *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 523 (1987). This special duty exists because a public entity's assurances may induce reliance. *Osborn v. Mason County*, 157 Wn.2d 18, 25, 134 P.2d 197 (2006). "In sum, a public entity has a duty under the rescue doctrine when an injured party reasonably relies, or is in privity with a third party that reasonably relies, on its promise to aid or warn. *Osborn*, 157 Wn.2d at 26. There are no facts showing assurances inducing reliance were made to Nelson in any way.

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

22

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**

1

**(4)     The Special Relationship Exception Does Not Apply**

2          Under the special relationship exception to the public duty doctrine, a duty will arise only

3    where (1) there is direct contact or privity between a public official and the injured plaintiff which

4    sets the latter apart from the general public, and (2) there are express assurances given by the

5    public official which (3) gives rise to justifiable reliance on the part of the plaintiff. *Taylor v.*

6    *Stevens County*, 111 Wn.2d 159, 171, 759 P.2d 447 (1988).  Again, there are no facts supporting a

7    claim that express assurances were made by the Defendants nor that there was any justifiable

8    reliance by Nelson.  As Judge Coughenour held in *Dowell*, simply being arrested does not

9    create a special relationship under the public duty doctrine; otherwise, "there would be no

10   injury suffered by an individual at the hands of the police that would *not* be the product of a

11   'special relationship' simply by virtue of the fact that it *happened*. If the public duty doctrine

12   means anything, it cannot be this." *Dowell*, 2007 U.S. Dist. LEXIS 91186 at *19.

13
14

**3.     Plaintiffs' State Law Claims Cannot Be Imputed to Sheriff Snaza Individually**

15          Last, even if Plaintiff's state law claims were actionable, there is no basis for imputing

16   liability for any of them to Sheriff Snaza individually.  *Respondeat superior* imposes liability

17   on an employer for the torts of an employee who is acting on the employer's behalf.  *Niece v.*

18   *Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997).   The Thurston County

19   Sheriff's Department, not Sheriff Snaza individually, is the employer of Deputy Ditrich.  Even

20   if liability for false arrest or negligence could be imputed to Thurston County as Deputy

21   Ditrich's employer, it cannot be imputed to the Sheriff in his individual capacity.  Thus, even if

22   the court finds that the County owed some actionable duty to Plaintiff and/or that Nelson was

23   subjected to false arrest, liability for these state law torts does not extend to Sheriff Snaza

24   individually. Plaintiff's state law claims, as to Sheriff Snaza, must therefore be dismissed.

25
26

1

## VI.   CONCLUSION

2      For all the forgoing reasons and those set forth in the summary judgment motion filed

3 by Deputy Ditrich and Thurston County, the court should grant the Defendants' summary

4 judgment motions and dismiss all Plaintiff's claims with prejudice.

5      DATED this 27th day of December, 2018.

6                                         s/ Gregory E. Jackson
                                         GREGORY E. JACKSON, WSBA #17541
7                                         Freimund Jackson & Tardif, PLLC
                                         900 SW 16th Street, Suite 215
8                                         Renton, WA  98057
                                         Telephone:  (206) 582-6001
9                                         Facsimile:  (206) 466-6085
                                         GregJ@fjtlaw.com
10                                        Attorneys for Defendant John D. Snaza

11

12                                        s/ John R. Nicholson
                                         JOHN R. NICHOLSON, WSBA #30499
13                                        Freimund Jackson & Tardif, PLLC
                                         900 SW 16th Street, Suite 215
14                                        Renton, WA  98057
                                         Telephone:  (206) 582-6001
15                                        Facsimile:  (206) 466-6085
                                         Johnn@fjtlaw.com
16                                        Attorneys for Defendant John D. Snaza

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I certify that on the 27th day of December, 2018, I caused a true and correct copy of

this document to be served on the following in the manner indicated below:

| | |
|---|---|
| Douglas R. Cloud, WSBA #13456<br>Law Office of Douglas R. Cloud<br>1008 Yakima Avenue, Suite 202<br>Tacoma, WA  98405<br>drc@dcloudlaw.com<br><br>Attorney for Plaintiff | ( X )  ECF Electronic Service |
| W. Dale Kamerrer<br>Law, Lyman, Daniel, Kamerrer &<br>Bogdanovich, P.S.<br>P.O. Box 11880<br>Olympia, WA  98505-1880<br>dkamerrer@lldkb.com<br><br>Attorney for Defendants Thurston County and<br>Rodney T. Ditrich | ( X )  ECF Electronic Service |

DATED this 27th day of December, 2018, in Olympia, Washington.

_s/ Tasha Cepeda_
TASHA CEPEDA, Legal Assistant to
GREGORY E. JACKSON
JOHN R. NICHOLSON
711 Capitol Way S., Suite 602
Olympia, WA 98501
TashaC@fjtlaw.com

DEFENDANT JOHN D. SNAZA'S MOTION
FOR SUMMARY JUDGMENT
NO. 3:18-cv-05184-RBL

25

**Freimund Jackson & Tardif, PLLC**
**900 SW 16th Street, Suite 215**
**Renton, WA  98057**
**Tel: 206-464-7352**
**Fax: 206-466-6085**