1

The Honorable Ronald B. Leighton

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                    AT TACOMA

9    JOSEPH A. NELSON, individually and as
     Personal Representative of the ESTATE OF          **Case No.  3:18-cv-05184-RBL**
10   JOEL A. NELSON, and its statutory
     beneficiaries,                                    **PLAINTIFF'S MOTION FOR**
11                                                     **SANCTIONS BASED ON**
                                 Plaintiff,            **DEPENDANTS' THURSTON COUNTY,**
12                                                     **RODNEY T. DITRICH AND JOHN D.**
     vs.                                               **SNAZA'S SPOLIATION OF EVIDENCE**
13
     THURSTON COUNTY, a Washington
14   municipality; RODNEY T. DITRICH,                  **NOTE ON MOTION CALENDAR:**
     individually; JOHN D. SNAZA, individually;        **FEBRUARY 8, 2019**
15   and DOES 1 through 15, individually,
                                                       ☒ **REQUEST FOR ORAL ARGUMENT**
16                              Defendants.

17                        I.  RELIEF REQUESTED

18          **COMES NOW**, the plaintiff, Joseph A. Nelson, individually and as Personal Representative

19   of the Estate of Joel A. Nelson, by and through his attorney of record, Douglas R. Cloud, and does

20   hereby request that the Court enter sanctions against the defendants, Thurston County, Rodney T.

21   Ditrich and John D. Snaza for spoilation of evidence as set forth herein.  The sanctions sought by

22   plaintiff is for the court to direct a verdict in his favor on the issue of liability pertaining to his claims

23   brought against the defendants pursuant to 46 U.S.C. § 1983 and as otherwise set forth in the

24   Complaint.  In the alternative to a directed verdict, the plaintiff seeks the imposition of lesser

25   sanctions.

26   //

## II. **STATEMENT OF FACTS**

Plaintiff believes that Joel A. Nelson was initially shot outside of a patrol vehicle as he went to his knees in response to Thurston County Sheriff Deputy Rodney T. Ditrich's (henceforth "Deputy Ditrich") command to "get on your knees" as Deputy Ditrich was arresting Nelson without probable cause on January 5, 2016. [1,2,3,4,5]

There is strong photographic evidence that Deputy Ditrich confronted Mr. Nelson at the front of the patrol vehicle.  At the scene, two bezel marks matching his Thurston County Sheriff Office (henceforth "TCSO") issued flashlight were identified and photographed on the hood of the vehicle.[6] Additionally, Mr. Nelson's autopsy photos are consistent with the use of a flashlight by an arresting officer administering a blow to Mr. Nelson's nose.[7]  A glove print, hand prints and other marks were noted by investigators on the hood of Deputy Ditrich's patrol vehicle.[8]

Deputy Ditrich has only admitted to taking three rapid fire shots as his patrol vehicle backed across 93rd Avenue in Thurston County.[9]  Deputy Ditrich's testimony is contradicted by witnesses hearing four distinct shots - one shot followed by a delay of between one and two minutes - whereupon three rapid-fire shots were heard.[10]

As a result, there is strong evidence on the night of the shooting that a fourth shot had been taken by Deputy Ditrich while he and Joel Nelson were outside the vehicle.

---

[1] See Declaration of Luis Ramos dated December 29, 2018 (henceforth "Ramos Decl."). ¶ 13, 2:19-21.
[2] See Declaration of Douglas R. Cloud in Support of Motion for Sanctions for Spoliation by Defendants (henceforth "Cloud Decl."), Ex. 1 - Thurston County Coroner's Autopsy Report dated June 6, 2016.
[3] See Cloud Decl., Ex. 2 - John G. Peters, Jr.'s Report dated January 11, 2019, p. 14.
[4] See Cloud Decl., Ex. 3 - Leo Poort's Report dated March 8, 2018, p. 1 and 14.
[5] See Cloud Decl., Ex. 4 - Neil Low's Report dated January 9, 2019, p. 2.
[6] See Cloud Decl., Ex. 5 - Photos of the hood of Deputy Ditrich's Chevy Tahoe dated January 5, 2016 from Lewis County Det. Sgt. Kevin Engelbertson.
[7] See Cloud Decl., Ex. 6 - Autopsy Photo of Joel A. Nelson's nose posthumous.
[8] See Cloud Decl., Ex. 7 - Photos of the flashlight bezel marks on the hood of Deputy Ditrich's Chevy Tahoe, dated January 5, 2016 from Lewis County Det. Sgt. Kevin Engelbertson; and Cloud Decl., Ex. 8 - Grays Harbor County Sheriff's Office First Follow-up Section of Report dated January 14, 2016.
[9] See Cloud Decl., Ex. 9 - Deposition Transcript of Rodney T. Ditrich taken on August 31, 2018 (henceforth "Ditrich Dep."), 131:13-15.  Also, See Cloud Decl., Ex. 21 - Deputy Ditrich's original (week later) transcribed statement (henceforth "Ditrich's Statement"), 11:32-38 and 22:3:12.
[10] See Ramos Decl., ¶ 13, 2:19 to ¶17, 3:7.

There was physical evidence on the patrol vehicle while it was still at the scene indicating an altercation or struggle occurred near and/or on Deputy Ditrich's patrol vehicle, a Chevrolet ("Chevy") Tahoe.  Evidence that was noted by investigators shortly after Joel Nelson's death on January 5, 2015, included photographs of hand, fingerprints and glove print evidence on the hood of the vehicle.[11]  Inside the vehicle, there were possible spent bullets and cartridges and possible gunshot reside.

Nonetheless, the physical evidence in and on the patrol vehicle was promptly destroyed and completely removed from the vehicle by Thurston County at the instruction of Thurston County Sheriff John D. Snaza (henceforth "Sheriff Snaza").[12]  Specific reference to blood splatter evidence in the vehicle was documented.[13]

TCSO took steps to alter and destroy the evidence in and on the patrol vehicle as early as January 6, 2016.[14]  On January 14, 2016, the patrol vehicle was towed to Advance Environmental for removal of the blood splatter and other bio-hazard cleanup.[15]

A.    **The Initial Stop.**

Joel A. Nelson was initially contacted by Deputy Ditrich on or near the south side of the public right of way on 93rd Avenue in Thurston County, Washington, just east of the intersection of 93rd Avenue and Tilley Road, which was at or near a residence and premises occupied by Luis Ramos and Catalina Robles and their children.[16]  Deputy Ditrich claimed he noticed Joel Nelson as he was driving his patrol car westbound on 93rd Avenue and thought he looked "suspicious" because

[11]See Cloud Decl., Ex. 5 - Photos of Dep. Ditrich's vehicle taken by Lewis County Det. Sgt. Kevin Engelberston dated January 5, 2016.
[12] See Cloud Decl., Ex. 10 - Deposition Transcript of John D. Snaza taken on September 17, 2018 (henceforth "Snaza Dep."), 69:25-70:13; 70:22-71:5; 72:1-3.
[13] See Cloud Decl., Ex. 11 - Email from Bryon Newby to Dana Reimholz, Dennis Tody, Black Lake Collision, Gordon Phillips and Bryan Hanks dated January 13, 2016.
[14] See Cloud Decl., Ex. 12 - Email from Sgt. Mike Hirte to Bryan Hanks dated January 6-7, 2018 and email from Sgt. Mike Hirte to Bryon Newby dated January 6, 2016, p. 2.
[15] See Cloud Decl., Ex. 13 - Invoice from Advance Environmental, Inc., and two invoices from Summit Towing.
[16] See Cloud Decl., Ex. 18 - Transcript of Sworn Statement of Catalina Robles dated January 5, 2016 (henceforth Robles' Sworn Statement), 1:35-38; and See Ramos Decl., ¶ 2, 1:20-21.

1  he turned his head away from him as he drove by and Deputy Ditrich thought he may have been on

2  private property.[17]   Sheriff Snaza described this as a "felony stop."[18]

3       Two witnesses, Luis Ramos and his wife Catalina Robles, were inside the residence adjacent

4  to the driveway where Deputy Ditrich initially parked his vehicle, leaving the driver's door open and

5  the vehicle running.  Both Mr. Ramos and Ms. Robles gave statements immediately after the incident

6  described herein.  Mr. Ramos and Ms. Robles saw and heard part of the incident. [19],[20]

7       Mr. Ramos, while he was eating in his kitchen, heard a voice yell, "get on your knees,"

8  followed immediately by a gunshot.  He then looked through his kitchen window and saw a patrol

9  vehicle parked in the driveway adjacent to his home.  Mr. Ramos saw the patrol vehicle back onto

10  93rd Avenue and then return to the driveway.  Mr. Ramos told his wife and kids to go downstairs.

11       Mr. Ramos saw the patrol vehicle, as the vehicle again backed across 93rd Avenue.  The

12  driver's door was open.  Mr. Ramos heard three more shots in rapid succession, identical in sound

13  as the first shot, as the patrol vehicle backed across the street.  Mr. Ramos has stated that the delay

14  between the first and the three rapid fire shots was between one and two minutes.[21]

15       Ms. Robles also heard one shot, followed by a delay, as she and the children went downstairs,

16  and then three shots in rapid succession.[22]

17  **B.**    **The Investigation.**

18       Deputies of the TCSO and five (5) other agencies arrived at the scene shortly after Deputy

19  Ditrich's "shots fired" call was relayed from the scene after the shooting.

20       Officers from four counties, Thurston, Lewis, Mason and Grays Harbor, and the Washington

21  State Patrol assembled after the shooting at the scene.  This multi-county organization is known as

22

23  [17] See Cloud Decl. Ex. 9 - Ditrich Dep., 58:4-8; and 67:22-23.

24  [18] See Cloud Decl. Ex. 10 - Snaza Dep., 187:14-188:12.
    [19] See Ramos Decl., ¶ 8, 2:7 through ¶ 19, 3:13, and Ex. 1 - Transcript of Luis Ramos' Sworn Statement dated January
25  5, 2016, attached to Ramos Decl., 4:155-9:378.
    [20] See Cloud Decl., Ex. 18 - Robles' Sworn Statement, 3:92-97 and 3:115-6:270.
26  [21] See Ramos Decl., ¶ 17, 3:5-7.
    [22] See Cloud Decl., Ex. 18 - Robles' Sworn Statement, 4:146-5:182 and 6:263-270.

the Region 3 Critical Incident Task Force (henceforth "CIIT").  Pacific County, a member of the CIIT, did not participate.  The TCSO called for the CIIT to be activated and the Regional 3 Critical Incident Investigation Plan (henceforth "CIIP") was put into action.  The CIIP established specific duties of each of the responding agencies, including the TCSO.  The TCSO had the duty and responsibility to preserve physical evidence.[23]

## C.   Destruction of Evidence.

The scene of Deputy Ditrich's shooting of Joel A. Nelson was *not* adequately secured by responding law enforcement officers, resulting in critical evidence at the scene being lost, overlooked, destroyed and/or removed.  Pursuant to the CIIP, Thurston County was responsible for preserving the crime scene, including the evidence on or in Deputy Ditrich's patrol vehicle.[24]  A log of people entering and leaving the crime scene omitted some individuals, including Sheriff Snaza, who were on the scene.[25]  Pursuant to the CIIP, Sheriff Snaza, or his designee, was the incident commander.[26]

Deputy Ditrich's patrol vehicle, a Chevy Tahoe, was not secured.  Thurston County, through its employees at the command of Sheriff John Snaza, arranged for Deputy Ditrich's patrol vehicle to be promptly cleaned and repaired after the incident; thus, intentionally and/or with reckless indifference destroying vital evidence, including blood splatter evidence, gunshot residue, palm print and fingerprint evidence that was crucial to the investigation into Joel Nelson's death.[27]  The unsecured vehicle was driven by Thurston County Sheriff's Deputy Klene to patrol on January 5, 2016, shortly after the incident.[28]  No efforts were made to keep Deputy Ditrich's Chevy Tahoe from being contaminated or to preserve evidence in and on the Chevy Tahoe.

[23] See Cloud Decl., Ex. 15 - Critical Incident Investigation Plan, Region 3, Created 06-12-12 – Revised 10-09-15 (henceforth "CIIP"), p. 8: ¶ ¶ G and H.
[24] See Cloud Decl., Ex. 15 - CIIP, p. 8: ¶ ¶ G and H.
[25] See Cloud Decl., Ex. 24 - Supplemental Field Report J. Potis, p. 2.
[26] See Cloud Decl., Ex. 15 - CIIP, p. 7: ¶ V
[27] See Cloud Decl., Ex. 2 - Report of John G. Peters, Ph.D, p. 17, 4th ¶.  See Cloud Decl., Ex. 11 - Email from Bryon Newby to Dana Reimholz, Dennis Tody, Black Lake Collision, Gordon Phillips and Bryan Hanks dated 1-13-2016.
[28] See Cloud Decl., Ex. 16 - Supplemental Offense Report of Officer Lester L. Klene.

PLAINTIFF'S MOTION FOR SANCTION
FOR SPOLIATION BY DEFENDANTS - 5 OF 13
Case No.  3:18-cv-05184-RBL

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

The patrol vehicle was promptly cleaned of blood spatter, finger and palm prints, DNA, glove prints and other physical evidence remaining in and on the patrol vehicle by Thurston County employees.  The vehicle was sent by Thurston County to Advance Environmental on January 14, 2016, for a thorough cleaning with blood splatter evidence specifically requested for removal.[29] Sheriff Snaza has admitted that he was the person who ordered the destruction of the evidence on and in the patrol vehicle.[30]  The vehicle was then sold.[31]

Joseph A. Nelson, soon after his son's death, sought access to documents, including investigative reports and the autopsy report, from Thurston County to investigate the circumstances of his son's death on behalf of himself and the Estate of Joel A. Nelson.  Mr. Nelson was not notified of the destruction of the evidence in and upon the car until after it had occurred.[32]

**D.     Ditrich's Conflicting Testimony Showing the Importance of the Destroyed Evidence to Plaintiff.**

There is conflicting evidence as to the timing and number of shots fired by Deputy Ditrich at Mr. Nelson.  This evidence conflicts with Deputy Ditrich's testimony that he only took the three rapid fire shots he admits.  Deputy Ditrich claims he shot Joel Nelson by firing three shots in rapid succession as Joel Nelson was seated in the driver's side of Deputy Ditrich's patrol vehicle at the end of an event that lasted at least eight (8) minutes.[33]  He stated that as he rapidly fired the shots, Mr. Nelson's torso folded forward towards the steering wheel.[34]

Deputy Ditrich's story that he fired only three shots is not believable because Mr. Nelson was

---

[29] See Cloud Decl., Ex. 13 - Invoice from Advance Environmental, Inc., and two invoices from Summit Towing; and Cloud Decl., Ex. 11 - Email from Bryon Newby to Dana Reimholz, et al., RE: Providing nitrile gloves for use of cleaning fine blood splatter on interior of the vehicle that had not been cleaned yet.
[30] Cloud Decl., Ex. 10 - Snaza Dep., 69:25-70:13, 70:22-71:5, 72:1-3 and 73:2-13.
[31] See Cloud Decl., Ex. 10 - Snaza Dep., 70:14-71:5; and Cloud Decl., Ex. 20 - ER&R Thurston County Central Services Invoice for the sale of the Chevy Tahoe to the City of Aberdeen Police Dept.
[32] See Cloud Decl., Ex. 19 - Letter to Joel Nelson from Thurston County Central Services Department dated 3-25-2016.
[33] See Cloud Decl., Ex 9 - Ditrich Dep., 92:10-24, 130:25-131:15; and Cloud Decl., Ex. 17 - Supp. Report of TCSO Lt. G. Phillips, p. 2: ¶ 5.
[34] See Cloud Decl., Ex. 21 - Ditrich's Statement, 11:33-35 and 22:10-17.  See Cloud Decl., Ex. 9 - Ditrich Dep., 135:4-136:16.

PLAINTIFF'S MOTION FOR SANCTION
FOR SPOLIATION BY DEFENDANTS - 6 OF 13
Case No.  3:18-cv-05184-RBL

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

shot in the right shoulder blade from a distance of 3 to 18 inches.[35]  That bullet had a trajectory from right to left and from front to back.[36]  A bullet also struck Mr. Nelson in the front left torso, just above a jacket pocket, and followed a trajectory from left to right and from front to back.  Thus, the two bullets found in Mr. Nelson's torso were fired from directions 180 degrees opposite from one another.  This could not have happened in a split-second rapid firing of three successive shots as Deputy Ditrich held his gun outside the vehicle firing into the vehicle while Joel A. Nelson was facing forward.

The Washington State Patrol's forensic evaluation of the gunshot residue found on Mr. Nelson's clothing concluded the shot to the right shoulder blade was taken at close range, from a distance between 3 and 18 inches.[37]  The other two shots that hit Mr. Nelson's body were shot from a distance too great to determine the distance of those shots.[38]  Thus, it could not be determined what the distance of the shots were that hit the left pocket area of Mr. Nelson's torso and the shot that hit Mr. Nelson's right wrist.  Joel Nelson was apparently hit by one of the bullets on his upper front torso as he faced forward in the driver's seat.

The three shots that hit Mr. Nelson's body were taken from an inconsistent distance contradicting Deputy Ditrich's explanation.

## E.    Additional Witnesses.

Other witnesses saw the patrol vehicle backing onto 93rd Avenue two times.  Brent Lancaster, who had stopped his vehicle in the eastbound lane approximately 15 feet away from the patrol vehicle as it backed across 93rd Avenue the second time, stated that he saw Mr. Nelson sitting in the vehicle in the driver's seat *facing forward* as the patrol vehicle backed across 93rd Avenue.[39]  He observed Deputy Ditrich fire three rapid shots in succession as the patrol vehicle backed across 93rd

---

[35] See Cloud Decl., Ex. 22 - Washington State Patrol Report prepared by Mr. Schoeman dated June 10, 2016, p. 1.
[36] See Cloud Decl., Ex. 1 - Autopsy Report, p. 4 and 5.
[37] See Cloud Decl., Ex. 8 - Washington State Patrol Crime Laboratory Report dated June 10, 2016.
[38] See Cloud Decl., Ex. 8 - Washington State Patrol Crime Laboratory Report dated June 10, 2016.
[39] See Declaration of Brent Lancaster dated January 3, 2019 (henceforth "Lancaster Decl."), ¶ 8, 2:12-13.

1    Avenue with Deputy Ditrich shooting from his perch on the running board of his Chevy Tahoe.[40]

2    Thus, the shot to Mr. Nelson's right shoulder could not have happened as Joel Nelson sat facing

3    forward in the driver's seat and must have occurred outside the vehicle at a different time.

4    **F.      Number of Shots Fired Evidence and Trajectory Evidence.**

5          Thurston County did not follow-up on evidence that four shots were fired, not three shots as

6    Deputy Ditrich claimed.  TCSO's written policy requires a semi-automatic pistol, such as Deputy

7    Ditrich's Glock 35, to be carried by a deputy with a fully loaded magazine and one additional bullet

8    carried in the chamber of the pistol.[41]  A fully loaded Glock 35 magazine and a bullet cartridge in

9    the gun's chamber results in 16 bullets carried in a fully-loaded Glock 35.  Deputy Ditrich's Glock

10   35 had only 11 rounds in its 15 round magazine and one round in the chamber for a total of 12

11   rounds after he shot Joel Nelson.  Sixteen (16) bullets minus four (4) bullets equals twelve (12)

12   bullets.  Twelve (12) bullets were recovered from Deputy Ditrich's Glock 35.  Thus, the bullet count

13   from Deputy Ditrich's Glock 35 after he shot Joel Nelson is evidence that Deputy Ditrich fired four

14   (4) rounds.  Deputy Ditrich, if he was following the TCSO's written ammunition policy, was

15   carrying his weapon fully loaded with 16 bullets.  He discharged four (4).  Plaintiff alleges that

16   Deputy Ditrich's claims of only three (3) shots is likely false.

17          Any explanation that Deputy Ditrich has given or may give for his actions does not establish

18   probable cause for the arrest nor does it support Deputy Ditrich's use of deadly force.

19                            **III.  ISSUES PRESENTED**

20        **1.**    Should the Plaintiff's Motion for Sanctions Based on Defendants Thurston County,

21   Rodney T. Ditrich and John D. Snaza's Spoliation of Evidence be granted?

22        **2.**    Should Plaintiff's Motion for Sanctions Based on Defendants Thurston County,

23   Rodney T. Ditrich and John D. Snaza's Spoliation of Evidence based on defendant's destruction of

24   said evidence result in a directed verdict on the issue of liability pursuant to plaintiff's claims under

25   _____

26   [40] See Lancaster Decl., ¶ 6, 2:6-9.
     [41] See Cloud Decl., Ex. 2 - Peters' Report, p. 6, last two ¶'s, and Cloud Decl., Ex. 10 - Snaza Dep., 51:3-15.  Also, See
     Thurston County Sheriff's Office - Policy Manual, Section 1.G.9(d)(3), p. 57.

**PLAINTIFF'S MOTION FOR SANCTION**
**FOR SPOLIATION BY DEFENDANTS - 8 OF 13**
**Case No.  3:18-cv-05184-RBL**

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

46 U.S.C. § 1983 against them or should a lesser sanctions, such as a designation by the court to the jury that defendants used excessive force and Joel Nelson died as a result? The court could also consider other lesser sanctions.

**3.**   Should monetary and attorney fees sanctions be assessed against defendants, as well, for their bad faith destruction of evidence?

## IV.  EVIDENCE RELIED UPON

**1.**   The records and files herein;

**2.**   Declaration of Douglas R. Cloud in Support of Plaintiff's Motion for Sanctions Based on Defendants Thurston County, Rodney T. Ditrich and John D. Snaza's Spoliation of Evidence, together with all exhibits which are incorporated herein by this reference;

**3.**   Declaration of Luis Ramos, together with all exhibits which are incorporated herein by this reference; and

**4.**   Declaration of Brent Lancaster.

## V.  ARGUMENT

**A.**   **Spoliation.**

Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation.[42]

> The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences.[43]

> A district court has two sources of authority under which a party who has despoiled evidence may be sanctioned.[44] A court in ordering sanctions may rely upon FRCP 37 or upon its "inherent authority." *Id.*

*Pettit v. Smith,* 45 F.Supp.3d 1099 at 1104-1105 (2014.)

> A district court exercising its inherent power may consider a number of sanctions, including (1) exclusion of evidence, (2) admitting evidence of the circumstances of the destruction or spoliation, instructing the jury that it may infer that the lost

---

[42] See *Pettit v. Smith,* 45 F.Supp.3d 1099 at 1104 (2014.)

[43] *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D.Md.2003)

[44] *Leon v. IDX (sic?) System Corp.,* 464 F.3d 951 (2006). A court in ordering sanctions may rely upon FRCP 37 or upon its "inherent authority." *Id.*

evidence would have been unfavorable to the party accused of destroying it, or (4) entering judgment against the responsible party, either in the form of dismissal or default judgment. See Peschel v. City of Missoula, 664 F.Supp.2d 1137, 1142 (D.Mont.2009); see also Leon, 464 F.3d at 958.

*Pettit v. Smith,* 45 F.Supp.3d 1099 at 1105 (2014.)

A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered;  (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence' that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery" [45] The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences.[46]

*Pettit v. Smith,* 45 F.Supp.3d 1099 at 1104-1105 (2014.)

A court may enter the harshest sanction available, dismissal or a directed verdict when "a party has engaged deliberate in deceptive practices that undermine the integrity of judicial proceedings."[47]

Before a district court imposes the "harsh sanctions" of dismissal or a directed verdict, it should consider these factors:

(1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' " *Leon,* 464 F.3d at 958 (quoting *Anheuser–Busch v. Natural Beverage Distrib.,* 69 F.3d 337, 348 (9th Cir.1995)).[1] A "finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper." *Leon,* 464 F.3d at 958 (quoting *Anheuser–Busch,* 69 F.3d at 348).[48]

## B.  <u>The Defendants Had a Duty to Preserve the Evidence in and on the Patrol Vehicle.</u>

A duty to preserve information arises when a party knows or should know that the information is relevant to pending or future litigation.[49] The duty to preserve is triggered not only when litigation actually commences, "but also extends to the period before litigation when a party should reasonably know that evidence may be

---

[45] *Goodman v. Praxair Servs., Inc.,* 632 F.Supp.2d 494, 509 (D.Md.2009) (quoting *Thompson,* 219 F.R.D. at 101); *see Victor Stanley, Inc. v. Creative Pipe, Inc. ("Victor Stanley II"),* 269 F.R.D. 497, 520–21 (D.Md.2010); *In re Napster, Inc. Copyright Litig.,* 462 F.Supp.2d 1060, 1070–78 (N.D.Cal.2006).

[46] *Thompson v. U.S. Dep't of Hous. & Urban Dev.,* 219 F.R.D. 93, 100 (D.Md.2003).

[47] Anheuser - Busch, 69 F.3d at 348 (internal quotation marks and citations omitted).  A finding of "willfulness, fault, or bad faith" is required to support a judgment of dismissal."

[48] *See Pettit v. Smith,* 45 F.Supp.3d 1099 at 1105 (2014.)

[49] *See Surowiec v. Capital Title Agency, Inc.,* 790 F.Supp.2d 997, 1005 (D.Ariz.2011); *Ashton,* 772 F.Supp.2d at 800; *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F.Supp.2d 598, 612 (S.D.Tex.2010).

1     relevant to anticipated litigation."[50]

2          It cannot be argued by defendants that they did not believe that physical evidence, including

3     possible DNA, fingerprints, palm prints, blood splatter and gunshot residue evidence at the scene

4     of the shooting, both in and on the patrol vehicle, would not be relevant to any post homicide

5     litigation commenced by Mr. Nelson's father.  Sheriff Snaza and Thurston County had clear notice

6     from the outset of this incident that Deputy Ditrich's self-serving explanation of his actions were

7     contradicted by the witnesses, Mr. Ramos and Ms. Robles, who both identified a fourth shot distinct

8     in time (one to two minutes) from the three shots Deputy Ditrich admits.

9          Thurston County and Sheriff Snaza also had a duty to preserve evidence as a result of Sheriff

10    Snaza's signature on the Region 3, Critical Incident Investigation Plan ("CIIP") on November 12,

11    2015, which specifically designated that Thurston County was responsible for storing evidence

12    recovered from the scene of Mr. Nelson's killing.

13         Thurston County and Sheriff Snaza had a common law duty to preserve the evidence related

14    to Joel Nelson's death that existed in and on Ditrich's patrol vehicle.[51]

15    **C.    <u>The Defendants Had Culpable State of Minds</u>.**

16         The rush by Sheriff Snaza and Thurston County to destroy physical evidence in and on

17    Deputy Ditrich's patrol vehicle establishes bad fath, intent and culpability.  The actions of Thurston

18    County and Sheriff Snaza to destroy physical evidence immediately after the incident is so far below

19    standard police practice and Thurston County's and Sheriff Snaza's duty to preserve evidence that

20    a severe sanction is demanded, to remedy the deliberate destruction of important and relevant

21    evidence.  Sanctions may be imputed *"not only for bad faith, but also by willfulness or fault by the*

22    *offending party."  Unigard Sec. Ins. Co. V. Lakewood Eng'g & Mfg. Co.,* 982 F.2d 363, 368 n. 2 (9th

23    Cir. 1992) (citing *Halaco Eng'g Co. V. Costle*, 843 F.2d 376, 380 (9th Cir. 1988)).

24         Thurston County and Sheriff John Snaza acted wilfully in despoiling the evidence at issue.

25
       ---
26    [50]*Surowiec,* 790 F.Supp.2d at 1005 (citations and quotation marks omitted).
      [51]*Pettit v. Smith,* 45 F. Supp 3d 1099 (2014)

**PLAINTIFF'S MOTION FOR SANCTION**
**FOR SPOLIATION BY DEFENDANTS - 11 OF 13**
**Case No.  3:18-cv-05184-RBL**

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1    A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the

2    destroyed evidence is potential relevant to potential litigation. [52]

3         It is standard practice in modern law enforcement to preserve evidence relevant to officer

4    involved homicide until all laboratory and forensic studies are completed.[53]  That was not done in

5    this case.

6    **D.    Imputation.**

7         A district court has the inherent power to impute the acts of a real party in interest to another

8    named defendant. *Pettit v. Smith*, 45 F.Supp. 1099 (2014).

9         Deputy Ditrich is being indemnified by Thurston County in this matter.[54]  As a result,

10   Thurston County is the real party in interest, standing behind Deputy Ditrich and Sheriff Snaza's

11   acts.  Thus, any sanctions awarded against Sheriff Snaza dn Thurston County should be imputed to

12   Deputy Ditrich, as well as Sheriff Snaza.

13                          **VI.  CONCLUSION**

14        As a result of the wilful destruction of crucial physical evidence by the defendants, John D.

15   Snaza and Thurston County and the imputation of spoliation to Deputy Ditrich, severe sanctions

16   should be assessed against the defendants.

17        **DATED** this 24th day of January, 2019.

18                                         **LAW OFFICE OF DOUGLAS R. CLOUD**

19                                         /s/ Douglas R. Cloud
20                                         **DOUGLAS R. CLOUD, WSBA #13456**
                                           Law Office of Douglas R. Cloud
21                                         1008 Yakima Avenue, Suite 202
                                           Tacoma, WA 98405
22                                         Telephone: 253-627-1505
                                           Fax: 253-627-8376
23                                         E-mail:  drc@dcloudlaw.com
                                           **Attorney for Plaintiff**

24

25   [52]*United States v. Kitsap Physician Serv*. 314 F.3d 995, 1001 (9th Cir. 2002);  Cloud Dec., Ex. 11; Cloud Dec., Ex. 12; and Cloud Dec., Ex. 13.
     [53] *See* Cloud Decl., Ex. 2 - John G. Peters, Ph.D.'s Report, p. 17.  See Cloud Decl., Ex. 10 - Snaza Dep., 70:14-71:5.
26   [54] See Cloud Decl., Ex. 9 - Ditrich Dep., 45:6-9.

**PLAINTIFF'S MOTION FOR SANCTION**
**FOR SPOLIATION BY DEFENDANTS - 12 OF 13**
**Case No.  3:18-cv-05184-RBL**

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

1.    I am over the age of 21 and not a party to this action.

2.    I am an employee of Douglas R. Cloud, Attorney at Law, Attorney for Plaintiff.

3.    On this day, I certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to the counsel of record for the defendants, and that I also forwarded a true and correct copy to counsel of record for the defendants in the following manner:

| | |
|---|---|
| **Counsel for Defendants, Thurston County and Ditrich:**<br>W. Dale Kamerrer, Esq.<br>**LAW LYMAN DANIEL KAMERRER & BOGDANOVICH, P. S.**<br>PO Box 11880<br>Olympia, WA 98508-1880<br>2674 R W Johnson Blvd SW<br>Tumwater, WA 98512<br>P: 360-754-3480<br>F: 360-357-3511<br><br>Scott C. Cushing, WSBA # 38030<br>Senior Deputy Prosecuting Attorney<br>**THURSTON COUNTY PROSECUTING ATTORNEY'S OFFICE**<br>Civil Division - Bldg No. 5<br>2000 Lakeridge Dr SW<br>Olympia WA 98502<br>P: 360-786-5574<br>Emails: dkamerrer@lldkb.com; cushins@co.thurston.wa.us; | Messenger<br>US Mail<br>Facsimile<br>☒ ECF<br>☒ Email<br>E-Service |
| **Counsel for Defendant, John Snaza:**<br>Gregory E. Jackson, WSBA #17541<br>John R. Nicholson, WSBA #30499<br>**FREIMUND JACKSON TARDIF**<br>900 SW 16th St, Ste 215<br>Renton WA 98057<br>Phone: 206-582-6001<br>Fax: 206-466-6085<br>Donald R. Peters, Jr., WSBA #23642<br>Senior Deputy Prosecuting Attorney<br>**THURSTON COUNTY PROSECUTING ATTORNEY'S OFFICE**<br>Civil Division - Bldg No 5<br>2000 Lakeridge Dr SW<br>Olympia WA 98502<br>P: 360-786-5574<br>Emails: Gregj@fjtlaw.com; johnn@fjtlaw.com; petersr@co.thurston.wa.us; | Messenger<br>US Mail<br>Facsimile<br>☒ ECF<br>☒ Email<br>E-Service |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated at Tacoma, Washington this 24th day of January, 2019.

/s/ Traci L. Warner
**TRACI L. WARNER**