The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH A. NELSON, individually and as Personal Representative of the Estate of Joel A. Nelson, and its statutory beneficiaries,<br><br>Plaintiff,<br><br>vs.<br><br>THURSTON COUNTY, a Washington municipality; RODNEY DITRICH, individually, JOHN D. SNAZA, individually; and Does 1 through 15, individually,<br><br>Defendants | NO.  3:18-cv-05184-RBL<br><br>REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY<br><br>NOTED ON MOTION CALENDAR: 2/13/19[1] |

Defendants Rodney Ditrich and Thurston County submit this Reply, and join in the Reply by Defendant Snaza, including its objections to certain evidentiary submissions by the plaintiff.

A. <u>Undisputed facts</u>.

The plaintiff's Response leaves the central facts supporting summary judgment undisputed. These facts are set forth in the Appendix, and they are sourced in Deputy Ditrich's declaration, Dkt. #32.

B. <u>Argument</u>.

1. <u>The plaintiff presents contentions, not material facts</u>.

A motion for summary judgment must be opposed by admissible evidence, not contentions. *Recio v. Creighton Univ.*, 521 F.3d 934, 939 (8th Cir. 2008) (citing *Haas v. Kelly Servs., Inc.,* 409 F.3d

---

[1] This noting date is the result of Courthouse closures which extended the due date for plaintiff's Response to 2/5/19 and in turn extended the defendants' Reply due date to 2/11, and to 2/13/19, per Local Rule Western District of Washington, 6(a).

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 1
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1030, 1036 (8th Cir.2005) ("Evidence, not contentions, avoids summary judgment." (*quoting Mayer v. Nextel West Corp.,* 318 F.3d 803, 809 (8th Cir.2003)); *see also Al-Zubaidy v. TEK Indus. Inc,* 406 F.3d 1030, 1036 (8th Cir.2005).

A plaintiff does not meet his burden by theorizing a possible scenario in support of his claims when what is proffered conflicts with direct contrary evidence. *Scott v. Harris,* 550 U.S.372, 380, 127 S.Ct. 1769 (2007) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505 (1986)). The declaration of the only eye-witness to the events at issue, Deputy Ditrich, is not contradicted by the plaintiff's unsupported contentions.

The plaintiff's emphasis on training, Sheriff's policies, and the sufficiency of the after-the-fact investigation, has no bearing on the liability of Deputy Ditrich. His actions may only be judged on what he saw, heard, understood and did, and his conduct must be judged on the "totality of the circumstances," and recognition that "…police officers are forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, at 396-97, 109 S.Ct. 1865 (1989). The deputy's right to summary judgment cannot be judged on policies or what later investigators did or did not do.

Plaintiff's experts, John Peters[2] and Leo Poort ignore the fact that when Deputy Ditrich told Joel Nelson he was under arrest, Nelson lunged at the deputy and struck him in the head with his fists.

---

[2] John Peters gives two examples of deductive reasoning that are so faulty as to call into question all of his analysis. At Dkt. 58, p. 18, he writes: "[b]ecause an ECW (Taser) is considered not to be a deadly force tool, there was not an immediate threat to Deputy Ditrich" (and) "…a canine is released when there is a potential or immediate threat to the officer. The failure to use the canine in this instance demonstrated that threat of Mr. Nelson was not immediate." [2] In addition to relying on faulty but unstated premises, Peters ignores the great and immediate physical threat that the much-larger Nelson posed to Deputy

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 2
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511

Michael Knox notes Nelson's sudden assault, but gives it no significance in his analysis.[3] Leo Poort notes the assault and actually recognizes that Nelson's initial behavior which drew Deputy Ditrich's attention was "suspicious," although he diminishes it by saying the behavior was "possibly suspicious at most".[4] It is undeniable that Nelson's concealing, evasive and hiding behavior was suspicious, particularly to an experienced officer, Deputy Ditrich: the only person who was aware of and relied on all the circumstances that led to the *Terry* stop of Nelson.

Further, plaintiff's experts engage in speculative expansion of Mr. Ramos's statement to investigating officers that he heard four "booms" outside his house, because Ramos provided no information about where the deputy and Nelson were when those sounds occurred. Mr. Ramos did not do that because he could not see anyone when he heard the sounds. (Ramos interview statement, Dkt. 54, p. 12, ll. 301-03, and p. 13, ll. 348-351.) In the face of Deputy Ditrich's clear and thorough eye-witness descriptions which exclude any suggestion that Nelson was on the ground when or after he began to run following his assault on the deputy, it requires speculation to conclude otherwise.

The same absence of objective evidence from Mr. Ramos, or any other source, means that the experts' opinions about the positions of the deputy and Ditrich are speculation. There are no facts supporting a conclusion that Nelson was on the ground when any "booms" occurred. Yet, having Nelson on the ground is essential to the plaintiff's theory of Deputy Ditrich's culpability. The absence of non-speculative evidence of the theory destroys it.

---

Ditrich the instant he lunged at the deputy and began slugging him, and the tense, uncertain, evolving and uncontrollable events that followed.

[3] Knox report, Dkt. #61, p. 22, ¶8.1.13.

[4] Poort report, Dkt. #59, p. 7, second paragraph, second-to-last sentence.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 3
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511

> 2. <u>Deputy Ditrich had reasonable suspicion to stop and detain Nelson for investigation, and that lawfully grew into probable cause to arrest.</u>

The plaintiff's contentions that Deputy Ditrich did not have reasonable suspicion sufficient for him to stop and investigate Joel Nelson ignore *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), and its progeny. A police officer's *Terry* stop does not violate the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744 (2002) (citing *Terry*, 392 U.S. at 9); *see also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir.2009). The Court must look at the "totality of the circumstances" to determine whether the officer had an objective basis to suspect wrongdoing. *Id.* Deputy Ditrich's declaration in support of this motion supplies the necessary objective basis, and no evidence contradicts those facts.

The plaintiff's experts ignore undisputed facts which do not fit their contentions, and they use a "divide and conquer" approach to isolate and criticize the deputy's actions, when those actions must be judged on a "totality of the circumstances" basis. Not only is the plaintiff's approach a plain manipulation, but it was rejected by the Supreme Court in *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744 (2002).

The *Arvizu* Court recognized that,

> evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase. The court appeared to believe that each observation by [the agent] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." *Terry,* however, precludes this sort of divide-and-conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation."

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 4
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
2674 R.W. JOHNSON RD. TUMWATER, WA  98512
P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511

*United States v. Arvizu*, 534 U.S. at 274 (citations omitted).  Moreover, a determination that reasonable suspicion existed need not rule out the possibility of innocent conduct.  *Arvizu, id.* at 277 (citing *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673 (2000).

Deputy Ditrich was a trained and experienced officer.  He was aware that rural residential burglaries often begin with the burglar going onto private property to check whether occupants are home, and to break in if they are not.  He saw a man who turned out to be Joel Nelson walking toward him on the shoulder of the county road in an area that did not generate many pedestrians.  Because the deputy had been operating his patrol vehicle with its emergency lights and siren in use when Nelson would have seen him, and most people are curious about such activities, he recognized it was unusual that Nelson looked directly at him and immediately turned his head sharply to his right, partially concealing his face in the hood of his sweatshirt.  Then, Nelson's immediate movement off the road shoulder into the driveway of private residential property increased the deputy's concern.  He decided to stop and contact the individual to see what he was doing.  Deputy Ditrich did not contact Nelson with the intent of arresting him.  He sought to find out what Nelson was doing on the private property.[5]

Upon driving into the residential driveway, the deputy saw the feet of the man standing behind tall arbivitae shrubs on the east side of a double-car garage that had a "no trespassing" sign between its doors.  The location where Nelson was hiding was not the shoulder of the road, it was not a sidewalk, and it was fully within an area marked by residential landscaping and other features.  It had no earmarks of being open to the public.  Moreover, when the Deputy called to Nelson and asked him to come out from behind the shrubs, show his hands, and tell him what he was doing, Nelson eventually said he was

---

[5] Exhibit A to Kamerrer declaration, filed herewith, Rodney Ditrich deposition excerpts at pp. 94-95.  This is supplied pursuant to FRCP Rule 32(a)(6), to supplement plaintiff's selective use of the Ditrich deposition beginning at Dkt. #53-8.

REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS RODNEY DITRICH
AND THURSTON COUNTY – 5
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511

"looking for a place to piss," an activity that the deputy reasonably believed a resident who had posted his property against trespassers would not welcome.

Generally, "[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons." *United States v. Robertson,* 833 F.2d 777, 780 (9th Cir.1987). But "we allow intrusive and aggressive police conduct without deeming it an arrest ... when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1320 (9th Cir.1995). Deputy Ditrich did not stop Nelson at gunpoint or handcuff Nelson at any relevant time. He prepared to use his Taser only after believing Nelson was about to run from him – and, it is not disputed that he then holstered the Taser in order to approach and take Nelson into custody after announcing that he was under arrest.[6]

Where a valid *Terry* stop is made, officers are not liable under § 1983 even if their suspicions turn out to be wrong.[7] *Murdock v. Stout*, 54 F.3d 1437, 1442 (9th Cir.1995) (officers acted reasonably in seizing and patting down innocent person in a house they entered under exigent circumstances). Deputy Ditrich's *Terry* stop of Joel Nelson was valid and properly limited in scope. The deputy's observations that Nelson had gone onto private real property that was posted against trespassing, and the lack of any lawful purpose for that intrusion gave rise to probable cause to arrest him for Criminal Trespass.[8]

Deputy Ditrich had probable cause to arrest Nelson for both Criminal Trespass and Obstructing a Law Enforcement Officer. The elements of these offenses have been set forth in the defendants' motion

---

[6] Kamerrer declaration, Ditrich deposition, p. 71, ll. 22-25, p. 72, ll. 1-8; p. 98, ll. 7-25; p. 103, ll. 12-18; and p. 104, ll. 13-20.

[7] Which is not the case here because Joel Nelson had a warrant for his arrest and was the subject of a probable cause bulletin that he was wanted for possession of a stolen vehicle. Declaration of R. Ditrich, Dkt. #32, p. 6, ¶7, and Exhibit D.

[8] See Motion for Summary Judgment, Dkt. # 31, p. 9.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 6
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511

for summary judgment. Plaintiff's reliance on *State v. Williams,* 171 Wn.2d 474, 253 P.2d 877 (2011) is unavailing. In *Williams*, the Washington Supreme Court vacated a conviction for Obstructing that was based on the defendant's false statement about his name, <u>without additional conduct</u>. Here, Nelson hindered, delayed and obstructed Deputy Ditrich by refusing to come out from the bushes he was hiding behind upon initial contact, by constantly looking for an escape route causing the deputy to have to move to be prepared to block him, by refusing initially to drop his backpack, and by persisting in saying he was a person who had no identification, as well as by lying about his identity (see footnote 10).

Moreover, the Williams defendant was also convicted of Making a False Statement to a Public Servant, under RCW 9A.76.175, and did not appeal that conviction. *Id.* at 477.  Deputy Ditrich had probable cause to arrest Nelson for giving a false statement.  This provided constitutionally-sufficient grounds for arrest because an arrest is valid if it is "for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested". *Gasho v. United States,* 39 F.3d 1420, 1428 n. 6 (9th Cir.1994).  Nelson's delaying, maneuvering and identity lie gave probable cause for both offenses.[9]  Nelson's clever but poorly executed lie (he stumbled over spelling "Joshua") about his identity caused Deputy Ditrich to expend time before and after the identity lie came back as "no record."  This led the deputy to tell Nelson he knew he was lying and would be arrested if he did not tell the truth about his identity, and it obstructed the deputy from learning that, indeed, Nelson was subject to arrest on a warrant and a police probable cause bulletin.[10]

---

[9] *Id.*

[10] See Exhibit B to Supplemental Kamerrer declaration, deposition excerpts of Joe Nelson, plaintiff and father of Joel Nelson, at p. 89, ll. 10-22 (the identity Joel Nelson gave Deputy Ditrich, Joshua Linden Nelson, born 7/12/88, was Joel Nelson's brother who died in infancy, assuring that no record would be found under that identity).

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 7
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880  OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511

Probable cause to arrest for Trespass, Obstructing, and Making a False Statement means the arrest of Nelson on multiple grounds did not violate the Constitution.

    3. <u>Use of the Taser was not unreasonable force</u>.

There is no evidence that Deputy Ditrich "tased" Nelson anywhere but in the driver's seat of the patrol car after giving him a warning of that possibility. (See *infra*, citations to record at footnote 4.) When Deputy Ditrich did use his Taser, Nelson was an arrestee who was in the driver's seat of the patrol car, fighting the deputy and attempting to get the car into gear and escape.

Use of a Taser is less-lethal force than use of a firearm. *Bryan v. MacPherson*, 630 F.3d 805, 825-26 (9th Cir. 2010), as even the plaintiff's expert, John Peters, acknowledges.[11] The Ninth Circuit has not found use of a Taser to be unreasonable except in unusual circumstances. *See Bryan v. MacPherson*, *supra* (possibly mentally ill driver stopped for not wearing a seatbelt who made no threats but was tased, causing serious injuries from a fall); *Brooks v. City of Seattle,* & *Mattos v. Agarano* (consolidated cases at 661 F.3d 433 (9th Cir.2011) (a pregnant non-violent woman driver; and a wife who complained of domestic violence then sought to calm down husband and police). Deputy Ditrich's use of the Taser was reasonable.

    4. <u>Deputy Ditrich lawfully used deadly force to stop Nelson's violence</u>.

Based upon the undisputed facts, Joel Nelson attacked, assaulted and injured Deputy Ditrich <u>after</u> the deputy placed him under arrest and approached Nelson, intending to take him into custody.[12] When Nelson did this, he crossed a line between merely being under arrest for a misdemeanor and gross

---

[11] Peters report, Dkt. #58, p. 18, third paragraph from bottom.

[12] An arrestee may forcefully resist an unlawful arrest only if he faces actual "imminent danger of serious injury or death", neither of which confronted Nelson. *Fuller v. Lee*, C13-0563JLR, 2014 WL 6982519, at *8 (W.D.Wash.2014) (citing *State v. Bradley,* 141 Wn.2d 731, 10 P.3d 358 (2000)).

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 8
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

misdemeanor to being a dangerous felon who assaulted and caused physical harm to Deputy Ditrich (Assault in the Third Degree – class C felony (RCW 9A.36.031(1)(g)); which then grew to Assault in the Second Degree – Class B felony (RCW 9A.36.021(1)(c) deadly weapon). Nelson also attempted to commit Robbery in the First Degree – class A felony (RCW 9A.56.190 & .200), and committed this crime while in constructive or actual possession of two firearms and a police vehicle (all "deadly weapons," RCW 9A.04.110(6)), threatening death or serious physical harm to the deputy and the public.

Upon Nelson's attack, Deputy Ditrich responded with protective self-defense and disengagement that did not include use of a weapon. It was only when Nelson was able to get the deputy's patrol car into reverse that he used deadly force. Under the Washington statute which the plaintiff acknowledges is applicable at p. 16 of his Response and his Appendix A, RCW 9A.16.040(1)(c)(i), Deputy Ditrich's use of deadly force was justified. Chief Deputy Prosecutor, Andrew Toynbee concluded the same.[13]

Even if the speculative theory of the plaintiff, *i.e.*, that Nelson was shot outside the police car, were supported, which it is not,[14] it is undisputed that Nelson was thereafter able to enter the patrol car, fight Deputy Ditrich, resist a Taser shot and get the car into gear, causing it to careen into traffic while the deputy was trapped in its open doorway. At that point, use of deadly force was clearly lawful.

The plaintiff alludes to a theory of "provocation" in connection with his theory that Nelson was shot outside the patrol car and this rendered the deputy's threat-ending use of force unreasonable. (See Plaintiff's Response at p. 15, ll. 1-3, Dkt. 51, p. 15.) However, the Supreme Court has recently

---

[13] See Dkt. #53-26, Toynbee report.

[14] This theory requires a belief that the deputy first fired his pistol at Nelson, and later tased him inside the patrol car (it is undisputed that the Taser was located inside the car on the right side of the driver's seat after the event ended. *See* Report of M. Knox, Dkt. #61, p. 37, ¶12.1.2.3.) It stretches credulity beyond breaking to believe a police officer would first use deadly force, then, when that did not stop the offender's violence, switch to a lesser weapon when presumably he still had the firearm in his hand and the offender's violence had increased.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 9
Cause No.: 3:18-cv-05184-RBL

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480 FAX: (360) 357-3511

abrogated the Ninth Circuit's "provocation rule," in *Cty. of Los Angeles v. Mendez*, __ U.S. __, 137 S. Ct. 1539, 1545 (2017).

> [T]he [provocation] rule provides a novel and unsupported path to liability in cases in which the use of force was reasonable. Specifically, it instructs courts to look back in time to see if there was a *different* Fourth Amendment violation that is somehow tied to the eventual use of force. That distinct violation, rather than the forceful seizure itself, may then serve as the foundation of the plaintiff's excessive force claim.

*Cty. of Los Angeles v. Mendez*, 137 S. Ct. at 1547. "This approach mistakenly conflates distinct Fourth Amendment claims." *Id.* In rejecting the notion that a prior unlawful seizure may provoke a later need to use force which is then to be judged unreasonable based on the prior unlawful police action, the Court reiterated that the standards of *Graham v. Conner* apply to evaluate a use of force. *Id.* Accordingly, even if Deputy Ditrich's initial arrest of Nelson was unlawful, which is not correct, and even if the plaintiff's unsupported theory that Ditrich shot Nelson outside the patrol car were given credit, which it should not, it is the immediate circumstances of Nelson's assaults and commandeering of the patrol car by which Ditrich's threat-ending use of force is to be judged.

It is immaterial how many shots Deputy Ditrich fired from his pistol because it is undisputed that Nelson sustained three bullet wounds. It is also immaterial what the timing of the shots fired by the deputy was because there is no evidence that any shot was fired before Nelson assaulted the deputy.

     5.   Qualified immunity protects Deputy Ditrich from suit.

The threshold inquiry in a qualified immunity defense is whether the facts alleged, when taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the alleged conduct would not be a violation, the inquiry stops and the defense of qualified immunity applies. *See id.* However, if a constitutional violation occurred, the Court must determine whether the statutory or constitutional right

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 10
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480 FAX: (360) 357-3511

was "clearly established." *Id.* Here, Deputy Ditrich's use of deadly force was constitutional. Therefore, the qualified immunity inquiry should end there and this case should be dismissed.

But where it is appropriate for the Court to "turn to the question whether [defendant is] entitled to qualified immunity despite (a Constitutional) violation." (*Groh,* 540 U.S. at 565 (citing *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999))), it is necessary to conduct "… an inquiry into the reasonableness of the officer's belief in the *legality* of his actions." *Wilkins v. City of Oakland,* 350 F.3d 949, 955 (9th Cir.2003) (emphasis original) (citing *Saucier,* 533 U.S. at 206). An officer will therefore be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as his belief was reasonable. *Anderson v. Creighton,* 483 U.S. 635, 636–37, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that a "law enforcement officer who participates in [conduct] that violates the Fourth Amendment may [not] be held personally liable ... if a reasonable officer could have believed that the [conduct] comported with the Fourth Amendment.").

Thus, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *Wilkins,* 350 F.3d at 954. "When evaluating whether a law enforcement officer was on notice that his conduct was unlawful in a particular instance, [the court] look[s] only to the 'circumstances presented to [the] officer.'" *Moreno v. Baca,* 431 F.3d 633, 642 (9th Cir.2005) (quoting *Saucier,* 533 U.S. at 209). "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson,* 555 U.S. at 815 (quoting *Groh,* 540 U.S. at 567 (2004) (Kennedy, J., concurring)); *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894 (1978) ("Officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law."). "The qualified immunity standard gives ample room

REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS RODNEY DITRICH
AND THURSTON COUNTY – 11
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511

for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Liberal v. Estrada,* 632 F.3d 1064, 1077 (9th Cir.2011) (citations omitted).

The case of *Isayeva vs. Sacramento Sheriff's Dept.,* 872 F.3d 938 (9th Cir.2018) is <u>dispositive</u> of the second prong of the qualified immunity inquiry because it holds, based on facts similar to those here, that a deputy sheriff who shot and killed a man who was attacking him was entitled to qualified immunity. There, two deputies were dispatched to a house where they encountered a large, possibly mentally ill, man who escalated into an attack on the deputies which injured one of them before that deputy first "tased" then shot and killed the subject. On appeal from denial of the defendant police officer's summary judgment motion based on qualified immunity, the Court of Appeals reversed, holding that the deputy was entitled to qualified immunity. *Id.* at 953.

The plaintiff has cited no case that could have informed Deputy Ditrich that using deadly force in the same or closely similar circumstances of this action would be unlawful. This ends the inquiry and warrants dismissing this action.

C. <u>Conclusion</u>.

For the reasons given in the defendants' Motion for Summary Judgment and in this Reply, the Court should find that there is no genuine issue as to any material fact, and the defendants are entitled to judgment as a matter of law dismissing this action.

RESPECTFULLY SUBMITTED this 11th day of February, 2019.

> LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.
> */s/ W. Dale Kamerrer*
> W. Dale Kamerrer, WSBA #8218
> Attorney for Defendants Ditrich and Thurston County
> P.O. Box 11880, Olympia, WA 98508
> (360) 754-3480; dkamerrer@lldkb.com

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RODNEY DITRICH AND THURSTON COUNTY – 12
**Cause No.: 3:18-cv-05184-RBL**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480   FAX: (360) 357-3511