HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH A. NELSON, individually and as Personal Representative of the ESTATE OF JOEL A. NELSON, and its statutory beneficiaries,<br><br>    Plaintiff,<br>    v.<br><br>THURSTON COUNTY, a Washington municipality; RODNEY T. DITRICH, individually; JOHN D. SNAZA, individually; and DOES 1 through 15, individually,<br><br>    Defendant. | CASE NO. 3:18-cv-05184-RBL<br><br>ORDER |

THIS MATTER is before the Court on remand from the Ninth Circuit. On March 21, 2019, this Court denied summary judgment to Defendants Thurston County, Rodney T. Ditrich, and John D. Snaza in this case about the fatal shooting of Joel Nelson by Deputy Rodney Ditrich. Dkt. # 109. The Court concluded that there were genuine disputes of material fact regarding whether Ditrich is entitled to qualified immunity. The Ninth Circuit recently affirmed the Court's decision with respect to Ditrich but reversed with respect to Sheriff Snaza and remanded so this

Court can examine whether the facts similarly preclude extending qualified immunity to Snaza. Dkt. # 155 at 4.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have shown facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may address the parts in either order. *Id*. at 236. Even if the defendant's decision is constitutionally deficient, qualified immunity shields him from suit if his misapprehension about the law applicable to the circumstances was objectively reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

Nelson alleges two § 1983 claims against Snaza: one under the Fourth and Fourteenth Amendments for excessive force, and one under the Fourteenth Amendment for deprivation of property rights without due process. Complaint, Dkt. # 1, at 8-10. "To establish that a defendant is liable for a claim under 42 U.S.C. § 1983 a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right.'" *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092, 1099 (D. Mont. 2009) (internal quotation omitted) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). A defendant can only be liable for inadequate training if "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] . . . can reasonably be said to have been deliberately indifferent to the need." *Peschel*, 686 F. Supp. 2d at 1101 (quoting *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002)).

"A supervisor may be liable under § 1983 only if there exists either '(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). "The requisite causal connection may be established when an

1  official sets in motion a series of acts by others which the actor knows or reasonably should
2  know would cause others to inflict' constitutional harms." *Corales*, 567 F.3d at 570 (internal
3  quotation omitted).

4  Nelson cannot establish personal involvement or a causal connection between Snaza and
5  Ditrich's alleged use of excessive force. It is undisputed that Snaza was not directly involved in
6  the shooting. However, Nelson argues that Snaza failed to train Ditrich about the requirements of
7  probable cause, use of lethal force, de-escalation techniques, and use of backup and alternatives
8  to arrest. Nelson also contends that Snaza implemented an oral policy allowing officers to carry
9  weapons that are not fully loaded, making it difficult post-shooting to determine the number of
10 shots fired. Nelson theorizes that this policy encourages the use of lethal force.

11 But there is very little evidence that Snaza failed to train Ditrich. Nelson mostly relies on
12 Snaza's deposition testimony, but that testimony is ambiguous and mainly addresses Snaza's
13 own understanding of probable cause and practices with loading his weapon. Dkt. # 53-1 at 51,
14 128-31, 133-36. Snaza only commented on training by stating that he believed Ditrich had
15 probable cause to detain of Joel Nelson. *Id*. at 136. In any case, Nelson identifies no facts by
16 which a jury could conclude that there is a causal connection between Snaza's training of Ditrich
17 and the excessive force that may have occurred, which would have involved Ditrich shooting
18 Joel Nelson after he got down on his knees. *See* Summary Judgment Order, Dkt. # 109, at 4.
19 There is certainly no evidence that Snaza should have known that his training of Ditrich would
20 cause a series of events ending with Ditrich shooting Nelson in this manner.

21 Other than failure to train, Nelson tries to tie Snaza to Ditrch through the investigation
22 that occurred after the shooting. But even if a jury could find that Snaza directed a coverup that
23 destroyed evidence of Ditrich's unlawful shooting, the investigation occurred *after* the shooting.
24

There is no plausible way that Snaza's actions after the shooting could have caused the shooting itself.[1] Because the facts cannot support liability, Snaza is entitled to qualified immunity with respect to Nelson's excessive force claim.

It is a different story for Nelson's Fourteenth Amendment due process claim. Nelson claims that, by facilitating the destruction of evidence during the investigation of the shooting, Snaza deprived Nelson of his property interests by crippling his post-death causes of action. The Fourteenth Amendment's protection of property rights is a complex area of law and neither party analyzes the legal viability of Nelson's claim. However, one thing is clear: "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Absent further legal argument from the parties, the Court will not bestow qualified immunity on Snaza if there is a genuine dispute of material fact about whether he destroyed evidence.

At this point, such a dispute still exists. Under the Region 3 Critical Incident Investigation Plan, "The overall authority, direction, and control of a critical incident and use of the [Critical Incident Investigation Team] will be the responsibility of the Sheriff or Chief within whose jurisdiction the incident occurred." Dkt. # 53-20 at 12. That sheriff was Snaza, whose twin brother, Robert Snaza, is the sheriff of Lewis County. Lewis County's investigation was

---

[1] Nelson refers to Snaza's ratification often in his brief. It is unclear whether Nelson seeks to hold Snaza liable in his individual capacity for ratifying Ditrich's actions or merely in his official capacity, under which he is synonymous with Thurston County. Typically, ratification arises as a means of holding a government entity liable under § 1983. *See Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003) (reversed on other grounds). In the few instances when courts have addressed ratification by officials acting in their individual capacity, the doctrine still requires that the official "set in motion" the acts that caused the constitutional violation. *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092, 1102 (D. Mont. 2009) (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). The Court is skeptical that ratification applies at all to Snaza in his individual capacity, but it clearly does not apply here because there is insufficient evidence that Snaza's actions caused a violation by Ditrich.

superficial at best, with almost no evidence of blood spatter or DNA from the vehicle being preserved or photographed. The only photos of the scene show the exterior of the car, despite the fact that Nelson was supposedly shot while inside it. Dkt. # 53-4; Dkt. # 53-6; Dkt. # 53-10 (stating that vehicle interior contained "fine blood splatter"). The follow-up report indicated that the interior of the vehicle was photographed, but no photos have been produced. Dkt. # 53-7 at 6. After Lewis County completed its investigation, Snaza ordered that Ditrich's vehicle be cleaned, repaired, and sold. Dkt. # 53-1 at 70-73. Based on these facts, the Court cannot say a jury could not conclude that Snaza facilitated the destruction of evidence. Qualified immunity is unwarranted.

In summary, Snaza's Motion is GRANTED with respect to Nelson's Fourth and Fourteenth Amendment Claim for excessive force and DENIED with respect to the Fourteenth Amendment claim for deprivation of property without due process.

IT IS SO ORDERED.

Dated this 1st day of June, 2020.

Ronald B. Leighton
United States District Judge