1          The Honorable Robert S. Lasnik

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**
                   **WESTERN DISTRICT OF WASHINGTON**
8                            **AT TACOMA**

9   JOSEPH A. NELSON, individually and as
    Personal Representative of the ESTATE OF      Case No.  3:18-cv-05184-RSL
10  JOEL A. NELSON, and its statutory
    beneficiaries,                                PLAINTIFF'S RESPONSE TO
11                                                DEFENDANT JOHN D. SNAZA'S
                            Plaintiff,            SECOND MOTION FOR SUMMARY
12                                                JUDGMENT
    vs.
13                                                **NOTE ON MOTION CALENDAR:**
    THURSTON COUNTY, a Washington                 **January 22, 2021**
14  municipality; RODNEY T. DITRICH,
    individually; JOHN D. SNAZA, individually;    **ORAL ARGUMENT REQUESTED**
15  and DOES 1 through 15, individually,

16                          Defendants.

17                    I.  **RELIEF REQUESTED**

18          **COMES NOW**, the plaintiff, Joseph A. Nelson, individually and as Personal Representative

19  of the Estate of Joel A. Nelson, by and through his attorney of record, Douglas R. Cloud, and does

20  hereby request that the Court deny the Defendant John D. Snaza's Second Motion for Summary

21  Judgment.

22                  II.  **PROCEDURAL HISTORY**

23          The District Court granted summary judgment on Joel A. Nelson's Fourth and Fourteenth

24  excessive force claims against Thurston County Sheriff, John D. Snaza, individually.[1]  The claims

25  against Snaza in his official capacity related to excessive force were not dismissed (6/01/2020 Order,

26  _____
    [1] Dkt. 157, Order signed by Judge Leighton on 6/01/2020; Dkt. 159, Order on Def. Snaza's Motion for Reconsideration
    signed by Judge Leighton on 7/07/2020. Dkt. 163, Def. John D. Snaza's Second Motion for Summary Judgment.

Dkt. 157).[2] The pendent state law causes of action alleging John D. Snaza's ("Snaza") individual liability were not dismissed.

The District Court denied Snaza's Motion for Summary Judgment regarding his individual liability for Joel A. Nelson's ("Nelson") due process Fourteenth Amendment access to courts claim (Order on Motion for Reconsideration 7/07/2020, Dkt. 159).  The Court did permit additional briefing on whether Nelson has otherwise alleged a violation of a clearly established property right and whether the claim has accrued, but did not address Snaza's qualified immunity defense which is raised in Snaza's Second Motion for Summary Judgment.[3]

## III.  INTRODUCTION

Nelson, an unarmed man suspected of a misdemeanor was shot in the back and killed by Thurston County Sheriff's Deputy Rodney T. Ditrich ("Ditrich") on January 5, 2013.  Sheriff Snaza, who was in control at the scene after the shooting, allowed the crime scene to be contaminated.[4] Sheriff Snaza subsequently ordered destruction of physical evidence, including evidence in and on the patrol vehicle, which was where Nelson was seated as Ditrich shot Nelson in the back one to two minutes after he had been shot once outside of the patrol vehicle. Snaza ignored the physical evidence and witness statements which contradicted Ditrich's statements in an effort to shield his personal friend and political ally, Ditrich, from criminal and civil liability.[5],[6] Snaza's encouragement of his officers to violate Thurston County Sheriff's Office ("TCSO") written policies led to Snaza and his officer's subsequent destruction of critical evidence. He exonerated Ditrich months before laboratory evaluation of gunshot residue adjacent to the entry of the bullet to Nelson's right shoulder that contradicted Ditrich's version of the events was complete.

[2] Dkt. 157, Order signed by Judge Leighton on 6/01/2020.
[3] Dkt. 159, Order on Def. Snaza's Motion for Reconsideration signed by Judge Leighton on 7/07/2020, p. 6; and Dkt. 163, Def. John D. Snaza's Second Motion for Summary Judgment.
[4] Dkt. 53-20 at 12 (attached as Ex. 20 to Dkt. 53, Cloud Decl.)
[5] Dkt. 53, Declaration of Douglas R. Cloud in Support of Plaintiff's Response to Motions for Summary Judgment by Defendants Rodney Ditrich, Thurston County and John Snaza ("Cloud Decl."), Dkt. 53-1/Ex. 1 - Deposition Transcript of John D. Snaza taken on 9/17/2018 ("Snaza Dep."), 78:6-81:17.
[6]  Dkt. 53, Cloud Decl., Dkt. 53-1/Ex. 1 - Snaza Dep., 59:25-71:5; and Cloud Decl., Dkt. 53-2/Ex. 2 - Email from Sgt. Mike Hirte to Bryan Hanks dated 1/6-7/2018, and email from Sgt. Mike Hirte to Bryon Newby dated 1/06/2016, p. 2.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1   Ditrich's actions and his explanation for his actions have been fully ratified by Thurston

2   County and TCSO Sheriff Snaza, the later both officially and in his individual capacity.

3   Joel Nelson was a 27 year old life long resident of Mason and Thurston Counties. He was

4   shot and killed by Ditrich on January 5, 2013. Ditrich shot Nelson in the back as Nelson was

5   complying with Ditrich's command to "get on your knees." The shooting occurred near the

6   intersection of 93rd Avenue ("93rd") and West Tilley Road ("Tilley") in Thurston County.

7   ## IV.  STATEMENT OF FACTS

8   Ditrich admits to using lethal force five times during the incident. He admits to using his

9   taser twice on Nelson.[7] He admits to shooting Nelson three times with his firearm. Other evidence

10  establishes Ditrich fired four shots with his firearm for a total of six uses of deadly force.[8],[9],[10],[11]

11  Critical evidence establishing that Ditrich fired four shots was likely destroyed from the

12  patrol vehicle on the direct order of Snaza. Critical evidence of the trajectory, number and path of

13  those bullets was likely destroyed.[12]

14  The evidence establishes that Nelson was initially shot outside of Ditrich's patrol vehicle as

15  he went to his knees in response to Ditrich's command to "get down on your knees" as Ditrich was

16  arresting him without probable cause on January 5, 2016.[13],[14],[15],[16] The trajectory and angle of a shot

17  to the back of Nelson's right shoulder is consistent with a shot taken by Ditrich as Nelson went to

18  his knees.[17]

19

20  [7] Dkt. 53, Cloud Decl., Dkt. 53-16/Ex. 16 - Supplemental Information Report of TCSO Lt. Gordon Phillips dated 1/05/2016 ("Phillips Report") pp. 1: ¶ 5 and 2: ¶ 1;

21  [8] Dkt. 54, Declaration of Luis Ramos dated 12/29/2018 ("Ramos Decl."). ¶ 13, 2:19-21.
    [9] Dkt. 53, Cloud Decl., Dkt. 53-3/Ex. 3 - Thurston County Coroner's Autopsy Report dated 6/02/2016.

22  [10] Dkt. 58, Declaration of John G. Peters, Jr., Ph.D. ("Peters Decl."), Ex. 1 - Report dated 1/11/2019, p. 14.
    [11] Dkt. 59, Declaration of Leo E. Poort ("Poort Decl."), Ex. 1 - Report dated 3/08/2018, p. 1 and 14.

23  [12] Dkt. 73, Declaration of Neil Low ISO Reply to Defs' Response RE Spoliation of Evidence ("Low Decl. ISO Reply"), pp. 1-5; and Dkt. 72, Declaration of Matthew Noedel ISO Reply to Defs' Response RE Spoliation of Evidence ("Noedel

24  Decl. ISO Reply"); and Declaration of Matthew Noedel in Support of Plaintiff's Response to Def. Snaza's Second Motion for Summary Judgment ("Noedel Decl.").
    [13] Dkt. 54, Ramos Decl., ¶ 13, 2:19-21.

25  [14] Dkt. 53, Cloud Decl., Dkt. 53-3/Ex. 3 - Thurston County Coroner's Autopsy Report dated 6/06/2016.
    [15] Dkt. 58, Peters Decl., Ex. 1 - Report dated 1/11/2019.

26  [16] Dkt. 59, Poort Decl., Ex. 1 - Report dated 3/08/2018, p. 1 and 14.
    [17] Dkt. 61, Knox Decl., 3:1-4:22.

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 3 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

There is photographic evidence in the record that Ditrich assaulted Nelson at the front of the patrol vehicle. Evidence of Ditrich's use of a flashlight as a weapon, as well as a struggle, were noted by Lewis County Sheriff's Office ("LCSO") and Gray's Harbor County Sheriff's Office ("GHCSO") detectives on the hood area.  There is evidence that Ditrich hit Nelson in the face with his flashlight at the front of the vehicle.[18]  At the scene, two bezel marks matching Ditrich's TCSO issued flashlight were identified in the dust and photographed on the hood of the vehicle and photographed.[19]  Nelson's autopsy photos are consistent with the use of a flashlight by an arresting officer administering a blow to his nose.[20]  A glove print, hand prints and other marks on the hood of Ditrich's patrol vehicle were noted by detectives from the GHCSO and Mason County Sheriff's Office's ("MCSO") investigators.[21]  Ditrich was wearing gloves during the incident. Any remaining physical evidence in and on the patrol vehicle was destroyed within days of January 5, 2013, on the personal order of TCSO Sheriff Snaza.[22]

Nelson was denied any opportunity to evaluate and test the evidence on and in the patrol vehicle for contact evidence such as gunshot residue, fingerprints, DNA evidence, palm prints, and blood or fabric artifacts on the hood area and in the interior of the patrol vehicle, which could help establish that Ditrich had assaulted and shot Nelson once outside of the patrol vehicle.[23]  Nelson was also unable to search for evidence in and on the vehicle for bullet strikes in order to determine the trajectory and number of the bullets fired by Ditrich. The interior of the vehicle was contaminated when TCSO Deputy Klene drove the vehicle to an unsecured TC storage facility.  He sat in the driver's seat in which Nelson was killed.  That seat could have yielded blood evidence or other contact evidence.  Deputy Klene's actions made a recreation of the shooting impossible according

---

[18] Dkt. 58, Peters Decl., Ex. 1 - Report, p. 18 (2ⁿᵈ to last ¶); and Dkt. 61, Knox Decl., Ex. 1 - Report, p. 31, § 12.1.2.2.
[19] Dkt. 53, Cloud Decl., Dkt. 53-4/Ex. 4 - Photos of the hood of Ditrich's Tahoe dated 1/05/2016 from LCSO Det. Sgt. Engelbertson.
[20] Dkt. 53, Cloud Decl., Dkt. 53-5/Ex. 5 - Autopsy Photo of Nelson's nose posthumous; and Dkt. 58, Peters Decl., Ex. 1 - Report; p.17:¶ 5.
[21] Dkt. 53, Cloud Decl., Dkt. 53-6/Ex. 6 - Photos of the flashlight bezel marks on the hood of Ditrich's Tahoe dated 1/05/2016 from LCSO Det. Sgt. Engelbertson; and Cloud Decl., Dkt. 53-7/Ex. 7 - GHCSO's First Follow-up Section of Report dated 1/05/2016.
[22] Dkt. 53-1 at 70-73, Snaza Dep. attached as Ex. 1 to Dkt. 53, Cloud Decl.
[23] Dkt. 72, Noedel Decl. ISO Reply; and Noedel Decl.

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 4 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

to Nelson's internal affairs expert, Neil Low.[24]

There is additional physical evidence that Nelson went to his knees as commanded by Ditrich.[25] Snaza's destruction of the evidence on the patrol vehicle foreclosed Nelson from seeking gunshot residue and other evidence from the hood of the patrol vehicle, which would likely have supported Nelson's position.

Ditrich has only admitted to taking three rapid fire shots to the "center mass" of Nelson as his patrol vehicle backed across 93rd in TC.[26] Ditrich's testimony is contradicted by witnesses hearing four distinct shots (one shot followed by a delay of between one and two minutes) whereupon three rapid-fire shots were heard.[27] Ditrich's story is refuted by the existence of the shot to Nelson's back and the trajectory of the shot to his back right shoulder. Ditrich could not have taken that shot from his position outside the patrol vehicle while Nelson was facing forward or even if he was turned facing the open driver's door.[28]

The shot was from the opposite trajectory from where Ditrich was firing his weapon. The shot to the right shoulder was taken at a distance of 3-18 inches, which is inconsistent with Ditrich's weapon position at the time he was shooting into the vehicle from his position on the running boards.

There was physical evidence noted on the patrol vehicle by investigators while it was still at the scene indicating an altercation or struggle occurred near and/or on Ditrich's patrol vehicle, a Chevrolet ("Chevy") Tahoe. Photographs were taken of hand, fingerprints and glove print evidence on the hood of the vehicle.[29] Specific reference to blood spatter evidence inside the vehicle was also documented.[30] No further evaluation of this evidence was possible after the car was cleaned and

---

[24] Dkt. 73, Low Decl. ISO Reply, p. 3, lns. 6-17.

[25] Dkt. 61, Knox Decl., Ex. 1 - Report, p. 30, § 11.5, ¶ 11.5.8.

[26] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Deposition Transcript of Rodney T. Ditrich taken on 8/31/2018 ("Ditrich Dep."), 131:13-15; and Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich's original (week later) transcribed statement ("Ditrich Stmt"), 11:32-38 and 22:3:12.

[27] Dkt. 54, Ramos Decl., ¶ 13, 2:19 to ¶ 17, 3:7.

[28] Dkt. 61, Knox Decl., pp. 3-4.

[29] Dkt. 53, Cloud Decl., Dkt. 53-4/Ex. 4 - Photos of Ditrich's vehicle taken by LCSO Det. Sgt. Engelbertson dated 1/05/2016.

[30] Dkt. 53, Cloud Decl., Dkt. 53-10/Ex. 10 - Email from Bryon Newby to Dana Reimholz, et al., dated 1/13/2016, ("Newby Email), p. 1: ¶ 4.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1    repaired.

2    **A.    Ditrich's Version of Nelson's Seizure and Arrest.**

3        Ditrich claims that he initially contacted Nelson on or near the south side of the public right

4    of way on 93rd in Thurston County, Washington, just east of the intersection of 93rd Avenue

5    Southeast and West Tilley Road, which was adjacent to a residence and premises occupied by Luis

6    Ramos and Catalina Robles and their children.[31]  Ditrich claimed he had noticed Nelson as he drove

7    west on 93rd toward the intersection of West Tilley Road and 93rd.  Ditrich stated he thought Nelson

8    looked "suspicious" because he purportedly turned his head away from Ditrich as he drove towards

9    where he had first sighted Nelson.[32]  Ditrich thought Nelson may have been on private property.[33]

10   Snaza described this as a "felony stop."[34]  When Ditrich got out of his vehicle, he left his driver's

11   door open and the vehicle running.[35]

12       Ditrich stated that, as he was pulling his patrol vehicle into a driveway on the south side of

13   93rd, he saw Nelson behind a bush.  Ditrich got out of his patrol vehicle and stood behind his open

14   driver's door.[36]  Ditrich stated Nelson told him he was "just looking for a place to piss."[37]  Ditrich

15   then directed Nelson's attention to a "no trespassing" sign somewhere nearby. Nelson, Ditrich

16   claimed, appeared surprised to see the sign. The intent to trespass was not clear. The surrounding

17   area was a mixed wooded area on the south side of 93rd adjacent to the  driveway where the stop

18   occurred.[38]  After some conversation, Ditrich seized Nelson by telling him to put his hands on the

19   hood of the patrol vehicle.[39]  Nelson complied. Nelson was under arrest at this point.  He was not

20   free to go.[40]  Ditrich did not have probable cause to arrest Nelson. Ditrich admits to pointing an

21   ───────────────
     [31] Dkt. 53, Cloud Decl., Dkt. 53-19/Ex. 19 - Transcript of Sworn Statement of Catalina Robles dated 1/05/2016 ("Robles

22   Sworn Stmt"), 1:35-38; and See Dkt. 54, Ramos Decl., ¶ 2, 1:20-21.
     [32] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8-Ditrich Dep., 67:220-23; and Cloud Decl., Dkt. 53-9./Ex. 9-Ditrich Stmt, 8:1.

23   [33] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 58:4-8; and 67:22-23.
     [34] Dkt. 53, Cloud Decl., Dkt. 53-1/Ex. 1 - Snaza Dep., 187:14-188:12.

24   [35] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich's Dep., 60:12-13
     [36] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich's Dep., 64:2-7; and Dkt. 53-9/Ex. 9 - Ditrich Stmt, 8:28-29.

25   [37] Dkt. 53, Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich's Stmt, 8:19 and 13, ¶ 3.
     [38] Dkt. 53, Cloud Decl., Dkt. 53-36/Ex. 36 - Picture of Scene from Ditrich's Dep. (Ex. 2).

26   [39] Dkt. 53, Cloud Decl., Dkt. 53-16/Ex. 16, Phillips Report, p. 2, ¶ 1, lns. 1-2; and Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich
     Dep., 8:33-34.
     [40] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 71:1-3.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1  armed taser at Nelson as Nelson was ordered to drop his back pack prior to Nelson placing his hands

2  on the hood.[41]

3      Ditrich describes Nelson as being evasive and seemingly seeking an avenue of escape.[42]

4  Ditrich then required Nelson provide his name.[43] Ditrich claimed he told Nelson that he would arrest

5  him if he had given him a false name.  Nelson provided the name "Joshua Nelson."  Ditrich checked

6  the name with radio dispatch and it came back as, "no record."[44] Ditrich then claims he told Nelson

7  that he was under arrest for obstructing.[45] Ditrich then moved toward Nelson to take him into

8  custody.[46]

9  **B.**   **Two Witnesses Heard "Get down on Your Knees" Followed by a Gunshot.**

10      It is likely at this point that the first shot taken by Ditrich was fired.  Two witnesses, Luis

11  Ramos and his wife, Catalina Robles, were inside the residence adjacent to the driveway where

12  Ditrich initially parked his vehicle to confront Nelson.  Both Mr. Ramos and Ms. Robles gave sworn

13  statements immediately after the incident described herein.[47],[48] Mr. Ramos and Ms. Robles saw and

14  heard part of the incident.

15      Mr. Ramos, while he was eating in his kitchen around 4:00 p.m., heard a voice yell, "Get

16  down on your knees," followed immediately by a gunshot. (There was physical evidence on Mr.

17  Nelson's body that was noted in the autopsy report of Mr. Nelson having gone to his knees.[49])  Mr.

18  Ramos then looked through his kitchen window and saw a patrol vehicle parked in the driveway

19  adjacent to his home on the south side of 93rd. Mr. Ramos then saw the patrol vehicle back onto

20  93rd and then return to the driveway.  Mr. Ramos turned away and told his wife and kids to go

[41] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 103:14-18.
[42] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 74:17-18.
[43] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 29:18-19; Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich Stmt, 9:10-11.
[44] Dkt. 53, Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich Stmt, 9:10-11 and 9:33; and Dkt. 53-18/Ex. 18 - Transcript of Radio Dispatch, p.1 at 16:06:43.
[45] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 82:7-8; and Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich Stmt, 9:36 and 9:44-45.
[46] Dkt. 53, Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich's Stmt, 9:46.
[47] Dkt. 54, Ramos Decl., ¶ 8, 2:7 through ¶ 19, 3:13 and Ex. 1 to Ramos Decl. - Transcript of Luis Ramos' Sworn Statement ("Ramos Sworn Stmt") dated 1/05/2016, 4:155-9:378.
[48] Dkt. 53, Cloud Decl., Dkt. 53-19/Ex. 19 - Robles Sworn Stmt, 3:92-97 and 3:115-6:270.
[49] Dkt. 61, Knox Decl., Ex. "1", p. 30 § 11.5.8.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

downstairs.[50]

Mr. Ramos again saw the patrol vehicle, as the vehicle again backed across 93rd.[51] The driver's door was open. Ditrich was standing on the running boards on the driver's side with his gun held in his right hand.[52] Mr. Ramos heard three more shots in rapid succession, identical in sound as the first shot, as the patrol vehicle backed across the street. Mr. Ramos has confirmed that the delay between the first shot and the three rapid fire shots was between *one and two minutes* (emphasis added).[53] Ms. Robles also heard one shot, followed by a delay, as she and the children went downstairs. She then heard three shots in rapid succession.[54]

**C.   Ditrich's Testimony and Statements Conflict with the Non-Destroyed Physical Evidence and Written Statements.**

Ditrich claims that he shot Nelson by firing three shots in rapid succession as Nelson was seated in the driver's seat of Ditrich's patrol vehicle at the end of an event that lasted at least eight (8) minutes.[55] Ditrich stated that, as he rapidly fired the three shots, Nelson's torso folded forward towards the steering wheel.[56] Nelson's hands, according to Ditrich, were on the steering wheel. This occurred according to Ditrich as he was standing on his patrol vehicle's running board on the driver's side, while shooting at the "center mass" of the seated facing forward Nelson.[57] "Center mass" means the front center of the torso.[58]

Ditrich's story that he fired only three shots is not credible because Nelson was shot in the right shoulder blade from a distance of 3 to 18 inches.[59] That bullet had a trajectory from right to left

---

[50] Dkt. 54, Ramos Decl., p. 2: ¶ 13; and Ex. 1 to Ramos Decl. - Ramos Sworn Stmt, 7:274-276.
[51] Dkt. 54, Ramos Decl., p. 2 ¶ 15; and Ex. 1 to Ramos Decl. - Ramos Sworn Stmt, 8:330-332 and 7:284-286.
[52] Dkt. 55, Lancaster Decl., 2:1-13.
[53] Dkt. 54, Ramos Decl., ¶ 17, 3:5-7.
[54] Dkt. 53, Cloud Decl., Dkt. 53-19/Ex. 19 - Robles Sworn Stmt., 4:146-5:182 and 6:263-270.
[55] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex 8 - Ditrich Dep., 92:10-24, 130:25-131:15; and Cloud Decl., Dkt. 53-16/Ex.16 - Phillips Report, p. 2, ¶ 5.
[56] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 135:4-136:16; and Cloud Decl., Dkt. 53-9/Ex. 9 - Ditrich Stmt, 11:33-35, 22:10-17.
[57] Dkt. 53, Cloud Decl., Dkt. 53-8/Ex. 8 - Ditrich Dep., 134:2-5.
[58] Dkt. 58, Peters Decl., p. 8, ¶ 4.
[59] Dkt. 53, Cloud Decl., Dkt. 53-25/Ex. 25 - Washington State Patrol ("WSP") Crime Laboratory Report prepared by Mr. Schoeman dated 6/10/2016, p. 1.

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 8 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

and from back to front.[60]  A bullet also struck Nelson in the front left torso, just above a jacket

pocket, and followed a trajectory from left to right and from front to back.  <u>The two bullets found</u>

<u>in Mr. Nelson's torso were fired from directions 180 degrees opposite from one another.[61] This could</u>

<u>not have happened in a split-second rapid firing of three successive shots as Ditrich held his gun</u>

<u>outside the vehicle firing into the vehicle while the entire time Nelson was seated in the driver's seat,</u>

<u>facing forward</u> (emphasis added).[62]  Ditrich's weapon was much further away from Nelson's right

shoulder than 3-18 inches when the three shots that Ditrich admits to were fired.  The path of the

bullet to the right shoulder was opposite to Ditrich's direction of fire while standing on the running

boards.

The Washington State Patrol's forensic evaluation of the gunshot residue found on Mr.

Nelson's clothing concluded the shot to the right shoulder was taken at close range, from a distance

between 3-18 inches.[63]  This report was not completed until June 10, 2016.[64]  This was almost four

(4) months after Ditrich was already exonerated by TCSO and Snaza.[65]  It could not be determined

what the distance of the shots were that hit the left pocket area of Nelson's torso and the shot that

hit his right wrist.[66]  A shot to the right shoulder blade area taken from a distance of 3-18 inches from

the entry would is inconsistent with Ditrich's position, the position of his gun and Nelson's position

when Ditrich took the three shots from the running boards.

LCSO Detective Jeremy Almond ("Almond"), who was denoted the "lead" investigator by

the Region 3 Critical Incident Task Force ("CIIT"), has testified that Ditrich could have taken four

(4) shots.[67]  The Lewis County Sheriff was and is Robert Snaza, John Snaza's twin brother. LCSO

---

[60] Dkt. 53, Cloud Decl., Dkt. 53-3/Ex. 3 - TC Coroner's Autopsy Report, pp. 4-5, ¶ 2b.

[61] Dkt. 61, Knox Decl., 4:11-16, Ex. 1 - Report, p. 35, ¶ 13.1.3. and Dkt. 53, Cloud Decl., Dkt. 53-3/Ex. 3 - TC Coroner's Autopsy Report, p. 5, ¶ 2b.

[62] Dkt. 57, Wigren Decl., 2:12-19 and Ex. 1 - Report, p. 6, ¶ 20.; Dkt. 61, Knox Decl., Ex. 1 - Report, p. 35, 13.1.2, and p. 37, 14.2-14.3.; Dkt. 56, Larsen Decl., 2:15-26; and Dkt. 55, Declaration of Brent Lancaster dated 1/03/2019 ("Lancaster Decl."), 2:10-13.

[63] Dkt. 53, Cloud Decl., Dkt. 53-25/Ex. 25 - WSP Crime Laboratory Report dated 6/10/2016, p. 1.

[64] Dkt. 53, Cloud Decl., Dkt. 53-25/Ex. 25 - WSP Crime Laboratory Report dated 6/10/2016.

[65] Dkt. 53, Cloud Decl., Dkt. 53-26/Ex. 26 - J. Andrew Toynbee, Chief Criminal Deputy, Memo dated 2/12/2016.

[66] Dkt. 61, Knox Decl., Ex. 1 - Report.

[67] Dkt. 53, Cloud Decl., Dkt. 53-17/Ex. 17 - Deposition Transcript of Jeremy Almond dated November 1, 2018 ("Almond Dep."), 128:21-129:12.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

Deputy Detective Sergeant Engelbertson ("Engelbertson") was Det. Almond's supervisor and was also on the scene. LCSO was denoted the lead department during the investigation of the shooting.

### D.   Additional Eyewitnesses.

Other witnesses saw the patrol vehicle backing onto 93rd Avenue two times, as well as the final shots.  Brent Lancaster saw the patrol vehicle back on the street as he was driving westbound on 93rd.[68] He was  some distance east of the scene when he first saw the patrol vehicle back out on 93rd. He momentarily lost sight of the vehicle and continued driving towards the scene and stopped his vehicle in the eastbound lane approximately 15 feet away from the patrol vehicle as it backed across 93rd the second time.[69]

Brent Lancaster stated that he saw Nelson sitting in the vehicle in the driver's seat <u>facing forward</u> the entire time as the patrol vehicle backed across 93rd.[70] He observed Ditrich fire what he believed were three rapid shots in succession "to the gut or perhaps slightly above" as the patrol vehicle backed across 93rd while Ditrich was shooting from where he was standing on the running board of his Chevy Tahoe.[71]  Thus, the shot to Nelson's right shoulder could not have happened during the firing of the three rapid-fire shots as he sat facing forward in the driver's seat when the shots were fired. Therefore, an earlier first shot not acknowledged by Ditrich is the only explanation for the mortal wound to Nelson's right shoulder and it must have occurred between one and two minutes earlier and outside the vehicle, as heard by Luis Ramos and Catalina Robles.[72] A person cannot "get down on your knees" while seated in a patrol vehicle.  Ditrich's shouted command occurred outside the patrol vehicle. There was possible evidence of another bullet in the patrol vehicle after the shooting that did not hit Nelson.

### E.   "I Can't Believe He Shot Me."

Richard Larsen also confirmed that Ditrich shot into the patrol vehicle as he was standing on

---

[68] Dkt. 55, Lancaster Decl., ¶ 5, 2:2-5.
[69] Dkt. 55, Lancaster Decl., ¶ 3, 1:22-24.
[70] Dkt. 55, Lancaster Decl., ¶ 8, 2:12-13.
[71] Dkt. 55, Lancaster Decl., at ¶¶ 6-7, 2:6-11.
[72] Dkt. 53, Decl. Cloud, Dkt. 53-19/Ex. 19 - Robles Sworn Stmt., p. 4, lines 145-146, 166-167, 172-173 and 176-178; and Dkt. 54, Ramos Decl., 2:16-18, 2:21 and 3:8-9.

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 10 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax:  253-627-8376

the driver's side running boards at the forward facing Nelson as he sat in the driver's seat.[73]  Mr. Larsen heard two or three shots, "bang, bang" or "bang, bang, bang."[74]  Richard Larsen exited his own vehicle and ran to the patrol vehicle that had stopped in the brush on the north side of 93rd immediately after it came to rest.

Mr. Larsen was the first person to reach into the patrol vehicle to get Nelson out of the driver's seat after he was shot.  As Mr. Larsen entered the vehicle, Nelson was sitting upright in the driver's seat.  Mr. Larsen stated that Nelson's last words, a dying declaration, were, "I can't believe he shot me."[75]

## F.   The Number of Shots Fired Evidence and Trajectory Evidence Are Crucial in Implicating Ditrich.

If Ditrich only fired three shots, he was violating the TCSO written firearms and ammunition policy.  TCSO's written firearms and ammunition policy requires a semi-automatic pistol, such as Ditrich's Glock 35, to be carried by a deputy with a fully loaded magazine and one additional bullet carried in the chamber of the pistol.[76]  A fully loaded Glock 35 loaded with a full magazine of 15 cartridges and a bullet cartridge in the gun's chamber results in 16 bullets. Ditrich's Glock 35 had only 11 rounds in its 15 round magazine and one round in the chamber for a total of 12 rounds after he shot Nelson.[77] Sixteen bullets minus four bullets equals twelve bullets. Twelve bullets were recovered from Ditrich's Glock 35. Thus, the bullet count from Ditrich's Glock 35 after he shot Nelson is circumstantial evidence that Ditrich fired four (4) rounds.  Ditrich, if he was following the TCSO's written ammunition policy, was carrying his weapon fully loaded with 16 bullets. He discharged four shots according to Mr. Ramos and Mr. Robles.  Det. Almond has also admitted that Ditrich may have taken four shots.

//

---

[73] Dkt. 56, Larsen Decl., ¶1, 2:24-26.
[74] Dkt. 56, Larsen Decl., ¶ 8, 2:15-16.
[75] Dkt. 56, Larsen Decl., ¶ 12, 3:3.
[76] Dkt. 58, Peters Decl., Ex. 1 - Report, p. 6, last two ¶'s.  Dkt. 53, Cloud Decl., Dkt. 53-1/Ex. 1 - Snaza Dep., 51:3-15; and Cloud Decl., Dkt. 53-30/Ex. 30 - TCSO - Policy Manual, § 1.G.9(d)(3), p. 57.
[77] Dkt. 53, Cloud Decl, Dkt. 53-25/Ex. 25, WSP Crime Laboratory Report, p. 1, Item 18 in last paragraph.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

**G.     Plaintiff's Experts Provide Support to Plaintiff's Claims.**

**1. Leo E. Poort**.

Leo E. Poort is an expert in police practices and investigations retained by the plaintiff. Mr. Poort's credentials are extensively outlined in his report and Curriculum Vitae, which is attached to his report.[78] Mr. Poort believes that, even if Ditrich's story was true, his use of lethal force was unjustified.[79] Mr. Poort's opinions on the actions of Ditrich, TCSO and Snaza are set forth in his report.[80]

**2. John G. Peters, Jr., Ph.D., CTC, CLS.**

Dr. John G. Peters, Jr., is a former law enforcement officer, deputy sheriff and law enforcement administrator. He has been an internal affairs investigator. He is an instructor in lethal force, defensive tactics, the use of tasers and the use of flashlights by law enforcement. Dr. Peters is educated, trained and experienced as a forensic police procedure expert. He has evaluated TCSO's training, policies, customs and procedures. A summary of Dr. Peters' opinions is forth in his report.[81]

1.     TC (WA) and/or Sheriff John D. Snaza (Snaza) created an organizational atmosphere that intentionally protected its law enforcement officers and/or ratified law enforcement officer misconduct.

Dr. Peters concluded that TCSO and Snaza conducted a "biased" and "sham" investigation.[82] He concluded that TC and TCSO ratified Ditrich's "outrageous conduct."[83] Dr. Peters's reasoning and supporting documentation is set forth in his report attached to his declaration.[84]

Dr. Peters states as follows:

Snaza's testimony demonstrates an organizational culture that clearly is biased toward protecting TC deputies and confirming the County has your back and will protect you—even if deputies demonstrated outrageous behavior. Such a policy contradicts generally accepted police practices regarding policy and procedures.

[78] Dkt. 59, Poort Decl., Ex. 1 - Curriculum Vitae.
[79] Dkt. 59, Poort Decl., 3:10-13; and Poort Decl., Ex. 1 - Report, § E (Opinions), p. 14 and p. 17.
[80] Dkt. 59, Poort Decl., Ex. 1 - Report, and § E (Opinions), pp. 14-17.
[81] Dkt. 58, Peters Decl., Ex. 1 - Report, p. 20, 3).
[82] Dkt. 58, Peters Decl., Ex. 1 - Report, p. 20, 3).
[83] Dkt. 58, Peters Decl., 3:8-11; and Peters Decl., Ex. 1 - Report, p. 5, #9.
[84] Dkt. 58, Peters Decl., Ex. 1 - Report.

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 12 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

Based upon my education, experience, and training, Snaza and/or TC created an organizational culture that protected its deputies through a lack of leadership and/or their failure to enforce the written policies as promulgated by the TC Sheriff's Department. This culture coupled with the lack of policy enforcement demonstrated to TC Sheriff's Department employees their failure to follow policy will not only be tolerated, but also ratified.[85]

### 3. Carl Wigren, MD:

Dr. Carl Wigren is a forensic pathologist board certified in anatomic physiology and forensic pathology. Dr. Wigren opines that Nelson could have survived a first shot to the right shoulder for several minutes and engaged in some physical activity thereafter.[86]

### 4. Michael A. Knox, Ph.D., CCSR:

Michael A. Knox, Ph.D., CCSR, is a Board Certified Crime Scene Reconstructionist. Dr. Knox is an expert in crime scene investigation, analysis, firearms, ballistics and shooting incidents, gunshot wound dynamics, gunshot residue and range of fire determinates and blood stain analysis.

Dr. Knox reviewed the investigating reports and witness statements he was provided and concluded that Ditrich story is contradicted by the physical evidence. His opinions are summarized as follows:

14.2.  The right-to-left component to the trajectory of the gunshot wound to Nelson's right back could not have been achieved while Nelson was seated in the driver's seat facing forward or while facing toward the driver's door.

14.3.  It is not probable that the front-to-back, left-to-right trajectory of the gunshot wound to Nelson's left chest and the back-to-front, right-to-left trajectory of the gunshot wound to Nelson's right back–trajectories that are roughly 180 degrees apart–both occurred during the rapid firing of three gunshots.

14.4.  The physical evidence in this case does not provide a distinction between a shot fired at Nelson as he was seated in the vehicle and a shot fired at Nelson outside of the vehicle provided that the pistol was held in a manner consistent with the downward trajectories of the two gunshot wounds to his torso.[87]

### H.   Snaza Had a Duty to Preserve Evidence in and on the Patrol Vehicle.

Undersheriff Timothy Braniff ("Braniff") has testified that TC owes a duty to survivors of people killed by law enforcement to preserve evidence so a victim's family can have an opportunity

---

[85] Dkt. 58, Peters Decl., Ex. 1 - Report, p. 7.
[86] Dkt. 57, Wigren Decl., ¶ 6, 2:19-3:15; and Wigren Decl., Ex. 1 - Report, pp. 7-8.
[87] Dkt. 61, Knox Decl., ¶ 5, 2:8-22; and Knox Decl., Ex. 1 - Report, p. 37.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

to evaluate the evidence.[88]  He agreed that a duty was owed to families of the deceased to have a "complete, thorough and transparent" investigation.[89]  In fact, Braniff then agreed that an investigation of the use of lethal force by an officer owed a duty to families of the deceased.[90]

Plaintiff has presented documentary evidence and an email from TC Fleet Services Crew Chief Bryon Newby to TCSO Lieutenant Gordon Phillips ("Phillips") and other recipients, dated January 13, 2016, that establishes that Snaza and TCSO knew that "fine blood spatter" existed in Ditrich's patrol vehicle after the shooting of Nelson.[91]

Snaza and TCSO did nothing to stop the destruction of this evidence. Instead, Snaza continued to push for the cleaning and repair of the patrol vehicle, as they had since January 6, 2016, the day after Nelson was killed.[92]  Snaza had overall authority, direction and control of the scene of the shooting.

An email dated January 6, 2016, established that the patrol vehicle was in the possession and control of TCSO at "patrol," believed to be the Field Operation Bureau in Tumwater.[93]  The vehicle had been driven by Deputy Klene to the TC shop facility from the crime scene the previous evening.[94]  The patrol vehicle and any evidence within the patrol vehicle were contaminated by Deputy Klene's actions.[95] The patrol vehicle should have been towed to a secure facility, under observation by accompanying deputies, with limited and monitored access at the secure facility in order to preserve the evidence remaining in and on the patrol vehicle.[96]

---

[88] Dkt. 53, Cloud Decl., Dkt. 53-33/Ex. 33 - Dep. Transcript of Timothy Braniff taken on 11/15/2018 ("Braniff Dep."), 140:3-21 and 140:22-142:7.

[89] Dkt. 53, Cloud Decl., Dkt. 53-33/Ex. 33 - Braniff Dep., 140:3-21.

[90] Dkt. 53, Cloud Decl., Dkt. 53-33/Ex. 33 - Braniff Dep., 140:22-142:7.

[91] Dkt. 53, Cloud Decl., Dkt. 53-10/Ex. 10 - Email from Newby to Dana Reimholz, et al., dated 1/13/2016; and Dkt. 70, Cloud Decl. in Support of Plaintiff's Reply to Defendants' TC, Ditrich and Snaza's Responses to Plff's Motion for Sanctions Regarding Spoliation of Evidence ("Cloud Decl. ISO Reply RE Spoliation of Evidence"), Dkt. 70-2/Ex. 2 - Deposition Transcript of Bryan Hanks taken 2/05/2019 ("Hanks Dep."), 15:16-16:9, and Ex. 2 to Hanks Dep.

[92] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 6:13-19.

[93] Dkt. 53, Cloud Decl., Dkt. 53-2/Ex. 2 - Email from Sgt. Hirte to Hanks dtd Jan. 6-7, 2016 and email from Sgt. Hirte to Newby dtd 1/06/2016, p. 2.  Dkt. 70, Cloud Decl. ISO Reply RE Motion for Sanctions, Dkt. 70-2/Ex. 2 - Hanks Dep., 14:10-15:5, and Ex.'s 1 and 12 to Hanks Dep.

[94] Dkt 53, Cloud Decl., Dkt. 53-23/Ex. 16 - Supp. Field Report of Dep. Klene dated 1/06/2016, p. 2: ¶ 3, ln. 3-4.

[95] Dkt. 73, Low Decl. ISO Reply, p. 3, ¶ 9.

[96] Dkt. 73, Low Decl. ISO Reply, p. 2, ¶'s 5, 6, 7, 8 and 9.

---

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

Bryan Hanks ("Hanks") who, in 2016, was the TC Central Services Fleet Manager, first started working on coordinating the repair of the patrol vehicle he believes, on January 6, 2016, the day after Nelson's death.[97]  Snaza wanted the vehicle cleaned and repaired and then sold.[98]  Hanks said that the patrol vehicle was in the custody of TCSO on January 6, 2016.[99] Hanks had to get permission from TCSO to access the vehicle.[100]  Hanks coordinated the inspection on the vehicle to determine the extent of damage with Phillips of the TCSO.[101]  The inspection took place on January 11, 2016.[102] TCSO was seeking a quick resale of the patrol vehicle.[103]

On January 12, 2016, Phillips stated in an email to Hanks that, *"So you all are aware, the lead investigator on Rod incident is done with the vehicle.  They have no interest in it."*[104]

Former Lewis County Sheriff's Office Det. Almond,  the "lead investigator" described his duties as one of a clerk, to simply collect investigative reports and to submit evidence for laboratory analysis.[105]  The description of his duties in the Critical Incident Investigation Plan ("CIIP") collaborates his testimony.[106] Almond was a recently promoted deputy who had just assumed his position as a detective for the LCSO.  He has since left the LCSO as he had been suspected of inappropriate sexual communication with a female LCSO explorer program cadet.[107]

LCSO Det. Sgt. Engelbertson, Det. Almond's superior, was at the scene.  He testified that

---

[97] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 6:13-19.
[98] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 27:9-28:19; and Dkt. 53-1, Snaza Dep, 70:22-71:5 (attached as Ex. 1 to Dkt. 53, Cloud Decl.).
[99] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 15:16-16:14.
[100] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep, Ex.'s 1 and 12 to Dep., Email dtd 1/07/2016; and Dkt. 53, Cloud Decl., Dkt. 53-2/Ex. 2 - Email from Sgt. Hirte to Hanks dtd Jan. 6-7, 2018 and email from Sgt. Hirte to Newby dtd 1/06/2016, p. 2.
[101] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 6:22-7:3.
[102] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 7:11-17.
[103] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., 11:4-18.
[104] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-2/Ex. 2 - Hanks Dep., and Ex. 7 to Dep. - Email from Lt. Phillips to Hanks, et al., sent 1/12/2016.
[105] Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-3/Ex. 3 - Deposition Transcript of Jeremy Almond taken on 11/01/2018 ("Almond Dep."), 33:25-34:11.
[106] Dkt. 53, Cloud Decl., Dkt. 53-20/Ex. 20 - CIIP, pp. 5-18.  Dkt. 70, Cloud Decl. ISO Reply RE Spoliation of Evidence, Dkt. 70-4/Ex. 4 - CIIP, pp. 7-8.
[107] Cloud Decl., Ex. 5 - Deposition Transcript of Kevin Engelbertson taken on 12/05/2018 ("Engelbertson Dep."), 88:17-91:25.

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

1   he (Engelbertson) was subordinate to any ranking officer at the scene from any other agency.[108]

2   Almond was subordinate to Engelbertson.[109]  Neither was in a position of authority to "release" the

3   patrol vehicle.

4          Engelbertson testified that he was nominally in charge of the investigation at the scene, but

5   that he did not have authority over senior officers such as Sheriff Snaza as "command authority kind

6   of stops at a certain level."[110]  Engelbertson had no idea that the patrol vehicle had been driven by

7   TCSO Deputy Klene from the scene.[111]

8          Snaza admits to being at the scene of the shooting.[112]  Snaza was the incident commander

9   pursuant to the six agency regional CIIP.[113]  Snaza had the "overall authority and control of a critical

10  incident."[114]  All evidence was to be stored by TC.[115]  Snaza made the decision to dispose of the

11  patrol vehicle no later than January 6, 2016.[116]

12  **I.    The Defendants Have Deliberately Engaged In Sanctionable Spoliation**.

13         Forensic scientist, Matthew Noedel, filed a declaration that establishes that TCSO had

14  destroyed any remaining physical evidence on and in the patrol vehicle prior to his opportunity to

15  inspect the vehicle on behalf of Nelson on April 8, 2016.[117]  Noedel also points out that, in the

16  condition the patrol vehicle was offered for forensic analysis, there was not *"any evidence*

17  *recognized to be of specific value for reconstruction was located during the April 8th*

18  *examination."*[118] Mr. Noedel describes specific evidence that was likely destroyed in his Declaration

19  in Support of Plaintiffs' Reply to Defendants' Responses to Plaintiff's Motion for Sanctions, RE:

20

21  ---
    [108] Dkt. 70, Cloud Decl., Dkt. 70-5/Ex. 5 - Engelbertson Dep., 49:14-49:5.
    [109] Dkt. 70, Cloud Decl., Dkt. 70-5/Ex. 5 - Engelbertson Dep., 29:14-17; and Cloud Decl., Dkt. 70-3/Ex. 3 - Almond
22  Dep., 37:8-13 and 39:2-7.
    [110] Dkt. 70, Cloud Decl., Dkt. 70-5/Ex. 5 - Engelbertson Dep., 49:14-49:5.
    [111] Dkt. 70, Cloud Decl., Dkt. 70-5/Ex. 5 - Engelbertson Dep., 49:13-19 and 132:17-23.
23  [112] Dkt. 70, Cloud Decl., Dkt. 70-6/Ex. 6 - Deposition of John Snaza taken on 9/17/2018 ("Snaza Dep"), 121:7-9.
    [113] Cloud Declaration in Support of Plaintiff's Response to Def Snaza's Second Motion for Summary Judgment ("Cloud
24  Decl. ISO Resp to Snaza's 2nd MSJ"), Ex. 1 - Pearsall Dep., 27:18-28:11 and Ex. 1, § V at p. 7.
    [114] Cloud Decl. ISO Resp to Snaza's 2nd MSJ, Ex. 1 - Pearsall Dep., 27:18-28:11 and Ex. 1, § V at p. 7.
25  [115] Cloud Decl. ISO Resp to Snaza's 2nd MSJ, Ex. 1 - Pearsall Dep., 27:18-28:11, Ex. 1, § V, (E) and (G) at p. 8.
    [116] Cloud Decl. ISO Resp to Snaza's 2nd MSJ, Ex. 1 - Pearsall Dep., 42:6-45:3 and Ex. 2.
26  [117] Dkt. 72, Noedel Decl. ISO Reply, ¶ 10, 2:26-6 and ¶ 12, 3:18-23, and Ex. 2 - Report.
    [118] Dkt. 72, Noedel Decl. ISO Reply, ¶ 12, 3:18-23; and Ex. 2 - Report.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

1  Spoliation of Evidence (Dkt. 72), and his Declaration in Support of Plaintiff's Response to

2  Defendant Snaza's Second Motion for Summary Judgment. He addressed the issue further in

3  declaration with attached supplemental report.[119]

4  Plaintiff's internal affairs and internal investigation expert, Neil Low, points out the failure

5  to preserve the items within the vehicle, in their original position as discovered at the scene, renders

6  any attempt to recreate the scene and the shooting impossible.[120]

7  Neil Low has stated in his declaration that the actions of TCSO imply that *"TCSO personnel*

8  *acted quickly to remove the patrol vehicle from the crime scene in an effort to contaminate evidence*

9  *in and on the vehicle."*[121]  Mr. Low details the correct methods for the handling and  preservation

10  of evidence on or in a patrol vehicle involved in an use of lethal force by a deputy and law

11  enforcement agencies.[122]  The correct methods were disregarded by Snaza.

12  Mr. Low indicates the extreme behavior of TCSO personnel and Snaza was so below law

13  enforcement standards as to imply the evidence destruction was intentional and done with Snaza's

14  approval; otherwise, TCSO's actions are entirely inexplicable.[123]

15  Plaintiff's police practices expert, John G. Peters, Jr., Ph.D., agrees with Mr. Low.[124]  He also

16  points out that Snaza's testimony reveals that he does not enforce written TCSO policies or

17  provisions of the CIIP, the policy manual specifying the duties of the six agency Critical Incident

18  Investigation Task Force ("CIIT"), and, consequently, his written policies are rendered meaningless

19  and unenforceable.[125]

20  ## V. ISSUES PRESENTED

21  **1.**  Should the Defendant John D. Snaza's Second Motion for Summary Judgment be

22  denied?

23  [119] Dkt. 72, Noedel Decl. ISO Reply; and Noedel Decl.
[120] Dkt. 73, Low Decl. ISO Reply, ¶ 8, 3:6-13, and Ex. 1 - Report.

24  [121] Dkt. 73, Low Decl. ISO Reply, ¶ 3, 2:2-5, and Ex. 1 - Report.
[122] Dkt. 73, Low Decl. ISO Reply, 2:11-3:17, and Ex. 1 - Report.

25  [123] Dkt. 73, Low Decl. ISO Reply, 3:18-4:6, and Ex. 1 - Report.
[124] Dkt. 71, Peters Decl. in Support of Plaintiff's Reply to Defendants' Responses to Plaintiff's Motion for Sanctions

26  ("Peter Decl. ISO Reply"), 2:7-3:10.
[125] Dkt. 71, Peters Decl. ISO Reply, 2:7-11; and Dkt. 58, Peters Decl., Ex. 1 - Report, pp. 6-31.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

**2.** Plaintiff's have previously moved for sanctions on the defendants for spoliation of evidence. How do possible sanctions by the court affect the court's decision regarding the resolution of the pending summary judgment motion?

## VI. <u>EVIDENCE RELIED UPON</u>

**1.** The records and files herein;

**2.** The Plaintiff's Response to Defendant John D. Snaza's Second Motion for Summary Judgment, together with factual citations therein;

**3.** Declaration of Douglas R. Cloud in Support of Plaintiff's Response to Defendant John D. Snaza's Second Motion for Summary Judgment, together with all exhibits which are incorporated herein by this reference;

**4.** Declaration of Matthew Noedel in Support of Plaintiff's Response to Defendant John D. Snaza's Second Motion for Summary Judgment, together with all exhibits which are incorporated herein by this reference;

**5.** Declaration of Douglas R. Cloud in Support of Plaintiff's Response to Defendant John D. Snaza's Motion for Summary Judgment, together with all exhibits which are incorporated herein by this reference (Dkt. 53);

**6.** Declaration of Luis Ramos, together with all exhibits which are incorporated herein by this reference (Dkt. 54);

**7.** Declaration of Brent Lancaster (Dkt. 55);

**8.** Declaration of Richard Larsen (Dkt. 56);

**9.** Declaration of Carl Wigren, MD, in Support of Plaintiff's Responses to Motions for Summary Judgment by Defendants Ditrich, TC and Snaza, together with all exhibits which are incorporated herein by this reference (Dkt. 57);

**10.** Declaration of John G. Peters, Ph.D., in Support of Plaintiff's Responses to Motions for Summary Judgment by Defendants Ditrich, TC and Snaza, together with all exhibits which are incorporated herein by this reference (Dkt. 58);

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1    **11.**   Declaration of Leo E. Poort in Support of Plaintiff's Responses to Motions for

2  Summary Judgment by Defendants Ditrich, TC and Snaza, together with all exhibits which are

3  incorporated herein by this reference (Dkt. 59);

4    **12.**   Declaration of Michael A. Knox, Ph.D., in Support of Plaintiff's Responses to

5  Motions for Summary Judgment by Defendants Ditrich, TC and Snaza, together with all exhibits

6  which are incorporated herein by this reference (Dkt. 61);

7    **13.**   Declaration of Douglas R. Cloud in Support of Plaintiff's Reply to Defendants'

8  Thurston County, Rodney T. Ditrich and John D. Snaza's Responses to Plaintiff's Motion for

9  Sanctions, RE: Spoliation of Evidence, together with all exhibits which are incorporated herein by

10 this reference (Dkt. 70);

11    **14.**   Declaration of John G. Peters, Ph.D., in Support of Plaintiff's Reply to Defendants'

12 Thurston County, Rodney T. Ditrich and John D. Snaza's Responses to Plaintiff's Motion for

13 Sanctions, RE: Spoliation of Evidence (Dkt. 71);

14    **15.**   Declaration of Matthew Noedel in Support of Plaintiff's Reply to Defendants'

15 Thurston County, Rodney T. Ditrich and John D. Snaza's Responses to Plaintiff's Motion for

16 Sanctions, RE: Spoliation of Evidence, together with all exhibits which are incorporated herein by

17 this reference (Dkt. 72); and

18    **16.**   Declaration of Neil Low in Support of Plaintiff's Reply to Defendants' Thurston

19 County, Rodney T. Ditrich and John D. Snaza's Responses to Plaintiff's Motion for Sanctions, RE:

20 Spoliation of Evidence, together with all exhibits which are incorporated herein by this reference

21 (Dkt. 73).

22                              **VII.   ARGUMENT**

23 **A.**   <u>**Snaza Is Not Entitled to Qualified Immunity.**</u>

24    Nelson has brought a § 1983 due process claim for denial of access to courts claim against

25 Snaza individually pursuant to the Fourteenth Amendment alleging that Snaza's intentional actions

26 either destroyed or reduced Nelson's chances of recovery in any subsequent federal civil rights or

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

state wrongful death personal injury lawsuit.

Snaza ordered the patrol vehicle cleaned and repaired before the investigation was completed. Snaza testified that he "*made a choice to get rid of a piece of equipment after evidence was obtained from the vehicle*" because he did not want it going back into his fleet.[126]  His orders were given no later than January 6, 2016.

Snaza had notice prior to January 5, 2016, that a Sheriff cannot intentionally destroy or fail to collect evidence of a possible criminal act in order to protect a deputy under their supervision. *Delew v. Wagner,* 143 F.3d 1219 (9th Cir. 1998).  Such a failure by a Sheriff or employees acting upon the Sheriff's order or pursuant to his policies can result in a Fourteenth Amendment based constitutional right to meaningful access to the courts claim. *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999).

One of Nelson's several police practices experts, Dr. John Peters, a police instructor, former deputy sheriff, and former police administrator, called Snaza's investigation *"one of the most biased and unprofessional I have ever reviewed."*[127]  He opined that Snaza showed "*utter disregard*" for potential evidence that contradicted Ditrich's story and exonerated his subordinate officer based on a *"sham investigation."*[128]  Dr. Peters criticized Snaza's *"conscious bias"* as Snaza flatly stated that his 'men and women' do not lie."[129]

Dr. Peters opined that Snaza and TCSO wrongfully failed to properly preserve evidence, evidencing a culture where "*those under his command violate policies without fear of disciplinary action.*"[130] Dr. Peters concluded, *"In short, Sheriff Snaza exonerated Deputy Ditrich based upon the Deputy's own narrative about how he shot and killed Mr. Nelson.  As a former internal investigator, this is not how an internal affairs investigation should be conducted."*[131]

A County Sheriff, cannot merely accept an officer's account of a shooting where the officer

---

[126] Dkt. 53, Cloud Decl., Ex. 1 - Snaza Dep., p. 73.
[127] Dkt. 58 (p. 21), Peters Decl., Ex. 1 - Report p. 16, § IX.
[128] Dkt. 58 (p. 25), Peters Decl., Ex. 1 - Report p. 20.
[129] Dkt. 58 (p. 16), Peters Decl., Ex. 1 - Report p. 11, § 5.  Dkt. 53, Cloud Decl., Dkt. 53-1/Ex. 1 - Snaza Dep., 119:22.
[130] Dkt. 71, Peters Decl. ISO Plffs' Reply RE Mtn for Sanctions, ¶ 4, p. 21.
[131] Dkt. 58 (p. 25), Peters Decl., Ex. 1 - Report p. 20.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

killed the primary witness. A "sham investigation" into an officer involved shooting can support individual supervisory liability. *German v. Roberts*, 2017 WL 6547472 (W.D. Wash. Dec. 22, 2017); A police chief's conclusion that an officer's use of force was within department policy can support a claim for ratification of the officer's unconstitutional actions. *K.C.R. v. City of Los Angeles*, 2015 WC 13546061 at 9 (9th Cir. C.D. Cal. Jan. 28, 2015).

Snaza had notice that his own and his employee's actions taken to destroy and fail to preserve evidence of Ditrich's use of lethal force could result in individual and official liability through the holding of *Delew, supra*.

**B.** **If Defendant Snaza's Second Motion for Summary Judgment, If Granted, Nelson Will Likely Be Deprived of the Opportunity to Seek Punitive Damages Against Snaza**.

Snaza relies upon *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) and *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998), to argue that Nelson cannot establish that Snaza's ordered destruction of evidence and his intentional or reckless disregard for his employee's actions in destroying evidence has rendered any potential remedy Nelson would have available through litigation in state or federal courts ineffective after the conclusion of this litigation.[132]

If Snaza's argument is accepted by this Court, Nelson could be unable to pursue one of the elements of damages he seeks. If he were to win the present case, Nelson would possibly be precluded from seeking compensation from Snaza individually through the imposition of punitive sanctions in a subsequent lawsuit. Nelson is seeking punitive damages against Nelson for his deliberate and intentional destruction of evidence likely supportive of Nelson's state and federal causes of action, as set forth in his complaint. Nelson is also seeking damages, including punitive damages, for Snaza's ratification of Ditrich's actions and the actions of himself and others for destroying evidence from the patrol vehicle. If Snaza, individually, is dismissed at summary judgment on the Fourteenth Amendment denial of access to courts claim and Nelson subsequently wins his case against Ditrich and TC in the present action, it is likely that Snaza will claim in any

---

[132] Dkt. 163, Defendant John D. Snaza's Second Motion for Summary Judgment, pp. 9-12.

subsequent suit against him that Nelson has been fully compensated by the verdict and the judgment in the present case and any further litigation in an attempt to obtain a judgment for punitive damages assessed against him would be moot.  If Snaza's Second Motion for Summary Judgment is granted, and Nelson loses the present case at trial, Nelson could, pursuant to the holding in *Delew, supra*, have an opportunity to file a second lawsuit for denial of access to the Court's, but that would result in a second trial probably years later, if at all.  Any further delay favors the defense.  A second trial would be an unnecessary duplication of proceedings.

Nelson Should be able to seek punitive damages against Snaza in the present action even if Nelson wins the present lawsuit because Snaza's actions should be punished to avoid encouraging the other sheriffs and police chiefs to destroy evidence in instances of the use of lethal force.

A County Sheriff should never be allowed or encouraged to order the destruction of evidence from the scene of one of his officer's use of deadly force.  Yet, if Snaza's Second Motion for Summary Judgment is granted on the access to courts issue, Snaza may never be subject to the punishment his outrageous conduct demands.  A failure to allow an action for punitive damages in this case will encourage other police chiefs and sheriffs to destroy evidence. Victims such as Nelson are damaged by the realization that sheriffs are above the law and unaccountable to victims of excessive force and that they can order destruction of evidence with little or no consequences.

*Delew v. Wagner,* 143. F.3d 1219 (9th Cir. 1998), is factually similar, but distinguishable from the present case because *Delew* did not address whether punitive damages could be foreclosed in a subsequent denial of access to courts claim pursuant to 46 U.S.C. § 1093 and the Fourteenth Amendment.  *Delew* did not involve an elected sheriff ordering evidence destroyed.  In *Delew, supra,* the Delews alleged that Las Vegas Municipal Police ("LVMP") officers and Nevada Highway Patrol ("NHP") officers successfully covered up facts establishing that the wife of a Las Vegas police officer had caused the fatal accident that killed their daughter.  The Delew's alleged that LVMP and NHP failed to investigate the circumstances of their daughter's death and the failure by LVMP and NHP to preserve evidence of alcohol intoxication from the LVMP officer's wife resulted in a denial

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1    of the Delew's access to the courts. The wife of the LVMP officer was allowed to leave the scene

2    without any investigation of her possible intoxication.

3          In *Delew, supra,* the plaintiffs had initially filed a wrongful death case in State Court. When

4    the facts of the investigating officers' actions of covering up the facts implicating the Las Vegas

5    officer's wife were developed during the discovery phase of the State Court's wrongful death suit,

6    the Delew's sought to bring a denial of access to courts claim pursuant to 46 U.S.C. § 1983 in State

7    Court. The State Court trial judge denied the Delew's Motion to Amend the Complaint to add the

8    denial of access to courts claim. The Delew's then filed their denial of access to the courts claim in

9    the United States District Court while the State Court's action was pending. The District Court

10   dismissed the case by reasoning the denial of access to courts claim had not yet accrued as the

11   underlying case had not been tried. The Ninth Circuit upheld the District Court, but questioned the

12   State Court's decision to not allow the State Court complaint to be amended to allow a § 1983 denial

13   of access to courts claim. *Delew v. Wagner,* 143 F.3d 1219 (9th Cir. 1998). The Ninth Circuit

14   inferred that the Nevada State Court should have allowed the amendment and tried the wrongful

15   death claim and the denial of access to Court claim in the same action. Nonetheless, the Ninth

16   Circuit affirmed the Trial Court.

17   **C.    All of Nelson's Claims Against All Defendants, Including Snaza, Should Be Tried Together.**

18         FRCP 20(2)A and B allows the joinder of the claims made in the complaint against Snaza

19   and TC and Ditrich because questions of law or fact common to all defendants, including Snaza, will

20   arise in as the causes of action for wrongful death and other state law torts and the 46 U.S.C. § 1983

21   claims, including the denial of access to the courts claim, arise from the same transaction, occurrence

22   or series of transactions or occurrences. If a denial of access to courts claim is filed by Nelson after

23   the trial of the present action and allowed to proceed, it will likely result in unnecessary duplication

24   of trial evidence and Court resources.

25   //

26

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1

**D.**   **Snaza Is Individually Liable for Condoning and/or Ratifying Ditrich's Conduct.**

2          Snaza can be held liable in his individual capacity. Snaza's liability hinges upon whether he

3   "*set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others,*

4   *which he knew or reasonably should have known would cause others to inflict the constitutional*

5   *injury.*" *Larez v. City of Los Angeles,* 946 F.2d 630, 645 (9th Cir. 1991). Snaza can also be held

6   individually liable for his culpable action or inaction or for his acquiescense in the constitutional

7   deprivation or for conduct that showed a "*reckless or callous indifference to the rights of others*."

8   *Laraz, Id.,* 946 F.2d 630, 646.

9          Although ratification is not discussed by Snaza, a supervisor such as Snaza can be held

10   individually liable for condoning and/or ratifying the excessive use of force by officers under his

11   command. *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). *Larez, Id.,* upheld a jury

12   verdict finding a police chief individually liable for ratifying the excessive use of force when expert

13   testimony showed he should have disciplined his officers and established new police procedures.

14   The award of punitive damages against the police chief was affirmed. *Larez, supra.*

15          In the present case, Snaza signed off on an internal affairs report/recommendation in the face

16   of conflicting evidence that Ditrich not be disciplined despite the evidence of Ditrich's excessive use

17   of force because he will <u>always</u> believe his officer's version of the events.[133]

18          Likewise, a police chief or sheriff who signs off on an internal affairs report despite evidence

19   of his officer's use of excessive force during the incident investigated can be held individually liable

20   for his officer's use of excessive force. *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998).

21          The actions of Snaza are distinct from the actions of Ditrich. *Chew v. Gates*, 27 F.3d 1482

22   (9th Cir. 1994), cert. denied, 513, 167 F.3d 514.  A municipality or supervisor in his official capacity

23   can be liable if a supervising policy maker ratifies a deputy's actions. *Christie v. Iopa,* 176 F.3d

24   1231 (9th Cir. 1999), cert. denied, 528 U.S. 928 (1999).

25          A supervisor may be held individually liable based upon his knowledge and acquiescence

26
---
[133] Cloud Decl. ISO Resp to Snaza's 2nd MSJ, Ex. 2 - Snaza Dep., 119:7-22.

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 24 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

in unconstitutional conduct by those he supervises. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Snaza knew his subordinates were acting on his orders to destroy evidence from the patrol vehicle. A supervisor who knows of unconstitutional actions by his employees and "*culpable actions of his subordinates*" but fails to act amounts to "*acquiescence in the unconstitutional conduct of his subordinates*" and is sufficient to state a claim for supervisory liability. *Kneales v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018). In the present case, Snaza ordered and therefore knew his employees were working to destroy evidence on the patrol vehicle. Their actions are attributable to him.

**E.      Snaza Has Not Moved to Dismiss the Pending State Law Claims Against Him.**

Snaza has not addressed the state law cause of actions in his first motion for summary judgment or in his second motion for summary judgment.

## VIII.   CONCLUSION

The Defendant John D. Snaza's Second Motion for Summary Judgment should be denied.

In the event the Court dismisses the access to courts claim, Nelson requests that the denial of access to courts claim be dismissed without prejudice.

Nelson further requests an order tolling the statute of limitations pertaining to access to courts claim until a judgment is entered in the present case if the Court enters a dismissal without prejudice.

**RESPECTFULLY SUBMITTED** this 19th day of January, 2021.

**LAW OFFICE OF DOUGLAS R. CLOUD**

/s/ Douglas R Cloud
**DOUGLAS R. CLOUD, WSBA #13456**
Law Office of Douglas R. Cloud
1008 Yakima Avenue, Suite 202
Tacoma, WA 98405
Telephone: 253-627-1505
Fax: 253-627-8376
E-mail:  drc@dcloudlaw.com
**Attorney for Plaintiff**

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 25 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1

## CERTIFICATE OF SERVICE

2      The undersigned declares as follows:

      1.     I am over the age of 21 and not a party to this action.

3      2.     I am an employee of Douglas R. Cloud, Attorney at Law, Attorney for Plaintiff.

      3.     On this day, I certify that I electronically filed the foregoing with the Clerk of the

4 Court by using the CM/ECF system, which will send notification of such filing to the counsel of

record for the defendants, and that I also forwarded a true and correct copy to counsel of record for

5 the defendants in the following manner:

6

| Counsel for Defendants, TC and Ditrich: | |
|---|---|
| W. Dale Kamerrer, Esq.<br>**LAW LYMAN DANIEL KAMERRER & BOGDANOVICH, P. S.**<br>PO Box 11880<br>Olympia, WA 98508-1880<br>Physical Address:<br>2674 R W Johnson Blvd SW, Tumwater, WA 98512<br>P: 360-754-3480, F: 360-357-3511<br><br>Scott C. Cushing, WSBA # 38030<br>Senior Deputy Prosecuting Attorney<br>**TC PROSECUTING ATTORNEY'S OFFICE**<br>Civil Division - Bldg No. 5<br>2000 Lakeridge Dr SW<br>Olympia WA 98502<br>P: 360-786-5574<br>Emails: dkamerrer@lldkb.com; cushins@co.thurston.wa.us; | ☐ Messenger<br>☐ US Mail<br>☐ Facsimile<br>■ Email<br>■ CM/ECF |
| Counsel for Defendant, John Snaza: | |
| Gregory E. Jackson, WSBA #17541<br>John R. Nicholson, WSBA #30499<br>**JACKSON & NICHOLSON, P.S.**<br>900 SW 16th St, Ste 215<br>Renton WA 98057<br>P: 206-582-6001, F: 206-466-6085<br>Emails: Greg@jnseattle.com; John@jnseattle.com<br><br>Donald R. Peters, Jr., WSBA #23642<br>Senior Deputy Prosecuting Attorney<br>**TC PROSECUTING ATTORNEY'S OFFICE**<br>Civil Division - Bldg No 5<br>2000 Lakeridge Dr SW<br>Olympia WA 98502<br>P: 360-786-5574<br>Emails: Gregj@fjtlaw.com; johnn@fjtlaw.com; petersr@co.thurston.wa.us; | ☐ Messenger<br>☐ US Mail<br>☐ Facsimile<br>■ Email<br>■ CM/ECF |

23      I certify under penalty of perjury under the laws of the State of Washington that the foregoing

is true and correct.

24      Dated at Tacoma, Washington this 19th day of January, 2021.

25

                           /s/ Carrie L. Marsh

26                         **CARRIE L. MARSH**

PLFF'S RESPONSE TO DEF SNAZA'S SECOND
MOTION FOR SUMMARY JUDGMENT - 26 OF 26
Case No.  3:18-cv-05184-RSL

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax:  253-627-8376