UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH A. NELSON, individually and as the Personal Representative of the ESTATE OF JOEL A. NELSON,<br><br>Plaintiff,<br><br>v.<br><br>THURSTON COUNTY, *et al.*,<br><br>Defendants. | NO. C18-5184RSL<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF POORT AND PETERS |

This matter comes before the Court on defendants Rodney T. Ditrich and Thurston County's "Motion and Memorandum to Strike Plaintiff's Expert Witnesses, Leo Poort and John Peters." Dkt. # 176. Plaintiff's decedent, Joel A. Nelson, was killed by Thurston County Deputy Sheriff Ditrich on January 5, 2016. Deputy Ditrich thought Mr. Nelson was acting suspiciously and was trespassing on private property. He made contact and, within minutes, Mr. Nelson was dead.[1] There are disputed issues of material fact regarding whether Deputy Ditrich had probable cause to stop, detain, and arrest Mr. Nelson and when and where the officer first discharged his weapon. Plaintiff asserts that Mr. Nelson was shot while kneeling (or complying with an order to

---

[1] The Court declines to decide the Dead Man statute issue because it is unnecessary to the *Daubert* issues raised by defendants' motion.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 1

kneel) in front of the police vehicle and that Deputy Ditrich discharged his weapon three more times after Mr. Nelson tried to get away in his vehicle. Deputy Ditrich maintains that he fired only after Mr. Nelson commandeered the patrol car. Plaintiff alleges that Deputy Ditrich lacked probable cause to stop and/or arrest Mr. Nelson, that he used excessive force, that he was not adequately trained or supervised, that the use-of-force investigation was so flawed as to suggest a cover-up and/or ratification of Deputy Ditrich's actions, and that defendants were negligent, resulting in personal injury and wrongful death.

Plaintiff has offered Leo E. Poort and John G. Peters, Jr. as experts on police procedures related to use of force and subsequent investigations. Defendants Ditrich and Thurston County argue that Mr. Poort lacks the requisite expertise to opine regarding the legality or propriety of Deputy Ditrich's conduct, that his opinions are not based on reliable methods or principles, and that his opinions are mere legal conclusions that would either be unhelpful to the jury or would supplant the role of the Court in instructing the jury. They seek to exclude the opinions of Dr. Peters because his opinions are not based on reliable methods or principles, they would invade the province of the Court, and/or they would not be helpful to the jury.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). To be admissible, expert testimony must be both reliable and helpful. The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. *Daubert*, 509 U.S. at 594-95. In general, the expert's opinion must

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 2

be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. *Daubert*, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson" (*U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)) and it must have a valid connection between the opinion offered and the issues of the case (*Daubert*, 509 U.S. at 591-92). Plaintiff, as the party offering Mr. Poort and Dr. Peters as experts, has the burden of proving both the reliability and helpfulness of their testimony. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

**A. Opinions and Testimony of Leo E. Poort**

Mr. Poort was "the principal police legal advisor" to the Seattle Police Department for thirty-two years, from 1977 through 2009. During that period, he occasionally observed officers making *Terry* stops and using force. In his legal advisor role, Mr. Poort reviewed internal investigation unit cases involving the use of force, developed or modified police department procedures regarding the use of force and investigations of the use of force, and trained officers on the lawful use of lethal force. He also led the legal advisors' section of the Washington Association of Police Chiefs and Sheriffs, helping to develop legislation regarding the use of force by commissioned officers in the State of Washington. Through 2017, he wrote a monthly column for the Washington State law enforcement community.

---

[2] This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 3

Based on plaintiffs' version of the facts of this case and applying "generally accepted police legal principles" (Dkt. # 177 at 18), Mr. Poort opines, *inter alia*, that:

- Deputy Ditrich failed to follow the "standards, training and practices of police officers in Washington State," resulting "directly and unnecessarily to the assault and serious injuries inflicted on Joel Nelson" on January 5, 2016 (Dkt. # 177 at 18);

- Deputy Ditrich acted unlawfully when he stopped and detained Mr. Nelson without adequate justification or probable cause. In the alternative, "[t]he felony-style stop made by [Deputy] Ditrich for a very minor crime was unjustified." (*Id.*);

- Deputy Ditrich acted unlawfully when he arrested Mr. Nelson for the "minor and non-violent crime of trespass" or for obstructing an officer (*Id.* at 18-19);

- Had Deputy Ditrich allowed Mr. Nelson to go on his way, slowed down, contacted his supervisor, attempted to de-escalate the situation, or called for back-up, the use of force would not have been likely (*Id.* at 18-19):

- The "[u]se of serious force could have been avoided with proper training and supervision to reinforce the training" (*Id.* at 19);

- Any exigency Deputy Ditrich faced was officer-created (*Id.*)

- Deputy Ditrich acted unprofessionally when he determined "to arrest [Mr.] Nelson without fully informing his supervisors, without tactical planning, and without adequate notice of his intent to arrest and take [Mr.] Nelson into custody: (*Id.*); and

- The post-incident investigation was defective in that:
    - the vehicle was not preserved beyond a few photos
    - the trajectory of the bullet that killed Mr. Nelson was not analyzed
    - digital information from the Taser was not retrieved or analyzed (*Id.* at

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 4

20).

In sum, Mr. Poort concludes:

> The danger created by [Deputy] Ditrich, at the point of his rush to arrest [Mr.] Nelson for a suspected minor crime, violated his duty in that it was not supported by objective reasonableness. [Deputy] Ditrich's choice to use serious or deadly force was driven by his decision to arrest [Mr.] Nelson very early in the encounter. Regrettably, "Officer-created danger" never justifies the extent of excessive force used on January 5, 2016 by [Deputy] Ditrich that critically and fatally injured Joel Nelson.

*Id.* at 21.

A police practices expert is often well-placed to assist the jury in understanding the policies and practices that govern police conduct and in determining whether an officer's actions in a given circumstance deviated from the norm that would be expected of a reasonable police officer. *See Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018). Although Mr. Poort never served as a police officer, he spent over thirty years evaluating whether officer conduct was consistent with the department's policies and the governing legal principles, training officers in those policies and principles, overseeing use-of-force investigations, and developing/modifying department polices as needed to ensure lawful conduct. As such, Mr. Poort has the required knowledge, skill, and experience to testify regarding (a) police policies and practices surrounding *Terry* stops, the use of force, and post-incident investigations in Washington State and (b) whether conduct was or was not consistent with those policies and practices.

Unfortunately, Mr. Poort's expert report fails, with one exception, to adequately disclose the practices and standards about which he plans to testify. An expert hired for purposes of

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 5

litigation must provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Mr. Poort does not identify any practices, procedures, or training modules used by the Thurston County Sheriff's Office (or any other comparable force in the State of Washington), instead relying on general references to "well-established police procedures, standards and norms" or "standard procedural training." Dkt. # 177 at 6 and 7. *See Fuller v. Kitsap County*, No. C16-5407BHS, 2017 WL 11431982, at *2 (W.D. Wash. Oct. 30, 2017) (excluding Mr. Poort's testimony in part because he failed to identify the local policies or national standards against which he was evaluating the officer's conduct). Nor does he set forth the standards and procedures that govern a use-of-force investigation or the forensic analysis of evidence. His accusations of unprofessional, unlawful, or deficient conduct are largely unmoored from any standard or analysis. While it is clear that "an expert might draw a conclusion from a set of observations based on extensive and specialized knowledge" *Kumho Tire*, 526 U.S. at 156, opinions based on undisclosed standards and unsubstantiated comparisons are *ipse dixits*, requiring the jury to accept the assertions as true simply because Mr. Poort said them. The Court finds that broad, generalized statements such as "[t]he felony-style stop made by [Deputy] Ditrich for a very minor crime was unjustified" or there was a "lack of appropriate and thorough command review of the decisions that [Deputy] Ditrich made," are wholly conclusory, unsupported, and unreliable.

    In one respect, however, Mr. Poort does provide a list of factors that he says governed Deputy Ditrich's actions and should have been considered both when the officer was determining the need for and the appropriate level of force in his interaction with Mr. Nelson

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 6

and when Thurston County investigated the shooting. Mr. Poort refers to something called the "Graham Factors," and lists seven considerations that are "part of basic and advanced officer training provided in Washington State." Dkt. # 177 at 6-7. Assuming that an appropriate foundation can be laid for a finding that the "Graham Factors" applied in this situation, Mr. Poort will be able to testify regarding the factors and the analysis that an officer in Deputy Ditrich's position should have undertaken based on those factors. In addition, Mr. Poort has adequately disclosed and will be permitted to testify regarding the options that were available to Deputy Ditrich and the officers who investigated the incident.

The Court finds that the balance of Mr. Poort's report will not help the trier of fact understand the evidence or determine a fact that is at issue. Once Mr. Poort explains the seven factors that guide a use-of-force decision/investigation and the options that were available to Deputy Ditrich and the investigating officers, the jury will be in a position to draw legal conclusions (pursuant to the Court's instructions) from facts that are neither technical nor complex.

**B. Opinions and Testimony of John G. Peters, Jr.**

Dr. Peters was a law enforcement officer in York, Pennsylvania in the 1970s. Since then he has been a consultant and instructor regarding the use of defensive tactics, the use of Taser devices, and the use of flashlights in law enforcement. Many of the thousands of classes he has taught over the years relate to *Terry* stops, arrests, and the use of force. Dr. Peters offers nine opinions, only three of which are challenged by the moving defendants:[3]

---

[3] Despite the fact that Thurston County is one of the moving defendants, the motion does not challenge Dr. Peters' opinions regarding the County's creation of an atmosphere that protects law

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 7

6. Deputy Ditrich knew from his training that he did not have a basis to seize Mr. Nelson.

7. Deputy Ditrich violated officer safety training and guidelines when he exited his patrol vehicle and failed to close the driver door.

8. The force used by Deputy Ditrich on Mr. Nelson was inconsistent with national use-of-force standards, recommendations, guidelines, and Thurston County Sheriff's Department policy.

Dkt. # 177 at 27.

The Court finds that Opinion 6 would be unhelpful to the jury because it is based on misstatements of the record and entirely divorced from the facts of this case. Dr. Peters reads Deputy Ditrich's deposition as an admission that the officer had no reason to suspect that criminal activity was afoot. That interpretation of the testimony is simply unreasonable and does not form a legitimate basis for Dr. Peters' opinion.

Opinion 7 rests on the unsupported assertion that there are policies or standards requiring officers to close the driver door when exiting a patrol car. Dr. Peters does not identify the source of the requirement, and his background gives no reason to assume that he has any specialized or experiential knowledge regarding the alleged policy. The only data point mentioned is that, in his experience, he has "never seen a traffic stop conducted on a freeway with the driver door of the patrol car that remained open." Dkt. # 177 at 34. Absent some foundation for the alleged policy, it cannot serve as the basis for Dr. Peters' opinion that Deputy Ditrich failed to follow officer

---

enforcement officers and ratifies their misconduct, failure to create policies that were clear enough to be enforced, failure to train regarding the use of force and/or the use of Tasers, and failure to conduct an adequate investigation following Mr. Nelson's death.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 8

safety training and guidelines, much less that the failure "was a material cause of the fatal shooting of Mr. Nelson." *Id.*

Dr. Peters' Opinion 8, that Deputy Ditrich's decision to use force, much less lethal force, could not be justified under the factors enumerated in *Graham v. Connor*, is admissible. Dr. Peters does not presume to know which version of events the jury will accept, but rather evaluates the use-of-force decision in different scenarios based on the identified standards and his education, training, and experience. This opinion, while subject to challenge, is based on methods generally utilized by police practice experts and will be helpful to the jury.

For all of the foregoing reasons, the motion to strike the testimony of Mr. Poort and Dr. Peters is GRANTED in part and DENIED in part.

Dated this 30th day of September, 2022.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY
OF POORT AND PETERS - 9